1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>         Plaintiff,<br><br>         v.<br><br>DAVID CHARLES RHINE,<br><br>         Defendant. | Criminal No. 21-CR-687 (RC)<br><br>MR. RHINE'S MOTIONS *IN LIMINE* TO:<br>(A) PRECLUDE THE GOVERNMENT FROM INTRODUCING ANY EVIDENCE REGARDING THE ALLEGATION THAT MR. RHINE HAD TWO POCKET KNIVES AND A SMALL CONTAINER OF PEPPER SPRAY;<br>(B) PRECLUDE THE GOVERNMENT FROM ARGUING, OR PRESENTING EVIDENCE IN SUPPORT OF, VICARIOUS LIABILITY;<br>(C) PRECLUDE THE USE OF PREJUDICIAL TERMINOLOGY; AND<br>(D) PRECLUDE THE GOVERNMENT FROM INTRODUCING IN ITS CASE-IN-CHIEF EVIDENCE NOT YET PRODUCED IN DISCOVERY OR PROPERLY NOTICED AS OF THE DATE OF THIS FILING. |

Mr. Rhine, through counsel, respectfully asks this Court to grant the following Motions *in Limine*. Mr. Rhine has yet to receive a proposed witness list, exhibit list, or trial brief from the government. Therefore, Mr. Rhine may seek leave in the future to file additional Motions *in Limine* if new information warranting such comes to light.

## I.   STATEMENT OF FACTS

The government has charged Mr. Rhine with four charges: (1) entering or remaining in a restricted building or grounds, (2) disorderly and disruptive conduct in a

FEDERAL PUBLIC DEFENDER<br>1331 Broadway, Suite 400<br>Tacoma, WA 98402<br>(253) 593-6710

restricted building or grounds, (3) disorderly conduct in a Capitol Building, and (4) parading, demonstrating, or picketing in a Capitol Building. Dkt. No. 8. The government's statement of probable cause in support of the initial complaint focuses largely on crimes committed by people other than Mr. Rhine. *See* Dkt. No. 1 at 2–3. Indeed, the allegations recited in support of the charges merely charge that Mr. Rhine was present, walked around the Capitol Building, and complied with law enforcement orders. *See* Dkt. No. 1.

In this probable cause statement, the government made an allegation unrelated to any of the filed charges—that Mr. Rhine was found with two knives and a canister of pepper spray. Dkt. No. 1 at 6. This allegation is based on an uncorroborated recollection of a single Capitol Police Officer from what was very likely the most chaotic day of his career.

The Officer initially told investigators that another unnamed officer asked him to search Mr. Rhine (or a man purported to be him), whom the other officer had detained. The Officer told investigators he "found three knives and pepper spray in his belongings." Ex. A.

About a month later, investigators followed up with the Officer. At that point, the Officer told investigators that he actually found two knives and pepper spray, explaining he "believed the pepper spray was in RHINE's bag and the two knives in his coat." Ex. C at 1. The Officer went on to explain that he "disposed of the two knives in his office break room trash. He took the pepper spray home, emptied the spray in the woods behind his house, and threw the empty canister into the trash." *Id*. at 1–2; *see also* Ex. B (follow-up email). In explanation for this destruction of evidence, the Officer offered "January 6, 2021 was very chaotic and [he] felt that was the best way to dispose of the pepper spray and canister." Ex. C at 2. The government never

MOTIONS *IN LIMINE*
(*United States v. Rhine*, 21-CR-687) - 2

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

1  photographed, fingerprinted, nor offered Mr. Rhine any opportunity to examine these

2  alleged items prior to their apparent destruction.

3  **II.  ARGUMENTS**

4       **A.  The Court should preclude the government from introducing any
5           evidence regarding the allegation that Mr. Rhine had two pocket
            knives and a small container of pepper spray.**

6       The government has alleged, publicly no less, that Mr. Rhine was found in

7  possession of "two knives and pepper spray." Dkt. No. 1. However, this allegation

8  comes from the inconsistent and uncorroborated statements of a Capitol Police Officer

9  who presumably encountered *many* people on January 6 and acknowledged the events

10 of that day were "very chaotic." Ex. C. The Court should preclude the government from

11 introducing testimony or any other evidence of this allegation because such evidence is

12 irrelevant under Fed. R. Evid. 401, is unduly prejudicial under Fed. R. Evid. 403, and

13 violates Mr. Rhine's constitutional rights.

14      First, the allegation is that, potentially, Mr. Rhine had two small knives akin to

15 pocket knives and a small container of pepper spray in his belongings, bag, or coat.

16 There is no allegation he used any item. Nor is he charged with any crime involving

17 these alleged items. Ultimately, whether or not Mr. Rhine possessed these items is not a

18 fact "of consequence in determining the action[.]" Fed. R. Evid. 401(b). And the items

19 themselves are commonly carried for self-defense or convenience (e.g. a small knife to

20 cut an apple or string as such needs arise). Evidence of these alleged items does not

21 have "any tendency to make a fact more or less probable than it would be without the

22 evidence." Fed. R. Evid. 401(a). As such, the Court should exclude any testimony or

23 other evidence of these alleged items under Fed. R. Evid. 402.

24      Even if the Court were to find this evidence relevant, the Court should

25 nonetheless exclude it under Fed. R. Evid. 403. Under this rule, "The court may exclude

26 relevant evidence if its probative value is substantially outweighed by a danger of one

MOTIONS *IN LIMINE*
(*United States v. Rhine*, 21-CR-687) - 3

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

1   or more of the following: unfair prejudice, confusing the issues, misleading the jury,

2   undue delay, wasting time, or needlessly presenting cumulative evidence." *Id*. Here, the

3   probative value is minimal. Even if the Court found the evidence relevant, any

4   relevance would require several inferential leaps to have any bearing on the filed

5   charges. The evidence as to whether the fact is even true is also weak—it is dependent

6   on the recollection of an Officer questioned months after a "very chaotic" day about a

7   single interaction that day. *See* Ex. C. Indeed, that day was likely the most chaotic of

8   his career. His account was inconsistent when speaking with investigators just a month

9   apart—initially claiming he found three knives and pepper spray in the belongings of

10  the man he searched, later saying he found two knives and pepper spray on the man's

11  person (in his coat) and in his bag. *Compare* Ex. A *with* Ex. C. And, by his own

12  account, the Officer destroyed the items he seized at his office and his home promptly,

13  and months before he was interviewed about the interaction. Ex. C. Such evidence has

14  many indicia of unreliability, decreasing any probative value.

15      Further, the evidence carries a great danger of unfairly prejudicing the jury

16  against Mr. Rhine, confusing the issues, and wasting time. Mr. Rhine is charged with

17  four non-violent misdemeanors. Dkt. No. 1. The government's evidence suggests he

18  walked, stood, and obeyed commands by police officers. *See* Dkt. No. 8. Evidence of

19  the alleged items would do little more than unfairly suggest to the jury that Mr. Rhine

20  was a violent or dangerous person—a person who *could have* caused harm. It would

21  also create a sideshow because, as discussed above, counsel for Mr. Rhine would cross-

22  examine the officer regarding the inconsistencies, errors, and lack of reliability of this

23  evidence. This would no doubt confuse the issues of importance and take up substantial

24  time during the trial for a matter that is not related to the charges filed. Further, Mr.

25  Rhine would request (and should receive) a destroyed evidence instruction were the

26  Court to allow this evidence.

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

1   Finally, introduction of this evidence would violate Mr. Rhine's right to due

2   process under the Fifth Amendment and to a fair trial under the Sixth Amendment. The

3   government violates due process and the right to a fair trial, requiring *dismissal* of

4   ensuing charges, when it fails to preserve or destroys evidence with "exculpatory value

5   that was apparent before the evidence was destroyed, and [] of such a nature that the

6   defendant would be unable to obtain comparable evidence by other reasonably available

7   means." *California v. Trombetta*, 467 U.S. 479, 489 (1984). However, even where the

8   government's destruction of evidence is not so egregious to require dismissal, its

9   negative impact on a criminal defendant's constitutional rights may nonetheless require

10  other remedies. *See United States v. Loud Hawk*, 628 F.2d 1139, 1152 (9th Cir. 1979)

11  (Kennedy, J., concurring), *overruled on other grounds by United States v. W.R.*

12  *Grace*, 526 F.3d 499 (9th Cir. 2008) (even if the violation does not meet the standard

13  for dismissal, "the court may still impose sanctions including suppression of secondary

14  evidence."); *see also Zhi Chen v. D.C.*, 839 F. Supp. 2d 7, 12 (D.D.C. 2011) (outlining

15  the standard for an adverse inference instruction). Here, the appropriate remedy is

16  suppression of secondary evidence—namely testimony of the Officer claiming the

17  items were seized from Mr. Rhine.

### B.   The Court should preclude the government from arguing, or presenting evidence in support of, vicarious liability.

18
19  The charges against Mr. Rhine are charges of individual culpability. Section

20  5104(e)(2) is not to the contrary, despite the opening phrase, "An individual *or group*

21  *of individuals* may not willfully and knowingly . . ." (Emphasis added). Even if that

22  phrase created ambiguity, the rule of lenity would dictate that it not be read to depart

23  from the traditional principle that a person may only be criminally liable for his own

24  conduct. *United States v. Cano-Flores*, 796 F.3d 83, 93–94 (D.C. Cir. 2015) ("[T]he

25  rule of lenity requires ambiguous criminal laws to be interpreted in favor of the

26

MOTIONS *IN LIMINE*
(*United States v. Rhine*, 21-CR-687) - 5

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

defendants subjected to them." (quoting *United States v. Santos*, 553 U.S. 507, 514 (2008))). "In our jurisprudence guilt is personal," *Scales v. United States*, 367 U.S. 203, 224 (1961). "[H]olding one vicariously liable for the criminal acts of another may raise obvious due process objections," *United States v. Decker*, 543 F.2d 1102, 1103 (5th Cir. 1976), so courts do not read criminal statutes to impose accountability for others' conduct unless Congress has clearly expressed an intent to do so, *see id*.

Here, § 5104(e)(2) gives no reason to adopt an anomalous interpretation that would allow Mr. Rhine to be held liable for the actions of others. Instead, the most natural reading of the statute is that the reference to an "individual or group of individuals" simply reflects the kinds of acts described in § 5104(e)(2), which often may (but need not) involve multiple actors. The phrase cannot reasonably be read to suggest that a person would be guilty under § 5104(e)(2)(B) or (F), for example, if he did not himself "enter or remain in the gallery of either House of Congress," § 5104(e)(2)(B), or "engage in an act of physical violence," § 5104(e)(2)(F)—unless, as the next section explains, the person conspired with or aided or abetted others, and was accountable for others' conduct on one of those bases.

1.   **Vicarious liability is exceptional in American criminal law and does not apply to ordinary criminal charges against individual defendants.**

If members of a group conspire together or aid and abet one another, then principles of vicarious liability (conspiracy) or accomplice liability (aiding or abetting) can make a group member criminally liable for others' conduct. But the government has not charged conspiracy, nor aiding or abetting. *See* Dkt. No. 8. Liability for aiding or abetting requires "(1) the specific intent to facilitate the commission of a crime by another; (2) guilty knowledge on the part of the accused; (3) that an offense was being committed by someone; and (4) that the accused assisted or participated in the

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

1    commission of the offense." *United States v. Raper*, 676 F.2d 841, 849 (D.C. Cir. 1982)

2    (citing *United States v. Prince*, 529 F.2d 1108 (6th Cir. 1976); *United States v. Staten*,

3    581 F.2d 878, 886–87 (D.C. Cir. 1978); *United States v. Wiley*, 492 F.2d 547, 551 (D.C.

4    Cir. 1973)).

5       The government's theory of prosecution here does not appear to be that Mr.

6    Rhine actually aided or abetted another person who engaged in disorderly or disruptive

7    conduct, or paraded, demonstrated, or picketed. Nor that he aided and abetted another

8    person to trespass into or engage in disorderly or disruptive conduct in a restricted area.

9    The government has not, for instance, incorporated 18 U.S.C. § 2 into the charges. *See*

10    Dkt. No. 8. Instead, the government appears to be proceeding on a theory more akin to

11    vicarious liability. *See generally* Dkt. No. 1.

12       The doctrine of vicarious liability allows a jury to convict a defendant without

13    any proof that the defendant personally engaged in prohibited conduct. 2 Wayne R.

14    LaFave, Substantive Criminal Law § 13.4 (3d ed. Dec. 2021 Update) ("with vicarious

15    liability . . . the need for a personal *actus reus* . . . is dispensed with, and there remains

16    the need for whatever mental fault the law requires"). Vicarious liability is

17    exceptionally convenient for prosecutors—and for that reason, it is exceptional. *Id*. ("in

18    criminal law [vicarious responsibility] is a departure from the basic premise of criminal

19    justice that crime requires personal fault"); *see also Jett v. Dallas Indep. Sch. Dist.*, 491

20    U.S. 701, 751 (1989) (Brennan, J., dissenting) (noting that in criminal law, unlike civil

21    law, "vicarious . . . liability would be extraordinary"). A version of it, so-called

22    *Pinkerton*[1] liability, applies in conspiracy cases. *See United States v. Silvestri*, 409 F.3d

23    1311, 1335 (11th Cir. 2005) ("Each party to a continuing conspiracy may be vicariously

24    liable for substantive criminal offenses committed by a co-conspirator during the course

25    and in the furtherance of the conspiracy, *notwithstanding the party's non-participation*

26

---

[1] *Pinkerton v. United States*, 328 U.S. 640 (1946).

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

1   *in the offenses or lack of knowledge thereof.*" (Emphasis added in *Silvestri*) (quoting

2   *United States v. Mothersill*, 87 F.3d 1214, 1218 (11th Cir. 1996)).

3        But most often, vicarious liability applies to corporate defendants. *See* LaFave,

4   *supra*, § 13.4 (under vicarious liability, "the defendant, generally one conducting a

5   business, is made liable, though without personal fault, for the bad conduct of someone

6   else, generally his employee"); *United States v. Philip Morris USA Inc.*, 566 F.3d 1095,

7   1118 (D.C. Cir. 2009) ("Corporations may be held liable for specific intent offenses

8   based on the 'knowledge and intent' of their employees . . . [b]ecause a corporation

9   only acts and wills by virtue of its employees . . . ."). It is not surprising, then, that the

10  government does not expressly argue for vicarious liability in this case. But in practical

11  terms, that is the import of its "collective action" arguments. The Court should bar the

12  government from making such arguments at trial.

13           2.     **Allowing the government to suggest that Mr. Rhine may be**
                    **convicted based on others' conduct would invite the jury to**
14                  **misapply the law and render a verdict that does not reflect his**
                    **personal culpability.**
15

16        The government must prove beyond a reasonable doubt that Mr. Rhine

17  personally "enter[ed] or remain[ed] in any restricted building or grounds," 18 U.S.C. §

18  1752(a)(1), "engage[d] in disorderly or disruptive conduct," 18 U.S.C. § 1752(a)(2), 40

19  U.S.C. § 5104(e)(2)(D), and "parade[d], demonstrate[d], or picket[ed]," 40 U.S.C. §

20  5104(e)(2)(G). That is the clear requirement of the applicable statutes and a

21  fundamental principle of criminal liability. However, the government's statement of

22  probable cause in support of the initially filed complaint suggests it intends to argue a

23  different legal theory. *See* Dkt. No. 1. It should not be allowed to make, or even

24  suggest, the same arguments at trial, because they could only confuse the issues by

25  inviting the jury to misapply the law and convict without unanimously finding beyond a

26  reasonable doubt that Mr. Rhine's own conduct violated the law. The law is clear that

MOTIONS *IN LIMINE*
(*United States v. Rhine*, 21-CR-687) - 8

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

Mr. Rhine may not be convicted of these charges based on his mere presence in an area where others committed crimes nor by any inference from mere association with others who committed crimes.[2] The Court should preclude the government from arguing or presenting evidence that would suggest otherwise.

### 3. The Court should further preclude the government from introducing evidence of wrongdoing by others not directly relevant to Mr. Rhine.

The Court should further preclude from introducing unnecessary evidence of wrongdoing by others. Specifically, the government should be precluded from introducing video, photographs, or other evidence (including testimony) of serious acts of violence by other people, of any misconduct by others who were not within Mr. Rhine's view or immediate vicinity, or of damage and injuries caused by other people. For example, the majority of violent and destructive acts appears to have occurred on the west side of the Capitol Building. But Mr. Rhine is alleged to have been on the east side of the building, where neither he nor others present would have been able to witness these events. Such acts have no plausible bearing on Mr. Rhine's mental state or on the charges against him.

Prior to allowing evidence of the criminal acts of *other people*, the government must show that such evidence is relevant to the charges against Mr. Rhine. *See* Fed. R. Evid. 401, 402. If the government claims that such evidence is relevant to an element of

---

[2] "Instruction 2-18: Jury To Consider Only This Defendant," 1 Modern Federal Jury Instructions-Criminal P 2.01 (2022); "Instruction 6-3 Impermissible To Infer Participation from Mere Presence," 1 Modern Federal Jury Instructions-Criminal P 6.03 (2022) (cmt.) ("When the defendant is charged as a principal in a substantive crime—such as selling narcotics—and claims he did not do it even though he was present, the court should instruct the jury that it is impermissible to infer guilt from mere presence."); "Instruction 6-4 Impermissible To Infer Participation from Association," 1 Modern Federal Jury Instructions-Criminal P 6.03 (2022); *United States v. Farhane*, 634 F.3d 127 (2d Cir. 2011); *United States v. Cooley*, 1 F.3d 985 (10th Cir. 1993); *United States v. Gaskins*, 690 F.3d 569 (D.C. Cir. 2012).

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

1    the charges against Mr. Rhine, the Court should first hold a hearing or otherwise require

2    proof of this claimed relevance outside the presence of the jury. *See* Fed. R. Evid. 104.

3    Any such evidence carries with it a high danger of unfairly prejudicing the jury against

4    Mr. Rhine based on the conduct of others. Therefore, the Court should make such

5    determinations outside the presence of the jury.[3]

6        ###  C.    The Court should preclude the use of prejudicial terminology.

7        The Court should enter an order that the government may not, and must instruct

8    its witnesses not to, use inflammatory, value-laden, or legally conclusory words to

9    describe either (1) events at or near the Capitol Building on January 6, 2021, or (2)

10   persons who participated in or were present for those events. It is not possible to

11   anticipate or compile here a complete list of such words, but for illustrative purposes,

12   they would include—but by no means be limited to—words such as "riot" and "rioter,"

13   "insurrection" and "insurrectionist," "mob," and "trespass." Many individual

14   Americans no doubt have formed personal opinions about the aptness of describing

15   January 6 in such terms, but their use in the context of a criminal trial would frustrate

16   the ends of justice.

17       The exclusion of such words will not prejudice either party's ability to fully and

18   fairly present its case at trial, whereas allowing the use of such words could unduly

19   inflame juror passions and imperil Mr. Rhine's right to a fair trial. A criminal defendant

20   has the right to have the jury make an "individualized determination[ ] of guilt based on

21   the evidence presented at trial." *United States v. McGill*, 815 F.3d 846, 895 (D.C. Cir.

22   2016); *see also id*. at 898 (verdict should be based on "an individual assessment of the .

23   . . defendant's personal culpability") (quoting *United States v. Blevins*, 960 F.2d 1252,

24   1260 (4th Cir. 1992)). Words like "rioter" and "insurrection" emphasize group

25
26   [3] Mr. Rhine reserves the right to raise Fed. R. Evid. 403 or other objections to particular
     evidence once the government makes known what evidence it intends to introduce in its
     case-in-chief.

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

culpability and distract from the proper question of individual culpability. Words that inflame juror passions will tempt the jury to base a verdict on emotion instead of the evidence.

Words that suggest legal conclusions, such as "trespass," "disorderly conduct," and "demonstrating," are indisputably proper in the context of a closing argument. But allowing such words during the presentation of evidence would "intrude upon the duties of, and effectively substitute for the judgment of, the trier of fact and the responsibility of the Court to instruct the trier of fact on the law." *United States ex rel. Mossey v. Pal-Tech, Inc.*, 231 F. Supp. 2d 94, 98 (D.D.C. 2002); *see also Cameron v. City of New York*, 598 F.3d 50, 62 (2d Cir. 2010) ("The cases [prohibiting legal conclusions in testimony] have focused on expert witnesses. But the impropriety of allowing a lay witness to testify in the form of a legal conclusion is all the clearer."). The Court should preclude the government and its witnesses from using prejudicial or value-laden language at trial.

> **D.** **The Court should preclude the government from introducing in its case-in-chief evidence not yet produced in discovery or properly noticed as of the date of this filing.**

Rule 16 sets clear requirements for the government to produce evidence that is either material to preparing a defense or that the government intends to use in its case-in-chief, among other things. *See* Fed. R. Crim. P. 16. The Federal Rules of Evidence further set clear requirements for timely notice for particular types of evidence (for example, for expert testimony). If a party fails to comply with the requirements of Rule 16, the Court may, among other things, "prohibit that party from introducing the undisclosed evidence[.]" Fed. R. Crim. P. 16(d)(2)(C).

This case has been pending for well over a year. Mr. Rhine, through counsel, promptly requested discovery from the government. *See* Ex. D. At the last status hearing, the government expressed its desire to go to trial quickly. This Court set a

1   briefing and trial schedule far later than the date requested by the government, which

2   accommodated the availability of the parties and the Court. There is no reason for the

3   government to seek to introduce evidence in its case-in-chief at trial that it either has

4   not yet produced in discovery or properly noticed under Rule 16 and the Federal Rules

5   of Evidence. Therefore, the Court should preclude the government from doing so.

6         A defendant has a constitutionally protected right to request and obtain from the

7   prosecution evidence that is material to guilt. *Brady v. Maryland*, 373 U.S. 83, 87

8   (1963). The Federal Rules of Criminal Procedure and Federal Rules of Evidence set

9   forth further requirements of disclosure and notice intended to ensure that litigants'

10  rights are upheld and to ensure the integrity of proceedings. Here, particularly, these

11  rules ensure the Defendant's Fifth Amendment and Sixth Amendment rights to present

12  a complete defense, to effective assistance of counsel, and to receive a fair trial are

13  upheld. Indeed, failure to follow these rules and to produce discovery and provide

14  required notices sufficiently in advance of trial can be reversible error. *See, e.g.*, *United*

15  *States v. Kelly*, 420 F.2d 26, 29 (2d Cir.1969) (conviction reversed because "fairness

16  requires that adequate notice be given the defense to check the findings and conclusions

17  of the government's experts."); *United States v. Bresil*, 767 F.3d 124, 127 (1st Cir.

18  2014) (reversal required when the government provided expert notice impermissibly

19  late, without sufficient time before the trial date); *United States v. Barrett*, 703 F.2d

20  1076, 1081 (9th Cir. 1983) (same); *United States v. Hernandez-Meza*, 720 F.3d 760,

21  768 (9th Cir. 2013) (reversible error for the Court to allow the government to introduce

22  evidence "material to preparing a defense" that had not been produced in discovery

23  pursuant to Rule 16 prior to trial).

24        The Court should preclude the government from introducing at trial any

25  evidence (including testimony) that has not been produced in discovery or properly

26  noticed under the Federal Rules of Evidence as of the date of this filing. There is no

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

1   reason why the government would not have complied with these rules as of the date of

2   this filing—indeed, the government requested a trial date around or earlier than this

3   motions deadline. Such an order will ensure a fair trial and avoid unnecessary delays or

4   side bars during trial.

5   **III.    CONCLUSION**

6          Mr. Rhine respectfully asks this Court to grant his Motions *in Limine* to protect

7   his right to a fair trial and to avoid unnecessary delay once a jury is empaneled.

8          DATED this 17th day of October, 2022.

9                                      Respectfully submitted,

10

11                                     s/ *Rebecca Fish*
                                       s/ *Joanna Martin*
12                                     Assistant Federal Public Defenders
                                       Attorneys for David Charles Rhine

13

14

15

16

17

18

19

20

21

22

23

24

25

26

MOTIONS *IN LIMINE*
(*United States v. Rhine*, 21-CR-687) - 13

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**