1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal No. 21-CR-687 (RC) |
| Plaintiff, | ) ) | |
| v. | ) ) | MR. RHINE'S MOTION TO DISMISS COUNTS 3 AND 4 OF THE INFORMATION |
| DAVID CHARLES RHINE, | ) ) | |
| Defendant. | ) ) | |
| ———————————————— | ) | |

The government charged Mr. Rhine with disorderly conduct and parading, demonstrating, and picketing in the Capitol. The statutes that purport to criminalize this behavior are exceedingly broad, criminalize substantial First Amendment-protected activity, and are so vague that their meanings cannot be meaningfully understood. These flaws invite arbitrary and discriminatory enforcement. Furthermore, the statutes are content-based restrictions on speech, which are constitutionally invalid. As such, the Court should dismiss Counts 3 and 4, because the statute defining these charges is unconstitutional. If the Court disagrees, these counts must nonetheless be dismissed because the government has not alleged a crime in the charging document—has not given even basic notice of the conduct Mr. Rhine is alleged to have committed which would be criminal. Mr. Rhine asks the Court to dismiss Counts 3 and 4 of the Information.

MOTION TO DISMISS COUNTS
(*United States v. Rhine*, 21-CR-687) - 1

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

## I. STATEMENT OF FACTS

The government charged Mr. Rhine with, among other charges, two crimes defined by 40 U.S.C. § 5104. In Count 3, the government charged Mr. Rhine with disorderly conduct in a Capitol Building:

> On or about January 6, 2021, in the District of Columbia, DAVID CHARLES RHINE willfully and knowingly engaged in disorderly and disruptive conduct in any of the Capitol Buildings with the intent to impede, disrupt, and disturb the orderly conduct of a session of Congress and either House of Congress, and the orderly conduct in that building of a hearing before or any deliberation of, a committee of Congress or either House of Congress.

Dkt. No. 8. The government alleges Mr. Rhine violated 40 U.S.C. § 5014(e)(2)(D).

In Count 4, the government charged Mr. Rhine with parading, demonstrating, or picketing in a Capitol Building:

> On or about January 6, 2021, in the District of Columbia, DAVID CHARLES RHINE willfully and knowingly paraded, demonstrated, and picketed in any United States Capitol Building.

Dkt. No. 8. The government alleges Mr. Rhine violated 40 U.S.C. § 5014(e)(2)(G).

The government has not alleged that Mr. Rhine said anything, made any disorderly movements, any offensive speech, or otherwise acted in any way that disrupted congressional proceedings, nor that he moved in an organized formation with others. *See generally* Dkt. No. 1. In other words, the government has not identified what conduct it alleges constituted "disorderly and disruptive conduct" or "parad[ing], demonstrate[ing], and picket[ing]" in the Capitol. *See generally* Dkt. No. 8.

Mr. Rhine now brings this motion to dismiss Counts 3 and 4 of the Information.

## II. ARGUMENT

This Court should dismiss Counts 3 and 4 of the information because they charge crimes under an unconstitutional statute. The statute in question—18 U.S.C. § 5104(e)—criminalizes an array of conduct at the Capitol. The government charged

MOTION TO DISMISS COUNTS
(*United States v. Rhine*, 21-CR-687) - 2

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

Mr. Rhine with violations of section 5104(e)(2)(D), disorderly conduct, and 5104(e)(2)(g), parading, demonstrating, or picketing. *See* Dkt. No. 8. However, both of these crimes are so broad and so vague that they violate the Fifth and First Amendments. Furthermore, the crimes are content-based restrictions on speech that are invalid under the First Amendment. In the alternative, if the Court finds a constitutional reading of the statute, the Information failed to allege a crime in Counts 3 and 4.

### A.   The Court should dismiss Counts 3 and 4 because Section 5104 is unconstitutionally vague on its face.

Mr. Rhine is charged with violating 40 U.S.C. § 5104(e)(2)(D), which prohibits disorderly conduct in the Capitol intended to impede, disrupt, or disturb congressional proceedings, and 40 U.S.C. § 5104(e)(2)(G), which prohibits "parad[ing], demonstrate[ing], or picket[ing] in any of the Capitol Buildings." Both sections of the statute are overbroad and unconstitutionally vague. Accordingly, this Court should dismiss Counts 3 and 4 of the Information.

### 1.   Vague or overbroad criminal laws violate the core of due process and may not stand.

The government violates the Fifth Amendment's Due Process Clause "by taking away someone's life, liberty, or property" based on a "vague" criminal law. *Johnson v. United States*, 576 U.S. 591, 595 (2015). "A statute can be impermissibly vague for either of two independent reasons." *Hill v. Colorado*, 530 U.S. 703, 732 (2000). First, a statute is impermissibly vague if it "fails to give ordinary people fair notice of conduct it punishes[.]" *Johnson*, 576 U.S. at 595. Second, a statute is impermissibly vague if it "authorizes or even encourages arbitrary and discriminatory enforcement." *Hill*, 530 U.S. at 732. The vagueness "doctrine guards against arbitrary or discriminatory law enforcement by insisting that a statute provide standards to govern the actions of police officers, prosecutors, juries, and judges." *Sessions v. Dimaya*, 138 S. Ct. 1204, 1212

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

(2018). The prohibition on vagueness in criminal laws is a bedrock constitutional requirement, and "a statute that flouts it 'violates the first essential of due process.'" *Johnson*, 576 U.S. at 595 (quoting *Connally v. General Constr. Co.*, 269 U.S. 385, 391 (1926)).

A statute can be unconstitutionally vague either facially or as applied.[1] A statute fails to provide constitutionally sufficient notice, and will be facially void for vagueness, if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *United States v. Williams*, 553 U.S. 285, 304 (2008); *see also Johnson*, 576 U.S. at 595 ("Our cases establish that the Government violates this guarantee by taking away someone's life, liberty, or property under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement.").

In *Kolender v. Lawson*, the Supreme Court emphasized the fundamental importance of "the requirement that a legislature establish minimal guidelines to govern law enforcement" and cautioned that this is even more important than the notice component of the vagueness doctrine. 461 U.S. 352, 357–58 (1983). To be clear, transgressing either provides a basis to declare a statute void for vagueness, but the Supreme Court has emphasized the importance of the second component as a check on law enforcement power and protection against targeting of disfavored groups. The Supreme Court admonished that where the legislature fails to clearly delineate what conduct is prohibited, "a criminal statute may permit 'a standardless sweep [that] allows

---

[1] Mr. Rhine does not waive any as-applied challenges, but he recognizes that they are premature at this juncture. *See United States v. Andries*, No. CR 21-93 (RC), 2022 WL 768684, at *1 (D.D.C. Mar. 14, 2022).

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

policemen, prosecutors, and juries to pursue their personal predilections.'" *Id.* at 358 (quoting *Smith v. Goguen*, 415 U.S. 566, 575 (1974)).

The potential for arbitrary enforcement is an even more acute concern when a statute is enforced against disfavored social groups. In such cases, a vague statute may "furnish[] a convenient tool for 'harsh and discriminatory enforcement by local prosecuting officials, against particular groups deemed to merit their displeasure.'" *Papachristou v. City of Jacksonville*, 405 U.S. 156, 170 (1972) (quoting *Thornhill v. Alabama*, 310 U.S. 88, 97-98 (1940)).

> **2.** **Courts apply heightened scrutiny when the breadth or vagueness of a law may chill or intrude upon First Amendment protected activities.**

Where First Amendment concerns are implicated, scrutiny of vagueness and overbreadth is heightened given the possibility that a criminal statute may intrude upon constitutionally protected activity. *Holder v. Humanitarian Law Project*, 561 U.S. 1, 19 (2010). "To trigger heightened vagueness scrutiny, it is sufficient that the challenged statute regulates and potentially chills speech which, in the absence of any regulation, receives some First Amendment protection." *Cal. Teachers Ass'n v. State Bd. of Educ.*, 271 F.3d 1141, 1150 (9th Cir. 2001).

The First Amendment provides that "Congress shall make no law . . . abridging . . . the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." Criminal statutes "that make unlawful a substantial amount of constitutionally protected conduct may be held facially invalid even if they also have legitimate application." *City of Houston v. Hill*, 482 U.S. 451, 459 (1987). When a law chills First Amendment protected activities, "[t]he objectionable quality of vagueness and overbreadth does not depend upon absence of fair notice to a criminally accused or upon unchanneled delegation of legislative powers, but upon the danger of tolerating, in

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

the area of First Amendment freedoms, the existence of a penal statute susceptible of sweeping and improper application." *N.A.A.C.P. v. Button,* 371 U.S. 415, 432–33 (1963).

A statute is constitutionally overbroad if it prohibits constitutionally protected activity—here, speech protected under the First Amendment. "The overbreadth doctrine prohibits the Government from banning unprotected speech if a substantial amount of protected speech is prohibited or chilled in the process." *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 255 (2002). Of particular concern for a criminal statute such as section 5104, "the penalty to be imposed is relevant in determining whether demonstrable overbreadth is substantial." *New York v. Ferber*, 458 U.S. 747, 775 (1982). For this reason, the Court has long allowed individuals to "attack overly broad statutes even though the conduct of the person making the attack is clearly unprotected and could be proscribed by a law drawn with the requisite specificity." *Id*. at 769.

The Court recognizes a compelling reason justifying permitting people to challenge statutes for overbreadth even if their own personal conduct is not constitutionally protected. This doctrine is necessary due to "the sensitive nature of protected expression" and concern that laws that facially infringe First Amendment rights will have a chilling effect upon constitutionally protected activity. *Id*. at 768. In such cases, "persons whose expression is constitutionally protected may well refrain from exercising their rights for fear of criminal sanctions by a statute susceptible of application to protected expression." *Id*. (quoting *Vill. of Schaumburg v. Citizens for a Better Env't*, 444 U.S. 620, 634 (1980)). Given this, the law recognizes that people whose conduct the Constitution does not protect should be able to challenge overbroad laws as a protective mechanism for people whose conduct is constitutionally protected.

MOTION TO DISMISS COUNTS
(*United States v. Rhine*, 21-CR-687) - 6

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

In the First Amendment context, "a law may be invalidated as overbroad if 'a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep.'" *United States v. Stevens*, 559 U.S. 460, 473 (2010) (quoting *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449, n. 6 (2008)). In conducting an overbreadth analysis, a court must first construe the statute. *United States v. Williams*, 553 U.S. 285, 293 (2008). The next step is to ask whether the statute, properly construed, "criminalizes a substantial amount of protected expressive activity." *Id*. at 297; *United States v. Montgomery*, No. CR 21-46 (RDM), 2021 WL 6134591, at *23 (D.D.C. Dec. 28, 2021).

### 3.    Section 5104(e)(2)(D)—disorderly conduct in the Capitol or Capitol grounds—is overbroad, vague, and unconstitutional.

Applying these rules, it is clear that the disorderly conduct at the Capitol charge, 40 U.S.C. § 5104(e)(2)(D), charged in Count 3, is unconstitutionally overbroad. First, the statute leaves key terms—namely "disorderly or disruptive conduct"—undefined. Second, this lack of clarity, and breadth of the prohibited conduct, chills substantial protected speech and invites arbitrary enforcement.

First, the statute criminalizes among other things "disorderly or disruptive conduct." 40 U.S.C. § 5104(e)(2)(D). However, the statute provides no definition of these terms. Notably, disorderly conduct is also not a crime at common law, instead, the common law criminalized only breaching the peace, which generally required actions that reasonably would cause another to respond violently. Francis Barry McCarthy, *"Vagrancy and Disorderly Conduct,"* 4 Encyclopedia of Crime and Justice 1589, 1589 (Sanford H. Kadish ed., 1983). However, modern criminalization of disorderly conduct tends to be broader than the old common law crime of breach of the peace. Black's Law Dictionary defines disorderly conduct as "Behavior that tends to disturb the public

peace, offend public morals, or undermine public safety." Conduct: Disorderly

Conduct, Black's Law Dictionary (11th Ed., 2019).[2]

However, in contrast to disorderly conduct statutes in many other jurisdictions,

section 5104 never defines this term. For example, in the surrounding District of

Columbia, disorderly conduct is defined as:

> (a) In any place open to the general public, and in the communal areas of
> multi-unit housing, it is unlawful for a person to:
>> (1) Intentionally or recklessly act in such a manner as to cause
>> another person to be in reasonable fear that a person or property in
>> a person's immediate possession is likely to be harmed or taken;
>> (2) Incite or provoke violence where there is a likelihood that such
>> violence will ensue; or
>> (3) Direct abusive or offensive language or gestures at another
>> person (other than a law enforcement officer while acting in his or
>> her official capacity) in a manner likely to provoke immediate
>> physical retaliation or violence by that person or another person.
> (b) It is unlawful for a person to engage in loud, threatening, or abusive
> language, or disruptive conduct, with the intent and effect of impeding or
> disrupting the orderly conduct of a lawful public gathering, or of a
> congregation of people engaged in any religious service or in worship, a
> funeral, or similar proceeding.
> (c) It is unlawful for a person to engage in loud, threatening, or abusive
> language, or disruptive conduct with the intent and effect of impeding or
> disrupting the lawful use of a public conveyance by one or more other
> persons.
> (c-1) It is unlawful for a person to engage in loud, threatening, or abusive
> language, or disruptive conduct in a public building with the intent and
> effect of impeding or disrupting the orderly conduct of business in that
> public building.
> (d) It is unlawful for a person to make an unreasonably loud noise
> between 10:00 p.m. and 7:00 a.m. that is likely to annoy or disturb one or
> more other persons in their residences.
> (e) It is unlawful for a person to urinate or defecate in public, other than in
> a urinal or toilet.

---

[2] Black's Law Dictionary defines "disruptive conduct" as "Disorderly conduct in the
context of a governmental proceeding." Conduct: Disruptive Conduct, Black's Law
Dictionary (Bryan A. Garner, Ed., 11th Ed., 2019).

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

(f) It is unlawful for a person to stealthily look into a window or other opening of a dwelling, as defined in § 6-101.07, under circumstances in which an occupant would have a reasonable expectation of privacy. It is not necessary that the dwelling be occupied at the time the person looks into the window or other opening.

(g) It is unlawful, under circumstances whereby a breach of the peace may be occasioned, to interfere with any person in any public place by jostling against the person, unnecessarily crowding the person, or placing a hand in the proximity of the person's handbag, pocketbook, or wallet.

D.C. Code Ann. § 22-1321. The District of Columbia definition is substantially different than the definition offered by Black's Law Dictionary.

And the plain language definition of these terms offers yet another definition. Merriam-Webster defines conduct as "a mode or standard of personal behavior especially as based on moral principles" or "the act, manner, or process of carrying on[.]"[3] Disorderly is defined as "engaged in conduct offensive to public order" or "characterized by disorder[.]"[4] And disruptive is defined as "disrupting or tending to disrupt some process, activity, condition, etc." or "causing or tending to cause disruption."[5] Thus, under the plain language, engaging in personal behavior in a way that lacked order would be disorderly conduct. As would carrying on in a way that interrupted the normal course. The lack of a clear definition fails to give an ordinary person notice of what conduct is criminal.

What these varying potential definitions have in common is their breadth. They all cover conduct that may not naturally seem criminal—for example being loud after

---

[3] Merriam-Webster, Conduct, https://www.merriam-webster.com/dictionary/conduct (last visited Oct. 14, 2022).

[4] Merriam-Webster, Disorderly, https://www.merriam-webster.com/dictionary/disorderly (last visited Oct. 14, 2022).

[5] Merriam-Webster, Disruptive, https://www.merriam-webster.com/dictionary/disruptive (last visited Oct. 14, 2022). Disrupt is defined as, among other things, "to interrupt the normal course or unity of[.]" Merriam-Webster, Disrupt, https://www.merriam-webster.com/dictionary/disrupt (last visited Oct. 14, 2022).

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

10:00 p.m., behaving in a way that *tends to* be distasteful to popular morals, or carrying on in a way that lacks order. This immense breadth naturally includes (and as discussed below, targets) expressive conduct protected by the First Amendment.

Second, the statute's breadth infringes on protected speech. As criminalized in section 5104, disorderly conduct includes potentially conduct covered by any definitions above. The statute also criminalizes "utter[ing] loud . . . language." As discussed above, "loud" speech is not exempted from First Amendment protection. Section 5104's narrowing mechanism is to criminalize only conduct or speech intended "to impede, disrupt, or disturb" the orderly proceedings of Congress. 40 U.S.C. § 5104(e)(2)(D).[6] However, even as narrowed the statute criminalizes protected political speech.

For example, the statute could criminalize a protestor loudly reading the names of military members killed in combat outside a session of congress in order to slow down a vote on a war resolution and compel legislators to consider the consequences of that resolution. The statute could criminalize a witness called to testify before a committee of Congress refusing to answer questions and instead holding up a sign with a political message.

The breadth and vagueness of the statute encourages arbitrary enforcement. In 2020, Jaime Guttenberg, a civilian guest of Speaker Nancy Pelosi, interrupted then-President Trump's State of the Union Address in the Capitol Building by shouting ""What about victims of gun violence, like my daughter?" Mr. Guttenberg's daughter had been killed in the mass shooting at a high school in Parkland, Florida. Although Capitol Police escorted Mr. Guttenberg out of the room and briefly detained him, the government never prosecuted him under section 5104. *See* Mahita Gajanan, *Father of*

---

[6] As discussed below, this element actually renders the statute a content-based restriction on speech.

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

*Parkland Shooting Victim Escorted from State of the Union After Protest*, Time, Feb. 5, 2020, https://time.com/5778312/fred-guttenberg-state-of-the-union-protest/. Mr. Guttenberg's conduct apparently fell within that criminalized by section 5104, yet the government elected not to prosecute him given his sympathetic message. By contrast, Mr. Rhine's alleged conduct does not clearly fall within the statute (discussed further below), yet he has been charged with the crime due to the unpopularity of his perceived message or purpose.

The breadth and vagueness of the disorderly conduct crime contained in section 5104 invites the arbitrary and selective enforcement that is a primary evil the Fifth Amendment is meant to prevent. The lack of parameters defining or offering guidance for enforcement of the statute invites such unequal enforcement—a harm of immense concern. *See Kolender*, 461 U.S. at 357–58. Congress's failure to clearly define the crime allows "policemen, prosecutors, and juries to pursue their personal predilections." *Id.* at 358. And, importantly, the breadth of the statute infringes on First Amendment-protected speech, rendering this vagueness particularly intolerable. The statute is unconstitutional.

4.    **Section 5104(e)(2)(G)—parading, demonstrating, or picketing in the Capitol or Capitol grounds—is overbroad, vague and unconstitutional.**

Section 5104(e)(2)(G) flatly prohibits all parading, demonstrating, and picketing in a Capitol Building. The plain language itself is strikingly broad, covering enormous swaths of protected First Amendment activity. The subsection does not limit itself to disruptive speech, protests, gatherings, or even audible oral expressions of ideas. The history of the law further shows the breadth of its prohibitions and makes clear that Mr. Rhine's contentions are well-founded ones.

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

During a statutory revision in 1967, Representative O'Neal stated, "I am a little bit disturbed about the language . . . wherein the proposed legislation, if adopted, would make it a violation to parade, demonstrate, or picket within any of the Capitol buildings." Congressional Record-House (October 19, 1967) at 29389, *available at* https://www.govinfo.gov/content/pkg/GPO-CRECB-1967-pt22/pdf/GPO-CRECB-1967-pt22-2-1.pdf [*hereinafter* "Congressional Record"]. Representative Bingham expressed concerns about overbreadth:

> I am deeply concerned about the broad scope, vague language, and possible interference with first amendment rights of the bill before us today. It was so hastily conceived and reported out of committee that no official views of the Justice Department or the District government were available. Moreover, there seems to be no disposition on the part of the bill's supporters to accept clarifying amendments.

Congressional Record at 29394. He also commented on the overly broad law's potential impact on peaceful, quiet visitors, describing the law as "a case of using a shotgun to eliminate a gnat." Congressional Record at 29395.

The past enforcement policy likewise shows the overbreadth of the language. *Cf. Forsyth Cnty., Ga. v. Nationalist Movement*, 505 U.S. 123, 131 (1992) ("In evaluating respondent's facial challenge, we must consider the county's authoritative constructions of the ordinance, including its own implementation and interpretation of it."). One Capitol Police regulation interpreting a previous codification of the instant statute was held unconstitutional in a case where a pastor was prohibited from quietly praying— under imminent threat of arrest—in the Capitol Building. *Bynum v. U.S. Capitol Police Bd.*, 93 F. Supp. 2d 50, 53 (D.D.C. 2000). The Capitol Police regulation explained that demonstration activity included:

> parading, picketing, speechmaking, holding vigils, sit-ins, or other expressive conduct that convey[s] a message supporting or opposing a point of view or has the intent, effect or propensity to attract a crowd of

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

onlookers, but does not include merely wearing Tee shirts, buttons or other similar articles of apparel that convey a message.

*Id*. (quoting Traffic Regulations for the Capitol Grounds § 158). The pastor challenged that regulation, arguing it was unconstitutional, and he succeeded on his motion for summary judgment.

The *Bynum* court reasoned that, while the regulation was justified to an extent to serve the statutory purpose of preventing disruptive conduct in the Capitol Building, "it sweeps too broadly by inviting the Capitol Police to restrict behavior that is in no way disruptive, such as 'speechmaking . . . or other expressive conduct . . .'" *Bynum*, 93 F.Supp.2d at 57 (quoting Traffic Regulations for the Capitol Grounds § 158). The court held that the regulation violated due process, explaining:

> It does not provide either permissible or sufficient guidance under the statute it purports to implement to survive a constitutional challenge. In fact, the definition of "demonstration" in the regulation—encompassing all expressive conduct, whether disruptive or not—appears to expand the restrictive powers given by statute to the Capitol Police rather than limit or guide them. This definitional "guidepost" thus has the potential to squelch nearly any type of expressive conduct, whether or not it is actually a demonstration, and may sweep within its scope expression that is protected by the First Amendment. The regulation therefore is both unconstitutionally overbroad and unconstitutionally vague.

*Bynum*, 93 F. Supp. 2d at 58. The court focused on the regulation rather than the statute itself, operating under the premise that the statute was limited to disruptive conduct. *Id*. at 57-58.

The premise that the statute is limited to disruptive conduct, however, was and remains demonstrably false, and does not render the statute constitutional. The text does not include such a limitation, and the legislative history shows that Congress did not intend to include one. At the time of the 1967 revision, Representative Edwards expressed that he believed the "parading, picketing, or demonstrating" language violated the First Amendment because it was not limited to disorderly or disruptive

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

conduct. Congressional Record at 29392. Representative Cramer stated that to add "with intent to disrupt the orderly conduct of official business" would "gut[ ] the section," eliminating any doubt as to whether the failure to include limiting language was inadvertent. *Id*. at 29394.

Perhaps unsurprisingly, the statute continues to give rise to interpretations just like the regulation at issue in *Bynum*. The United States Capitol Police Guidelines now offer the following interpretation:

> Demonstration activity is defined as any protest, rally, march, vigil, gathering, assembly or similar conduct engaged in for the purpose of expressing political, social, religious or other similar ideas, views or concerns protected by the First Amendment of the United States Constitution.[7]

Ironically, the current policy is even broader than the previous unconstitutional regulation: the newer version does not contain even the meager limitations that the previous version did. It directly defines demonstration to include virtually all protected First Amendment activity. In *Lederman v. United States*, a district court explained the problem with a similarly broad regulation:

> For instance, assuming that the ban was applied literally and evenhandedly, a group of congressional staffers or members of the general public who stood outside the Capitol arguing about the latest campaign finance bill, health care initiative, or welfare reform would presumably be risking citation or arrest for engaging in "expressive conduct that conveys a message supporting or opposing a point of view."

89 F. Supp. 2d 29, 41 (D.D.C. 2000), *on reconsideration in part*, 131 F. Supp. 2d 46 (D.D.C. 2001). The same is true here. Law enforcement policy indicates that the

---

[7] United States Capitol Police Guidelines for Conducting an Event on United States Capitol Grounds, Revised Oct. 6, 2014, *available at* https://www.uscp.gov/sites/uscapitolpolice.house.gov/files/wysiwyg_uploaded/Guidelines%20and%20Application%20for%20Conducting%20an%20Event%20on%20U.S.%20Capitol%20Grounds.pdf (last accessed Oct. 14, 2022).

MOTION TO DISMISS COUNTS
(*United States v. Rhine*, 21-CR-687) - 14

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

prohibition applies to nearly all First Amendment activity, and neither the plain language nor legislative history supports a contrary interpretation. The extraordinary breadth of the language is a feature, not a bug that can be finessed away with the right policy, regulation, or court opinion. Section 5104(e)(2)(G) is unconstitutionally overbroad.

Even if the Court rejects the Capitol Police's interpretation of the statute, the fact that the Capitol Police believe the term "demonstration" has this meaning demonstrates the statute's problematic breadth and vagueness. If law enforcement directors understand the language in the statute to prohibit "any protest, rally, march, vigil, gathering, assembly or similar conduct engaged in for the purpose of expressing political, social, religious or other similar ideas, views[,]"[8] it is likely many civilians do as well.

Indeed, other definitions of the terms "parade," "demonstrate," and "picket" similarly cover substantial protected speech. Relevantly, Merriam-Webster defines "parade" as "a public procession . . . usually to mark a holiday or event[,]"[9] defines "demonstration" as "a public display of group feelings toward a person or cause[,]"[10] and defines "picket" as "a person posted by a labor organization at a place of work affected by a strike" or "a protest or strike involving pickets."[11] Indeed, each of these words by their plain meaning covers core expressive speech.

---

[8] Note 7, *supra*.
[9] Merriam-Webster, Parade, https://www.merriam-webster.com/dictionary/parade (last visited Oct. 14, 2022).
[10] Merriam-Webster, Demonstration, https://www.merriam-webster.com/dictionary/demonstration (last visited Oct. 14, 2022).
[11] Merriam-Webster, Picket, https://www.merriam-webster.com/dictionary/picket (last visited Oct. 14, 2022).

MOTION TO DISMISS COUNTS
(*United States v. Rhine*, 21-CR-687) - 15

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

And, the statute is sufficiently vague that ordinary people are likely to have difficulty understanding what converts walking in a group into parading, and what converts gathering into demonstrating. Of even greater concern, this immense breadth and vagueness invites arbitrary and discriminatory enforcement. Ultimately, "any regulation that allows a police officer the unfettered discretion to restrict behavior merely because it 'conveys a message' or because it has a 'propensity to attract a crowd of onlookers' cannot survive a due process challenge." *Bynum*, 93 F. Supp. 2d at 58. Although the *Bynum* court placed the blame on the regulation, holding that the statute itself was constitutional, the current Capitol Police regulation is even less specific than the one in *Bynum*. This highlights how subjective the statutory language is. Evidently, guidance from a federal district court was not enough to narrow the ordinary meaning of the words in the eyes of those charged with enforcing them. It is easy to see why; "demonstrating" is an ambiguous word.

Even using the narrower definition of demonstration from Merriam-Webster (above) for the sake of argument, it remains unworkably vague for a criminal statute. Indeed, a child on a field trip remarking "We love our Capitol Police" while on a group tour of the building, or a tourist cheerfully singing "Battle Hymn of the Republic" in the atrium of the Capitol would both appear to be "demonstrating in the Capitol Building" under the dictionary definition.

It is unlikely that children on field trips or singing tourists will be arrested for parading, picketing, or demonstrating. However, "[t]he danger, of course, is that such a broadly-worded ban . . . would be selectively employed to silence those who expressed unpopular ideas regardless of whether the speaker created an obstruction or some other disturbance." *Lederman*, 89 F. Supp. 2d at 42.

MOTION TO DISMISS COUNTS
(*United States v. Rhine*, 21-CR-687) - 16

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

The legislative history shows that discriminatory and arbitrary enforcement was anticipated and even intended by some lawmakers. The statutory scheme dealing with conduct in the Capitol Building was revised following a case where Howard University students sat on the floor in response to the Speaker's refusal to commit to taking action on their petition. *Smith v. D.C.*, 387 F.2d 233, 236 (D.C. Cir. 1967). While the D.C. Circuit Court did not address the constitutionality of the federal statute (the government had not invoked it), it did advise the legislature to clarify that area of the law generally: "in view of the confusion apparent in the enforcement of these and related statutes, we commend to executive and legislative authorities a review of this entire area of the law." *Id*. at 237.

In response, Congress acknowledged the confusion-in-enforcement concern and "revise[d] the statutes relating to improper conduct in the Capitol Buildings"; House Report 90-745, noting that recent federal appeals "decisions highlight[ed] the confusion surrounding the existing laws, their implementation and their administration."1967 U.S.C.C.A.N. 1739, 1741. Representative Jerome Waldie expressed his minority view of the law as follows:

> I suggested that the qualifying phrase used in a portion of the misdemeanor section of the act, 'with intent to disrupt the orderly conduct of official business' should have been applied to all conduct sought to be controlled. The committee did not approve of this limitation. Without such a limitation, in my view, not only does the act become of questionable constitutionality, but it becomes an instrument capable of ensnaring innocent and well-meaning visitors within its provisions.

Id. at 1747.

The Congressional Record provides additional insight. Representative Colmer described some additional reason for the amendment, stating: "To be perfectly frank about this bill, it is brought about because of the fact that there is another one of the

numerous marches upon Washington anticipated here within the next few days."[12]
Congressional Record at 29388. Representative Colmer also cited the peaceful
actions—sitting outside of a committee room—of the Freedom Democratic Party of
Mississippi, which he described as "an extreme leftist group."[13] *Id.* He followed up that
statement by contending that the bill at issue would protect the Capitol from "these
misguided people who are bent on obstructing if not, in fact, destroying this, the
world's most democratic form of government." *Id.* Representative Ryan noted that the
law seemed "defective on First Amendment grounds" and "vaguely drafted."
Congressional Record at 29394.

Whatever the precise contours of the offense are, the plain statutory language
"forbid[s] all demonstrative assemblages of any size, no matter how peaceful their
purpose or orderly their conduct. A statute of that character is void on its face on both
First and Fifth Amendment grounds." *Jeannette Rankin Brigade v. Chief of Capitol
Police*, 342 F. Supp. 575, 587 (D.D.C.), *aff'd*, 409 U.S. 972 (1972). Further, with no
clarity or specificity as to what is meant by parading, picketing, or demonstrating, the
statute fails to put ordinary people on notice of what is prohibited and encourages
arbitrary and discriminatory enforcement. *Cf. Thornhill v. State of Alabama*, 310 U.S.
88, 100–01 (1940) ("The vague contours of the term 'picket' are nowhere delineated.").
Accordingly, section 5104(e)(2)(G) is unconstitutionally overbroad and vague on its
face.

---

[12] The March on the Pentagon, a massive protest against the Vietnam War,
would take place two days later.

[13] The Freedom Democratic Party of Mississippi was formed as part of Freedom
Summer and was supported by Dr. Martin Luther King. *See* "Mississippi Freedom
Democratic Party (MFDP)," *King Encyclopedia*; Stanford University Martin Luther
King, Jr. Research and Education Institute.

MOTION TO DISMISS COUNTS
(*United States v. Rhine*, 21-CR-687) - 18

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

**B.      Section 5104 is a content-based restriction on speech that cannot survive strict scrutiny.**

The statute at issue here prohibits speech based on its content—namely, it restricts speech and expressive conduct based on its subject matter—here, political speech. It also facially discriminates based on the identity of the speaker, further rendering it a content-based restriction on speech. The type of speech in question is at the heart of the First Amendment and the prohibition of it is presumptively unconstitutional. Generally, "A regulation of speech is facially content based under the First Amendment if it 'target[s] speech based on its communicative content'—that is, if it 'applies to particular speech because of the topic discussed or the idea or message expressed.'" *City of Austin, Texas v. Reagan Nat'l Advert. of Austin, LLC*, 142 S. Ct. 1464, 1471 (2022) (quoting *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015)).

This statute "explicitly regulates expression based on content . . . [so] is presumptively invalid, and the Government bears the burden to rebut that presumption." *United States v. Stevens*, 559 U.S. 460, 468 (2010) (internal quotations omitted). Furthermore, the proscribed speech is not exempt from First Amendment protection. "The First Amendment's guarantee of free speech does not extend only to categories of speech that survive an ad hoc balancing of relative social costs and benefits. The First Amendment itself reflects a judgment by the American people that the benefits of its restrictions on the Government outweigh the costs. Our Constitution forecloses any attempt to revise that judgment simply on the basis that some speech is not worth it." *Stevens*, 559 U.S. at 470. The First Amendment only tolerates restrictions "on a few historical categories of speech—including obscenity, defamation, fraud, incitement, and speech integral to criminal conduct[.]" *Id*. Both sections section 5104(e)(2)(D) and section 5104(e)(2)(G) restrict protected speech based on its content.

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

1    Importantly, a restriction is content based if it treats different **topics** or **subjects**

2  of speech differently, even if it remains **viewpoint** neutral. "[I]t is well established that

3  '[t]he First Amendment's hostility to content-based regulation extends not only to

4  restrictions on particular viewpoints, but also to prohibition of public discussion of an

5  entire topic.'" *Reed*, 576 U.S. at 169 (quoting *Consolidated Edison Co. of N. Y. v.

6  Public Serv. Comm'n of N. Y.*, 447 U.S. 530, 537 (1980)). The Court explained: "a

7  speech regulation targeted at specific subject matter is content based even if it does not

8  discriminate among viewpoints within that subject matter. . . . For example, a law

9  banning the use of sound trucks for political speech—and only political speech—would

10  be a content-based regulation, even if it imposed no limits on the political viewpoints

11  that could be expressed." *Id.*

12    Further, "a regulation of speech cannot escape classification as facially content

13  based simply by swapping an obvious subject-matter distinction for a 'function or

14  purpose' proxy that achieves the same result." *City of Austin, Texas*, 142 S. Ct. at 1474.

15  And even a facially content-neutral restriction may indeed be content-based "[i]f there

16  is evidence that an impermissible purpose or justification underpins a facially content-

17  neutral restriction, for instance, that restriction may be content based." *Id.* at 1475.

18    A content-based restriction on speech is presumptively invalid. The Constitution

19  "demands that content-based restrictions on speech be presumed invalid . . . and that the

20  Government bear the burden of showing their constitutionality." *Ashcroft v. American

21  Civil Liberties Union*, 542 U.S. 656, 660 (2004). Indeed, "content-based restrictions on

22  speech have been permitted, as a general matter, only when confined to the few

23  []historic and traditional categories [of expression] long familiar to the bar[.]" *United

24  States v. Alvarez*, 567 U.S. 709, 717 (2012). These include incitement, obscenity,

25

26

defamation, and speech integral to criminal conduct. *Id*. at 717–18. The political speech restricted by section 5104 does not fall into any of these categories.

1.  **Section 5104(e)(2)(D)—disorderly conduct—restricts speech and expressive conduct based on its purpose to impede or disrupt congressional proceedings.**

On its face, section 5104(e)(2)(D) restricts speech and expressive conduct that has a political purpose. As such, it is a content based restriction. *See City of Austin, Texas*, 142 S. Ct. at 1474. The statute makes it a crime to "utter loud, threatening, or abusive language, or engage in disorderly or disruptive conduct," in the Capitol "with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress, or the orderly conduct in that building of a hearing before, or any deliberations of, a committee of Congress or either House of Congress[.]" 40 U.S.C. 5104(e)(2)(D). Thus, the statute criminalizes certain speech, including "loud" speech or "disruptive" conduct, *only if* it has the purpose of impeding, disrupting, or disturbing congressional proceedings.

For example, loud speech with the purpose of corralling a class of second-graders visiting the Capitol is not criminal. Loud speech for the purpose of making a viral tiktok video is not criminal. Loud speech or disruptive clapping and cheering expressing support for Congress as it passes a bill is not criminal. But loud speech for the purpose of voicing opposition to a bill up for debate is. Similarly, throwing a paper airplane from the Senate gallery for the purpose of telling a friend you want to leave is not criminal. But throwing a paper airplane in the Senate gallery for the purpose of interrupting a senator's speech is. Shouting "stop the vote now!" from the House Gallery while Congress is in session would be criminalized. But shouting "you can do it" would not be. Section 5104 is indeed a content-based restriction on speech. *See City of Austin, Texas*, 142 S. Ct. at 1474 (when a regulation restricts speech based on its

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

"function or purpose" to achieve a content based restriction, it is a content based restriction on speech).

### 2. Section 5104(e)(2)(G)—parading, demonstrating, or picketing—restricts speech and expressive conduct based on the political nature of its content.

Section 5104(e)(2)(G) is a content based restriction on speech because the verbs criminalized describe expressive conduct with a political or religious message. Furthermore, as discussed above, the record indicates that the statute was passed for a content-based purpose—to restrict political speech.

As discussed above, the verbs criminalized—parading, demonstrating, or picketing—all describe speech or expressive conduct. Furthermore, the verbs specifically denote expressive conduct of a political or religious nature. Indeed, "demonstration" is defined in plain language as "a public display of group feelings *toward a person or cause*[,]"[14] and "picket" as "a person posted by a labor organization at a place of work affected by a strike" or "a *protest or strike* involving pickets."[15] While "parade" may also convey a celebratory or commemorative message, this definition is associated with holidays.[16] Relevantly, holidays are "holy days,"[17] or days of religious significance. In addition, the United States recognizes several holidays of political significance.[18]

---

[14] Merriam-Webster, Demonstration, https://www.merriam-webster.com/dictionary/demonstration (last visited Oct. 14, 2022) (emphasis added).

[15] Merriam-Webster, Picket, https://www.merriam-webster.com/dictionary/picket (last visited Oct. 14, 2022) (emphasis added).

[16] Merriam-Webster, Parade, https://www.merriam-webster.com/dictionary/parade (last visited Oct. 14, 2022).

[17] Merriam-Webster, Holiday, https://www.merriam-webster.com/dictionary/holiday (last visited Oct. 14, 2022).

[18] *See* Office of Personnel Mgmt., 2022 Holiday Schedule, https://www.opm.gov/policy-data-oversight/pay-leave/federal-holidays/#url=2022 (last visited Oct. 14, 2022).

MOTION TO DISMISS COUNTS
(*United States v. Rhine*, 21-CR-687) - 22

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

In essence, the statute criminalizes speech or expressive conduct of a political or religious nature. For example, the statute does not criminalize a group of students walking together and signing the ABCs while wearing their school t-shirts on a tour of the Capitol. But the statute would criminalize a group of students who were members of the Sunrise Movement walking together through the Capitol while chanting demands for action on climate change. The place and manner of the speech for the two scenarios is nearly identical. However, one has a political message and one does not.

Indeed, the Capitol Police guidelines' interpretation of the word demonstration make clear that the statute is understood to target political or religious speech:

> Demonstration activity is defined as any protest, rally, march, vigil, gathering, assembly or similar conduct engaged in for the purpose of expressing political, social, religious or other similar ideas, views or concerns protected by the First Amendment of the United States Constitution.[19]

The statute is thus facially content-based and presumptively invalid.

Even if the Court disagrees, a facially content-neutral restriction may indeed be content-based "[i]f there is evidence that an impermissible purpose or justification underpins a facially content-neutral restriction, for instance, that restriction may be content based." *City of Austin, Texas*, 142 S. Ct. at 1474. The congressional record here demonstrates that the law was passed with a purpose of restricting speech based on content.

As detailed above, Representative Colmer identified the reason that the statute was amended to its current form: "To be perfectly frank about this bill, it is brought

---

[19] United States Capitol Police Guidelines for Conducting an Event on United States Capitol Grounds, Revised Oct. 6, 2014, *available at* https://www.uscp.gov/sites/uscapitolpolice.house.gov/files/wysiwyg_uploaded/Guidelines%20and%20Application%20for%20Conducting%20an%20Event%20on%20U.S.%20Capitol%20Grounds.pdf (last accessed Oct. 14, 2022).

MOTION TO DISMISS COUNTS
(*United States v. Rhine*, 21-CR-687) - 23

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

about because of the fact that there is another one of the numerous marches upon Washington anticipated here within the next few days." Congressional Record at 29388. Representative Colmer also cited the peaceful actions—sitting outside of a committee room—of the Freedom Democratic Party of Mississippi, which he described as "an extreme leftist group." *Id*. He followed up that statement by contending that the bill at issue would protect the Capitol from "these misguided people who are bent on obstructing if not, in fact, destroying this, the world's most democratic form of government." *Id*. Such history cannot be ignored. Rather, it confirms that section 5104(e)(2)(G) is a content-based restriction on speech, which is presumptively unconstitutional.

### 3. Both subsections of section 5104(e) discriminate based on the identity of the speaker.

In addition, the entirety of section 5104(e) is a content based-restriction on speech because it discriminates based on the identity of the speaker. The conduct described above is criminalized for most people. However, certain government officials are ***specifically exempted*** from the restrictions on and penalties for the speech criminalized in section 5104(e). The statute provides:

> **Exemption of government officials.**—This subsection does not prohibit any act performed in the lawful discharge of official duties by—
> (A) a Member of Congress;
> (B) an employee of a Member of Congress;
> (C) an officer or employee of Congress or a committee of Congress; or
> (D) an officer or employee of either House of Congress or a committee of that House.

40 U.S.C. § 5104(e)(3). Thus, speech and expressive conduct that is criminal for a civilian, is not criminal for members of Congress or their staff.

The Supreme Court has made clear that the First Amendment does not tolerate such restrictions that discriminate based on the identity of the speaker:

MOTION TO DISMISS COUNTS
(*United States v. Rhine*, 21-CR-687) - 24

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

Premised on mistrust of governmental power, the First Amendment stands against attempts to disfavor certain subjects or viewpoints. . . . ***Prohibited, too, are restrictions distinguishing among different speakers, allowing speech by some but not others***. . . . As instruments to censor, these categories are interrelated: ***Speech restrictions based on the identity of the speaker are all too often simply a means to control content***.

*Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 340 (2010) (internal citations omitted) (emphasis added). In other word, a restriction that treats speakers differently based on their identity is likely a content based restriction on speech.

Such is the case here. This exemption for members of Congress and their staff protects the messages of these people while restricting the same types of messages from civilians. For example, as discussed above, civilian guest Jaime Guttenberg interrupted then-President Trump's State of the Union Address in the Capitol Building in 2020 by shouting "What about victims of gun violence, like my daughter?" Mr. Guttenberg's daughter had been killed in the mass shooting at a high school in Parkland, Florida. His conduct was criminalized under section 5104 and Capitol Police escorted Mr. Guttenberg out of the room and briefly detained him. *See* Gajanan, *supra*.

However, in 2009, then-Member of Congress Joe Wilson shouted, "you lie," interrupting President Obama during an address to Congress at the Capitol, disrupting and impeding the proceedings. Even though numerous elected officials condemned Representative Wilson's conduct, he was not detained or escorted from the room. *See* Carl Hulse, *In Lawmaker's Outburst, a Rare Breach of Protocol*, N.Y. Times, Sep. 9, 2009, https://www.nytimes.com/2009/09/10/us/politics/10wilson.html?searchResultPosition=1. This is not surprising. Under section 5104's exemption, Representative Wilson's conduct was not criminal, though nearly identical—and less egregious—conduct was criminal when committed by civilian Mr. Guttenberg. This differential treatment of

MOTION TO DISMISS COUNTS
(*United States v. Rhine*, 21-CR-687) - 25

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

different speakers based on their identities is, in effect, a content based restriction on speech. *See Citizens United*, 558 U.S. at 340. As such, the statute is presumptively unconstitutional.

Because Counts 3 and 4 charge crimes under an unconstitutional statute, both charges must be dismissed.

### C.  Alternatively, if the Court finds Section 5104 constitutional, the Court should dismiss Counts 3 and 4 for failure to allege an offense.

If the Court disagrees with Mr. Rhine' arguments above, the Court should still dismiss Counts 3 and 4 of the information. The Information fails to state an offense as to these two counts, but rather recites only the bare language of the statute.

In evaluating whether charging documents fail to state an offense, "[t]he operative question is whether the allegations in the indictment, if proven, permit a jury to conclude that the defendant committed the criminal offense as charged." *United States v. Akinyoyenu*, 199 F. Supp. 3d 106, 109 (D.D.C. 2016). Thus, charging documents "must do more than simply repeat the language of the criminal statute." *Russell v. United States*, 369 U.S. 749, 764 (1962). "To satisfy the protections that the Sixth Amendment guarantees, 'facts are to be stated, not conclusions of law alone.'" *United States v. Miller*, No. 1:21-CR-00119 (CJN), 2022 WL 1718984, at *3 (D.D.C. May 27, 2022) (quoting *United States v. Cruikshank*, 92 U.S. 542, 558 (1875)).

Additional interpretative rules apply when a criminal defendant challenges the statute's scope and its application to his alleged conduct. *United States v. Miller*, No. 1:21-CR-00119 (CJN), 2022 WL 823070, at *4 (D.D.C. Mar. 7, 2022), *reconsideration denied*, No. 1:21-CR-00119 (CJN), 2022 WL 1718984 (D.D.C. May 27, 2022). The first is the "prudent rule of construction": courts should exercise restraint in assessing the statute's reach to ensure fair warning and give deference to legislative intent. *Dowling v. United States*, 473 U.S. 207, 214 (1985). The second is the rule of lenity,

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

which requires courts to resolve statutory ambiguities in favor of criminal defendants. *Liparota v. United States*, 471 U.S. 419, 427 (1985).

Here, the charging document allegations are insufficient to prove Counts 3 and 4 even if taken as true, because they offer no more than legal conclusions. As to Count 3, "disorderly and disruptive conduct" requires some action that is disruptive, or that causes disorder. Simply put, none has been alleged here. Rather the charge merely recites language in the statute. It provides Mr. Rhine with absolutely no notice of what he is alleged to have said or done that was disorderly or disruptive conduct.

As to Count 4, there are numerous possible readings of the statute, but all plausible readings of "picketing" and "demonstrating" require some form of verbal or symbolic expression of a feeling, belief, or idea. All plausible readings of parading, going with its Merriam-Webster definition and ordinary meaning, would require some sort of marching or participation in a processional. And, even if they did not, the rule of lenity would require any ambiguity to be resolved in Mr. Rhine's favor.

While the Information accuses Mr. Rhine of being "in any of the Capitol Buildings" and "in any Capitol Building" on January 6, 2021, there are no specifics as to the facts and circumstances of any disorderly or disruptive conduct or any parading, picketing, or demonstrating. The charging documents do not allege Mr. Rhine engaged in any form of speech or expressive conduct in the Capitol Building. The bare recitation of the statutory language is not enough. Accordingly, Counts 3 and 4 fail to allege an offense against Mr. Rhine and must be dismissed.

## III.   CONCLUSION

This Court should dismiss Counts 3 and 4 of the information. The statute defining the crimes alleged is unconstitutional and infringes on core First and Fifth Amendment rights. The utterly sparse allegations in the Information compound these

MOTION TO DISMISS COUNTS
(*United States v. Rhine*, 21-CR-687) - 27

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

problems and fail to give Mr. Rhine notice of what criminal conduct he is alleged to have committed. Therefore, he Mr. Rhine respectfully asks this Court to dismiss Counts 3 and 4 of the Information.

DATED this 17th day of October 2022.

Respectfully submitted,

s/ *Rebecca Fish*
Assistant Federal Public Defender
Attorney for David Charles Rhine

MOTION TO DISMISS COUNTS
(*United States v. Rhine*, 21-CR-687) - 28

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**