JUDGE RUDOLPH CONTRERAS

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 21-CR-00687 (RC) |
| Plaintiff, | |
| v. | MR. RHINE'S REPSONSE TO THE GOVERNMENT'S MOTION *IN LIMINE* REGARDING EVIDENCE OF LAW ENFORCEMENT CONDUCT |
| DAVID CHARLES RHINE, | |
| Defendant. | |

The Court should deny the government's Motion *in Limine* to preclude most testimony or evidence into the actions or inactions of law enforcement. The government again over-reaches, and seeks to preclude plainly relevant evidence. But the government chose to bring charges that include as an element actions by government officials—namely restriction of a specified area. The order sought by the government would violate Mr. Rhine's rights under the Fifth and Sixth Amendments and must be denied.

I.  **ARGUMENT**

   A.   **Evidence of the actions and inactions of law enforcement is plainly relevant to the charges against Mr. Rhine and should be admitted.**

It is undisputed that evidence of the actions and inactions of law enforcement have "any tendency to make a fact more or less probable than it would be without the evidence" and that those facts are "of consequence" in this case. *See* Fed. R. Evid. 401. Indeed, "[t]he government acknowledges that the conduct of law enforcement officers may be relevant to the defendant's state of mind on January 6, 2021." Dkt. No. 40 at 4. Indeed, if law enforcement officers removed barriers, allowed people to enter the Capitol, or otherwise took no action to stop such entry, it makes it less likely that Mr.

RESPONSE TO THE GOVERNMENT'S
MOTION *IN LIMINE* REGARDING EVIDENCE
OF LAW ENFORCEMENT CONDUCT
(*United States v. Rhine*, 21-CR-00687 (RC)) - 1

**FEDERAL PUBLIC DEFENDER**
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

Rhine knowingly committed any of the crimes that the government has charged him with. Furthermore, the actions (for example in moving themselves or barriers) or inactions (in not posting barriers or restrictions) make it less likely that Mr. Rhine was in an area restricted under 18 U.S.C. § 1752.

Yet the government seeks to invade Mr. Rhine's Fifth Amendment right to remain silent by precluding this plainly relevant evidence "unless the defendant shows that, at the relevant time, he specifically observed or was otherwise aware of some alleged inaction by law enforcement[.]" Dkt. No. 40 at 4. This is not the standard.

To be clear, Mr. Rhine does not intend to present evidence wholly unrelated to him or the charges against him. However, inaction by law enforcement[1] in demarcating the alleged restricted area, or removal of barriers, is relevant to challenge the government's proof on the restricted area elements of Counts 1 and 2. This is true whether or not Mr. Rhine personally witnessed these events. Further, permissive actions or inactions by law enforcement in Mr. Rhine's general vicinity tend to make his knowledge that entry was not permitted less likely, even if Mr. Rhine did not personally interact with the officer(s) in question. Indeed, a law enforcement officer permitting people near Mr. Rhine to enter the Capitol makes it less likely that Mr. Rhine *knowingly* entered without authority. The government cannot force Mr. Rhine to the stand to testify about precisely what he recalls witnessing or not. Rather, the temporal and spatial proximity is sufficient to establish relevance.

The Court should deny the government's request to apply a lopsided and legally incorrect standard of relevance to Mr. Rhine. Furthermore, to the extent the government seeks to introduce evidence of barriers or law enforcement boundaries posted earlier in the day on January 6, it may not preclude Mr. Rhine from presenting or eliciting

---

[1] Assuming, *arguendo*, that the government's theory that a restricted area under section 1752 can be restricted by *any* agency (not only the Secret Service), the actions or inactions in marking such restricted area by *any* agency become relevant.

RESPONSE TO THE GOVERNMENT'S
MOTION *IN LIMINE* REGARDING EVIDENCE
OF LAW ENFORCEMENT CONDUCT
(*United States v. Rhine*, 21-CR-00687 (RC)) - 2

FEDERAL PUBLIC DEFENDER
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

evidence that such barriers were no longer posted at the time the government alleges Mr. Rhine committed the charged crimes.

### B. The government's reliance on *Chrestman* is mis-placed and, in any event, is inapplicable here.

The government relies on Chief District Judge Beryl A. Howell's non-binding opinion in *United States v. Chrestman*, 525 F. Supp. 3d 14 (D.D.C. 2021). Not only does this Court owe the opinion no deference, but also the relevant reasoning is near *dicta* within the opinion and, in any event, not applicable to the facts of Mr. Rhine's case. Mr. Rhine does not intend to argue that former President Donald Trump authorized him to commit violent crimes at his behest. Indeed, Mr. Rhine is not accused of any violent crimes. However, Mr. Rhine should not be precluded from presenting relevant statements by former President Trump *on* January 6 to the extent they cast doubt on the government's evidence that Mr. Rhine knowingly encroached on a restricted area. But *Chrestman* does not address this situation.

In *Chrestman*, Honorable Judge Howell ruled on a request by Mr. Chrestman to review the Magistrate Judge's detention order. In doing so, she analyzed the weight of the evidence against Mr. Chrestman, a factor for consideration under the Bail Reform Act. *See id*. at 28–33. Notably, the weight of the evidence is the least important factor for consideration under the Bail Reform Act (BRA). *See United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991), *cited with approval in United States v. Padilla*, 538 F. Supp. 3d 32, 43 (D.D.C. 2021).

Indeed, the District of Columbia Circuit has cautioned against overemphasis of this BRA factor precisely because the context (consideration of risk of flight or danger) and the lack of procedural protections raise the risk that courts will too readily pre-judge a person's guilt:

> The District Court also referred to the 'brazen act perpetrated in the instant case.' This was a determination on an issue that was not noticed

RESPONSE TO THE GOVERNMENT'S
MOTION *IN LIMINE* REGARDING EVIDENCE
OF LAW ENFORCEMENT CONDUCT
(*United States v. Rhine*, 21-CR-00687 (RC)) - 3

**FEDERAL PUBLIC DEFENDER**
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

> for hearing, a finding based solely on the claimed testimony of prosecution witnesses. No one may be confined on the ground that he has committed an offense when the determination is void of the protections that are the essentials of Anglo-American jurisprudence.
>
> It is true, of course, that 18 U.S.C. § 3146(b) requires the court to take into account 'the nature and circumstances of the offense charged (and) the weight of the evidence against the accused,' but the statute neither requires nor permits a pretrial determination that the defendant is guilty. It is important to observe rather than obliterate the fundamental precepts of our jurisprudence. This is not merely a matter of the proprieties, though that is itself not unimportant for judicial actions. If one bears in mind that one is examining only the evidence against the accused, for purposes of considering prospect of flight, one is more likely to guard against the impermissible course of reaching some kind of partial determination of guilt and of beginning what is in substance a mandate of punishment.

*United States v. Alston*, 420 F.2d 176, 179–80 (D.C. Cir. 1969). Judge Howell's analysis of the weight of the evidence in *Chrestman* was made in precisely this unbalanced context, and without the benefit of full briefing on the question of an entrapment by estoppel defense. *See Chrestman*, 525 F. Supp. at 29 ("This theory has not been fully briefed by the parties, and the question of former President Trump's responsibility, legal, moral, or otherwise, for the events of January 6, 2021 is not before this Court.").

Moreover, Judge Howell's analysis focused on the weight of the evidence *against Mr. Chrestman*, where the government proffered that "photos and video footage clearly show defendant in the front of the crowd, interfering with police barriers, confronting and threatening law enforcement, encouraging the crowd to 'take' the Capitol, and leading the mob and his co-conspirators in efforts to keep the metal barriers in the Capitol tunnels from closing, including by using his axe handle." *Chrestman*, 525 F. Supp. at 28–29. Mr. Chrestman contended that he and other members of the "proud boys" organization "'ha[d] the implicit approval of the state' and so 'acted on January 6.'" *Id.* at 29 (quoting pleading). This contention rested on the

RESPONSE TO THE GOVERNMENT'S
MOTION *IN LIMINE* REGARDING EVIDENCE
OF LAW ENFORCEMENT CONDUCT
(*United States v. Rhine*, 21-CR-00687 (RC)) - 4

FEDERAL PUBLIC DEFENDER
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

apparent adoption of the proud boys' activities by former President Donald Trump and his campaign, including former President Trump's public direction to the proud boys to "stand back and standy by[.]" *Id*.

Unsurprisingly, Judge Howell found that Mr. Chrestman's asserted defense was unlikely to succeed. Her analysis focused on Mr. Chrestman's proffered defense that former President Trump had authorized him to wield an axe, overturn physical barriers, disobey police in front of him, and otherwise commit crimes, by his public speeches and actions seeming to endorse the activities of the proud boys' organization. Judge Howell distinguished Mr. Chrestman's case from those where the Supreme Court had previously found an entrapment by estoppel defense was established, explaining Mr. Chrestman could not claim[2] he was "at all uncertain as to whether their conduct ran afoul of the criminal law, given the obvious police barricades, police lines, and police orders restricting entry at the Capitol." *Id*. at 32.

And Judge Howell reasoned that Mr. Chrestman's argument that former President Trump authorized his criminal conduct would not pass legal muster. *Id*. at 32–33 ("no President may unilaterally abrogate criminal laws duly enacted by Congress as they apply to a subgroup of his most vehement supporters."). This analysis led Judge Howell to conclude that the weight of the evidence against Mr. Chrestman was strong and weighed in favor of detention. *Id*. at 33. Nowhere in this opinion does Judge Howell claim that the actions, inactions, or authorizations of any law enforcement officer is irrelevant in any case arising from January 6. Rather, as detailed above, such evidence is relevant in Mr. Rhine's case.

---

[2] In her memorandum opinion, Judge Howell refers to "January 6 defendants" asserting an entrapment by estoppel defense. *Id*. at 32. However, she issued her opinion on February 26, 2021, several months before even a complaint was filed against Mr. Rhine. As detailed above, the evidence in Mr. Rhine's case and relevance of the actions of law enforcement is very different than that in Mr. Chrestman's case.

RESPONSE TO THE GOVERNMENT'S
MOTION *IN LIMINE* REGARDING EVIDENCE
OF LAW ENFORCEMENT CONDUCT
(*United States v. Rhine*, 21-CR-00687 (RC)) - 5

FEDERAL PUBLIC DEFENDER
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

1  In any event, this case is more akin to *Cox v. Louisiana*, 379 U.S. 559 (1965), than to *Chrestman*. Indeed, in *Cox*, the Chief of Police, in the presence of other community leaders, told an organizer he could stage a demonstration just over 100 feet from a courthouse. However, police later ordered the protestors to disperse and the state charged the organizer with violating a statute that prohibited picketing near a courthouse. *Id*. at 571. The Court held, "under all the circumstances of this case, after the public officials acted as they did, to sustain appellant's later conviction for demonstrating where they told him he could 'would be to sanction an indefensible sort of entrapment by the State—convicting a citizen for exercising a privilege which the State had clearly told him was available to him.'" *Id*. (quoting *Raley v. Ohio*, 360 U.S. 423, 426 (1959).

  C. **Limited statements by former President Trump *on* January 6 are relevant to challenge knowledge.**

Mr. Rhine does not intend to argue that former President Trump authorized him or anyone else to commit obvious crimes. However, some of former President Trump's public comments *on* January 6 do cast doubt on whether Mr. Rhine knew, or would have known, that the Capitol Building was restricted and no entry was permitted. Indeed, during his public address on the morning of January 6, former President Trump appeared to request that the Secret Service and other law enforcement agencies permit people entry into the area around his speech, requests that seem to have been granted:

> And I'd love to have if those tens of thousands of people would be allowed. The military, the secret service. And we want to thank you and the police law enforcement. Great. You're doing a great job. But I'd love it if they could be allowed to come up here with us. Is that possible? Can you just let him come up, please?[3]

---

[3] *Transcript of Trump's Speech at Rally Before US Capitol Riot*, Assoc. Press, Jan. 13, 2021, https://apnews.com/article/election-2020-joe-biden-donald-trump-capitol-siege-media-e79eb5164613d6718e9f4502eb471f27.

RESPONSE TO THE GOVERNMENT'S
MOTION *IN LIMINE* REGARDING EVIDENCE
OF LAW ENFORCEMENT CONDUCT
(*United States v. Rhine*, 21-CR-00687 (RC)) - 6

**FEDERAL PUBLIC DEFENDER**
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

Former President Trump later indicated that, after his speech, he would proceed with the crowd to the Capitol to cheer on those members of Congress he deemed courageous:

> Now, it is up to Congress to confront this egregious assault on our democracy. And after this, we're going to walk down, and I'll be there with you, we're going to walk down, we're going to walk down.
>
> Anyone you want, but I think right here, we're going to walk down to the Capitol, and we're going to cheer on our brave senators and congressmen and women, and we're probably not going to be cheering so much for some of them. . . .
>
> I know that everyone here will soon be marching over to the Capitol building to peacefully and patriotically make your voices heard.

*Id*. In conclusion, former President Trump stated again that he and the crowd ("we") would walk to the Capitol to encourage members of Congress to vote against certification of the electoral college results:

> So we're going to, we're going to walk down Pennsylvania Avenue. I love Pennsylvania Avenue. And we're going to the Capitol, and we're going to try and give.
>
> The Democrats are hopeless, they never vote for anything. Not even one vote. But we're going to try and give our Republicans, the weak ones because the strong ones don't need any of our help. We're going to try and give them the kind of pride and boldness that they need to take back our country.
>
> So let's walk down Pennsylvania Avenue.

*Id*. These statements made it less likely that Mr. Rhine would know that the Capitol building was restricted from peaceful protestors. During these remarks, President Trump demonstrated his apparent authority of the Secret Service and other law enforcement agencies, then repeatedly indicated that he would move with the crowd to the Capitol to engage in apparently lawful protest.

RESPONSE TO THE GOVERNMENT'S
MOTION *IN LIMINE* REGARDING EVIDENCE
OF LAW ENFORCEMENT CONDUCT
(*United States v. Rhine*, 21-CR-00687 (RC)) - 7

**FEDERAL PUBLIC DEFENDER**
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

Mr. Rhine would not introduce these statements to argue that President Trump authorized criminal conduct. Rather, these remarks make it less likely that Mr. Rhine knew the Capitol building was restricted from peaceful protest or cheering. Here, the sitting President first *demonstrated his authority* over the Secret Service and successfully instructed law enforcement to allow members of the public into an apparently restricted area. He then stated he would walk with the crowd to cheer or protest at the Capitol. These statements indicate that peaceful cheerers or protestors would not be restricted form the Capitol. And Mr. Rhine is alleged to have done no more than enter the Capitol, walk, and comply with later law enforcement commands. *See generally* Dkt. No. 1.

## II.     CONCLUSION

The Court should deny the government's Motion *in Limine*. The actions and inactions of are plainly relevant to the charges brought by the government. Mr. Rhine has a Sixth Amendment right to elicit such relevant evidence that undermines the government's proof on any element of the charges against him. Therefore, the Court should deny the motion.

DATED this 16th day of November, 2022.

Respectfully submitted,

s/ *Rebecca Fish*
Assistant Federal Public Defender

s/ *Joanna Martin*
Assistant Federal Public Defender

Attorneys for Mr. Rhine

RESPONSE TO THE GOVERNMENT'S
MOTION *IN LIMINE* REGARDING EVIDENCE
OF LAW ENFORCEMENT CONDUCT
(*United States v. Rhine*, 21-CR-00687 (RC)) - 8

**FEDERAL PUBLIC DEFENDER**
1331 Broadway, Suite 400
Tacoma, WA 98402
**(253) 593-6710**