JUDGE RUDOLPH CONTRERAS

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. 21-CR-00687 (RC) |
| Plaintiff, | ) | |
| v. | ) | MR. RHINE'S REPSONSE TO THE GOVERNMENT'S MOTION *IN LIMINE* REGARDING LOCATIONS OF CAPITOL SURVEILLANCE CAMERAS |
| DAVID CHARLES RHINE, | ) | |
| Defendant. | ) | |

The Court should deny the government's Motion *in Limine* to preclude cross-examination or introduction of evidence as to the location of Capitol Police surveillance cameras. *See* Dkt. No. 41. This motion again seeks to preclude more evidence than is necessary to achieve the government's goals (which themselves are quite vague) in violation of Mr. Rhine's constitutional rights. This motion is even more problematic because, again, the government seeks to have its cake and eat it too—it plans to introduce footage from these surveillance cameras but to preclude basic cross-examination or supplementation of this evidence. The Court should deny the motion.

I.   ARGUMENT

The government both intends to rely on Capitol Police surveillance footage to prove its case and to preclude basic cross-examination about the clarity and reliability of this video evidence. The government plainly intends to rely on the surveillance footage to prove all four charges. *See* Dkt. No. 41 at 1 ("To meet its burden of proof at trial, the government will present video evidence from a variety of sources, including Capitol Police surveillance footage."), 4 ("To meet these burdens [for elements of each

RESPONSE TO THE GOVERNMENT'S
MOTION *IN LIMINE* REGARDING
LOCATIONS OF CAPITOL SURVEILLANCE
CAMERAS
(*United States v. Rhine*, 21-CR-00687 (RC)) - 1

FEDERAL PUBLIC DEFENDER
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

1  charge filed against Mr. Rhine], the government will offer footage from Capitol Police
2  cameras showing that the defendant occupied restricted areas both inside and outside
3  the Capitol building, and that the defendant acted in a disorderly manner."). Yet the
4  government asks the Court to preclude Mr. Rhine from asking about even the height,
5  distance or anything more than the "general location" of any camera that captured the
6  footage the government intends to rely on. *See* Dkt. No. 41 at 4.

7      In making this request, the government relies on cases that simply apply the
8  rules of evidence and, nonetheless, are inapposite here. The D.C. Circuit in *United*
9  *States v. Whitmore* merely applied the Rules of Evidence (there Rule 403 and rules
10 related to impeachment and character evidence). *See* 359 F.3d 609, 616–23 (D.C. Cir.
11 2004) (holding the district court did not abuse its discretion in excluding opinion
12 testimony as to a law enforcement officer's character for dishonesty due to lack of
13 proper foundation, but **did** abuse its discretion in precluding cross-examination of the
14 officer on prior court's adverse credibility finding and the officer's apparent prior lies to
15 his employer under Rule 403). And the government otherwise cites to cases that present
16 scenarios simply not present here, whether cross examination entirely outside the scope
17 of direct examination, or solicitation of evidence *solely* relevant to an affirmative
18 defense on cross (as opposed to in a defendant's case-in-chief). *See* Dkt. 41 at 2–4
19 (citing *United States v. Balistreri*, 779 F.2d 1191, 1216-1217 (7th Cir. 1985) (evidence
20 outside the scope of cross); *United States v. Lin*, 101 F.3d 760, 768 (D.C. Cir. 1996)
21 (evidence without a reasonable factual grounding); *United States v. Sampol*, 636 F.2d
22 621, 663-64 (D.C. Cir. 1980); and *United States v. Stamp*, 458 F.2d 759, 773 (D.C. Cir.
23 1971) (evidence pertaining only to an affirmative defense prior to a *prima facie* case
24 being made for that defense)). These situations simply do not apply here.
25     Rather, evidence about the placement of cameras from which the government or
26 Mr. Rhine introduces surveillance footage is plainly admissible. Mr. Rhine does not

RESPONSE TO THE GOVERNMENT'S
MOTION *IN LIMINE* REGARDING
LOCATIONS OF CAPITOL SURVEILLANCE
CAMERAS
(*United States v. Rhine*, 21-CR-00687 (RC)) - 2

FEDERAL PUBLIC DEFENDER
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

1  intend to introduce the maps of all surveillance cameras, or information about
2  surveillance cameras not relevant to his case (though such maps may be needed to
3  refresh a witness's memory). Indeed, some description of a camera's location is
4  necessary to lay foundation, *see* Fed. R. Evid. 401, 901, something which the
5  government appears to concede, *see* Dkt. No. 41 at 4–5. Thus cross examination about
6  the specific location—the height, distance from the images depicted, etc., is not outside
7  the scope of such foundational testimony. *See* Fed. R. Evid 611(b). Indeed, the height
8  and distance of camera locations bears on the weight given to the depictions and on
9  jurors' understanding of the depictions (the finder of fact, for example, would likely
10 give less weight to a depiction of a person on a camera if that camera is placed very far
11 away from the subject as opposed to very close to it; the height of the camera will assist
12 in the trier of fact's understanding of the angle and how that may distort what is
13 depicted as compared to the perspective of a person standing in the space).

14 Indeed, the D.C. Circuit has encountered an analogous situation and ruled, in
15 that case, that the precise location of surveillance was relevant and admissible. In
16 *United States v. Foster*, the D.C. Circuit held that the "district court [] erred in
17 upholding an observation post privilege in derogation of Foster's right of cross-
18 examination." 986 F.2d 541, 544 (D.C. Cir. 1993). In that case, the government relied
19 on the testimony of a law enforcement officer who had used binoculars to observe an
20 apparent drug transaction in a public area near an apartment complex. The officer said
21 he observed a man matching Mr. Foster's description taking part in the transaction, and
22 called the description out over his radio. The district court precluded Mr. Foster from
23 cross-examining the officer about his precise vantage point (i.e. from which particular
24 unit or apartment he made the observation) citing "observation point privilege." *Id.* at
25 542–43. There, the government sought to shield the information because "disclosing the
26 observation post will destroy its usefulness in detecting criminal activity." *Id.* at 544.

RESPONSE TO THE GOVERNMENT'S
MOTION *IN LIMINE* REGARDING
LOCATIONS OF CAPITOL SURVEILLANCE
CAMERAS
(*United States v. Rhine*, 21-CR-00687 (RC)) - 3

FEDERAL PUBLIC DEFENDER
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

But the D.C. Circuit roundly rejected the government's argument in *Foster*. The Court explained:

> The theory assumes that information revealed in court will become known on the street. Yet on the government's theory drug dealers already know from this case that the police can watch this particular area from a distance. After Foster's trial, only a complete fool would openly conduct a drug transaction on the parking lot or the basketball court. If one made the same assumption the government makes, there might be no crime to detect from the observation post. Keeping the spot secret would, perhaps, deter those intent on committing crime from doing so in that area. All this, of course, is speculation. We have only the government's assertion about the effect of revealing the post. A defendant's right to cross-examination cannot be circumscribed on such a basis.

986 F.2d at 544. Here too, the government has offered no explanation for how its own introduction of surveillance video, and description of what area the video does or does not cover, does *not* impact the efficacy of surveillance cameras yet cross examination about the location of the camera that took that video does.

Furthermore, the government's claim, like that in *Foster* is based only on its bare assertion that testimony regarding the locations of relevant surveillance cameras creates a significant security risk. The government has publicly filed stills from some of these cameras in this case. *See* Dkt. No. 1. It is unclear why the government feels doing so presents no risk while basic cross examination to test the reliability and explain the framing of such evidence does. As the D.C. Circuit held in *Foster*, 986 F.2d at 544, Mr. Rhine's Sixth Amendment rights cannot be limited on the basis of government speculation.

The Court should deny the government's motion. To the extent the motion applies to introducing a map of the locations of all surveillance cameras at the Capitol, it is *moot*; Mr. Rhine intends to do no such thing. But to the extent the motion would preclude cross-examination or other introduction of evidence as to the locations of the cameras that were the sources of the government's primary evidence, the government's

RESPONSE TO THE GOVERNMENT'S
MOTION *IN LIMINE* REGARDING
LOCATIONS OF CAPITOL SURVEILLANCE
CAMERAS
(*United States v. Rhine*, 21-CR-00687 (RC)) - 4

FEDERAL PUBLIC DEFENDER
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

request must be denied. The order requested by the government would prevent Mr. Rhine from eliciting such foundational evidence as the distance of the relevant cameras from the subject(s) depicted, and the angle at which the cameras captured images. These are not trivial matters—indeed, a person's understanding of the distance from depicted subjects informs the distance at which they should view the depiction, and in turn, their understanding of the scene depicted (including their perception of the relative sizes and distances of subjects depicted, and potential distortion). *See generally* Emily A. Cooper, et. al., *The Perceptual Basis of Common Photographic Practice*, 12(5):8 J. of Vision 1–14 (May 2012), *available at* https://jov.arvojournals.org/article.aspx?articleid=2192052. The Court should deny the motion.

## II.   CONCLUSION

The Court should deny the government's Motion *in Limine* to severely limit evidence of the locations of relevant surveillance cameras. The government's own filings, and proposed introduction of surveillance camera evidence, undermine its claim that revelation about the locations of the cameras poses a security threat. Indeed, even that claim is based purely on speculation. Mr. Rhine's constitutional rights cannot be infringed on this claim. The Court should deny the motion.

DATED this 16th day of November, 2022.

Respectfully submitted,

s/ *Rebecca Fish*
Assistant Federal Public Defender

s/ *Joanna Martin*
Assistant Federal Public Defender

Attorneys for Mr. Rhine

RESPONSE TO THE GOVERNMENT'S
MOTION *IN LIMINE* REGARDING
LOCATIONS OF CAPITOL SURVEILLANCE
CAMERAS
(*United States v. Rhine*, 21-CR-00687 (RC)) - 5

FEDERAL PUBLIC DEFENDER
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710