UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Case No. 1:21-cr-687 (RC) |
| : | |
| DAVID CHARLES RHINE, : | |
| : | |
| Defendant. : | |

### REPLY IN SUPPORT OF UNITED STATES' MOTION *IN LIMINE* REGARDING USCP CAMERA MAP AND SPECIFIC LOCATIONS

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this Reply in Support of its Motion *in Limine* Regarding United States Capitol Police (USCP) Camera Map and Specific Locations. ECF No. 41.

In its motion *in limine*, the government sought to preclude the defendant from (i) offering into evidence maps produced in discovery which display the locations of the surveillance cameras operated by the USCP within the Capitol grounds and building; and (ii) eliciting testimony regarding the exact position of such cameras. In response, the defendant represents that he "does not intend to introduce the maps of all surveillance cameras, or information about surveillance cameras not relevant to his case." ECF No. 51 at 2-3. For that reason alone, the Court should grant the motion in so far as any maps of USCP surveillance cameras are concerned.

The defendant does, however, oppose any restrictions on eliciting testimony about the exact location of individual cameras—*i.e.*, information such as the exact height and coordinates of specific cameras whose footage is admitted into evidence. But the defendant offers no plausible explanation of how such evidence would be relevant, much less that any minimal probative value is not substantially outweighed by the danger to national security posed by disclosing that information. The defendant declares that "the height and distance of camera locations bears on

the weight given to the depictions and on jurors' understanding of the depictions" (ECF No. 51 at 3), but he offers scant reason to support that assertion. He posits that a jury "would likely give less weight to a depiction of a person on a camera if that camera is placed very far away from the subject as opposed to very close to it." *Id.* He also asserts that "a person's understanding of the distance from depicted subjects informs the distance at which they should view the depiction, and in turn, their understanding of the scene depicted." *Id.* at 5. But those are non sequiturs. The footage offered into evidence will speak for itself regardless of whether the camera is close or far. The footage's probative value will depend entirely on its quality—*i.e.*, its clarity—not on underlying facts about the camera's exact location, lens type, focal length, aperture, or exposure. And, in any event, the defendant can easily offer evidence about the camera's distance from particular objects depicted in the footage without eliciting testimony about the camera's specific location and height.

Nor is there merit to the defendant's related speculation that "the height of the camera will assist in the trier of fact's understanding of the angle and how that may distort what is depicted as compared to the perspective of a person standing in the space." Even assuming that such information bore some minimal probativeness, it would be substantially outweighed by the danger it poses to national security – the danger to Congress. At a minimum, before any such questioning is permitted, the defendant should be required to proffer a concrete and specific need for such testimony on a case-by-case basis.

Finally, the defendant's reliance on *United States v. Foster*, 986 F.2d 541 (D.C. Cir. 1993), is misplaced. In *Foster*, a law enforcement officer "giving eyewitness testimony" identified an accused at trial based on observations the officer made from a location forty feet above and 150 yards away from the crime scene. *Id.* at 542. When the defendant, on cross-examination, asked

the officer to "reveal the spot from which he made his observations," the government objected, and the district court sustained the objection. *Id.* In reversing the district court's ruling, the court of appeals reasoned that (i) the officer's eyewitness testimony "was crucial to the prosecution," and the defense "challenged [the witness's] perceptions, his ability to identify [the defendant] and the accuracy of his identification"; and (ii) "[w]ithout knowing the location of the observation post, the defense could not effectively probe the officer's memory or veracity" about "his estimate of the distance between him and [the defendant] and the angle of his view and his testimony that nothing blocked his line of sight." *Id.* at 543. Finally, the *Foster* court expressly distinguished *United States v. Harley*, 682 F.2d 1018, 1021 (D.C. Cir. 1982)—in which the D.C. Circuit *upheld* limitations on the disclosure of the specific location of an observation post—on the ground that, in *Harley*, a videotape of the events recorded from the officer's vantage point obviated the need to disclose the observation post's exact location. *Foster*, 986 F.2d at 543-544.

This case differs from *Foster* in each of these respects. First, whereas the issue in *Foster* was the location of an eyewitness who identified the defendant as the culprit, the issue in this motion is the exact location of cameras whose objective footage is admitted into evidence and, by definition, available to the jury. Second, whereas the location of the observation was critical in *Foster* to assess the "distance between the [officer] and the [defendant]," "the angle of his view," and the officer's "testimony that nothing blocked his line of sight," the same information in this case is either reflected in the footage itself (the line of sight and angle of view), or can be obtained without disclosing the cameras' exact location (the distance). Finally, but perhaps most importantly, whereas no recording of the officer's observation was available in *Foster*, the whole point in this motion is that USCP camera footage will be available and admitted into evidence. Far from finding support in *Foster*, the defendant's arguments are foreclosed by *Harley*.

## CONCLUSION

For the reasons set forth herein and in the government's motion *in limine* (ECF No. 41), the United States respectfully requests that this Court enter an order, as described above, limiting the presentation of evidence about the precise locations of Capitol Police surveillance cameras, especially through the use of Capitol Police maps.

Dated November 23, 2022.

                                        Respectfully submitted,

                                      MATTHEW M. GRAVES
                                      United States Attorney
                                      D.C. Bar No. 481052

By:  */s/ Francesco Valentini*
        FRANCESCO VALENTINI
        D.C. Bar No. 986769
        Trial Attorney
        United States Department of Justice, Criminal Division
        Detailed to the D.C. United States Attorney's Office
        601 D Street NW
        Washington, D.C. 20530
        (202) 598-2337
        francesco.valentini@usdoj.gov