**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Case No. 1:21-cr-687 (RC)** |
| | : | |
| **DAVID CHARLES RHINE,** | : | |
| | : | |
| **Defendant.** | : | |

**UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION**
**TO DISMISS COUNTS THREE AND FOUR**

Defendant David Charles Rhine asks this Court to dismiss Counts Three and Four of the Information, charging him with, respectively, Disorderly Conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D), and Parading, Demonstrating, and Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G). He claims that both provisions are overbroad and unconstitutionally vague. He also claims that they are impermissible content-based restrictions of protected speech. None of these claims has merit.

**BACKGROUND**

1.      At 1:00 p.m., on January 6, 2021, a Joint Session of the United States Congress, consisting of the House of Representatives and the Senate, convened in the Capitol Building. The Joint Session assembled to debate and certify the vote of the Electoral College of the 2020 Presidential Election. Prior to January 6, 2021, the U.S. Capitol Police, with authority over security on the Capitol grounds, had set up security barriers on the Capitol grounds. With the Joint Session underway and with Vice President Mike Pence presiding, a large crowd gathered outside the U.S. Capitol. At approximately 2:00 p.m., certain individuals in the crowd forced their way through, up, and over the barricades and officers of the U.S. Capitol Police, and the crowd advanced to the exterior façade of the building. Members of the U.S. Capitol Police attempted to

maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows. Shortly thereafter, at approximately 2:20 p.m., members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Mike Pence, were instructed to – and did – evacuate the chambers.

The defendant, a resident of Bremerton, Washington, traveled to Washington, D.C., in early January 2021.  On January 6, 2021, at approximately 2:42 p.m., the defendant entered the U.S. Capitol Building through the Upper House Door.  He was carrying cowbells and a blue flag with white stars.  Although a metal detector was present at the door, the defendant walked around it and did not go through any security screening.  While inside, the defendant walked through multiple locations in the Capitol and climbed stairs to the third floor.

On the third floor, the defendant was encountered by law enforcement officers with weapons drawn.  The officers directed the defendant and others present to drop to the floor.  The defendant complied and was patted down for weapons.  An officer found that the defendant was carrying two knives and a container of chemical spray.  The officer seized these items and secured the defendant's hands behind his back with flex cuffs.  Officers then escorted the defendant and others along a hallway and then down to the second floor, until they reached an interior area near the Rotunda Doors.  Once in the vicinity of the Rotunda Doors, the escorting officer directed the defendant to exit the building and left.  After the officer left, another rioter removed the flex cuffs from the defendant's hands.  The defendant then exited the building through the Rotunda Doors at approximately 3:05 p.m.

2.     Based on his actions on January 6, 2021, the defendant was arrested and later charged by Information with Entering or Remaining in a Restricted Building or Grounds Without Lawful Authority, in violation of 18 U.S.C. § 1752(a)(1); Disorderly or Disruptive Conduct in a

Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2); Disorderly Conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D); and Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G).  Rhine now moves to dismiss Counts Three and Four, asserting that Sections 5104(e)(2)(D) and (G) are unconstitutionally vague and overbroad and that they are facially unconstitutional.

3.   Congress passed the predecessor statute to Section 5104, which prohibits certain "unlawful activities" in Capitol Buildings, or on Capitol Grounds, or both, in 1946.  *See* Act of July 31, 1946, 60 Stat. 719, 720 (then codified at 40 U.S.C. § 193); *see Bynum v. U.S. Capitol Police Bd.*, 93 F. Supp. 2d 50, 53 (D.D.C. 2000).  One provision in the 1946 legislation made it a crime to "parade, stand, or move in processions or assemblages" or to display "any flag, banner or device designed or adapted to bring into public notice any party, organization, or movement" on Capitol Grounds.  *See* 40 U.S.C. § 193g (1964).[1]  In 1967, Congress enacted the provision that later became 40 U.S.C. § 5104(e)(2)(G), which makes it a crime "willfully and knowingly [to] parade, demonstrate, or picket in any of the Capitol Buildings."  40 U.S.C. § 5104(e)(2)(G) (originally enacted as 40 U.S.C. § 193f(b)(7)).  The 1967 legislation thus "ma[de] clear that the 1946 act relates not only to the Capitol Grounds but also to acts committed within the Capitol Building itself as well as other buildings located on the Capitol Grounds."  113 Con. Rec. H29,390 (daily ed. Oct. 19, 1967) (statement of Rep. Anderson).  In 1972, a three-judge panel of this Court struck down the prohibition in Section 193g (parading on Capitol Grounds), reasoning that although the government had a substantial interest in protecting the Capitol Grounds, that interest was not sufficient to "override the fundamental right to petition 'in its classic form' and to justify a blanket prohibition of all assemblies, no matter how peaceful and orderly, anywhere on Capitol

---

[1]   The prohibition contained certain exceptions not relevant here.  *See* 40 U.S.C. §§ 193j & 193k (1964).

Grounds." *Jeanette Rankin Brigade v. Chief of Capitol Police*, 342 F. Supp. 575, 585 (D.D.C. 1972).  In reaching that conclusion, the three-judge panel identified "existing laws regulating conduct" in the Capitol that its decision did not affect, including the prohibition in 40 U.S.C. § 5104(e)(2)(G).  *See id.* at 587-88.

## LEGAL STANDARDS

A defendant may move before trial to dismiss an information, or a count thereof, for "failure to state an offense."  *See* Fed. R. Crim. P. 12(b)(3)(B)(v).  The main purpose of a charging document, such as an indictment or (as here) an information, is to inform the defendant of the nature of the accusation.  *See United States v. Ballestas*, 795 F.3d 138, 148-149 (D.C. Cir. 2015) (discussing purpose of an indictment).  Thus, an information need only contain "a plain, concise, and definite written statement of the essential facts constituting the offense charged."  Fed. R. Crim. P. 7(c).  When assessing the sufficiency of criminal charges before trial, an information "must be viewed as a whole and the allegations [therein] must be accepted as true."  *United States v. Bowdoin*, 770 F. Supp. 2d 142, 145 (D.D.C. 2011)).  The "key question" is whether "the allegations … , if proven, are sufficient to permit a petit jury to conclude that the defendant committed the criminal offense as charged."  *Ibid.*

## ARGUMENT

Counts Three and Four of the Information charge the defendant with violating Section 5104(e)(2)(D) and Section 5104(e)(2)(G) of Title 40, respectively.  Count Three charges the defendant with willfully and knowingly engaging in disorderly and disruptive conduct in a Capitol Building with the intent to impede, disrupt, and disturb the orderly conduct of a congressional session or committee proceeding.  ECF No. 47 at 2.  Count Four charges the defendant with willfully and knowingly parading, demonstrating, or picketed in a Capitol Building.  *Id.* at 3.  The

4

defendant now moves to dismiss both counts, asserting that both provisions are facially unconstitutional on various grounds.  None of his claims has merit.

## I.     The Defendant's Overbreadth and Vagueness Claims Lack Merit

The defendant contends that Sections 5104(e)(2)(D) and (G) are overbroad and unconstitutionally vague.  ECF No. 47 at 4-18.  His arguments are unpersuasive.

### A.     Legal Principles

Overbreadth.   In the First Amendment context, as in others, "[f]acial challenges are disfavored." *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 450 (2008).  Facial overbreadth challenges – in which a defendant asserts that a statute, constitutionally applied to her, is nevertheless invalid because it would be unconstitutional in a "substantial number" of *other* cases, *id.* at 449 n.6 (internal quotation marks omitted) – are even more exceptional.   "'Because of the wide-reaching effects of striking down a statute on its face at the request of one whose own conduct may be punished despite the First Amendment,'" overbreadth is "'strong medicine'" to be employed "'only as a last resort.'"  *Los Angeles Police Dep't v. United Reporting Publ'g Corp.*, 528 U.S. 32, 39 (1999) (quoting *New York v. Ferber*, 458 U.S. 747, 769 (1982)); *cf. Virginia v. Hicks*, 539 U.S. 113, 119 (2003) (noting the "substantial social costs created by the overbreadth doctrine when it blocks application of a law to … constitutionally unprotected conduct") (emphasis omitted).

The Supreme Court has therefore "vigorously enforced the requirement that a statute's overbreadth be *substantial* … relative to the statute's plainly legitimate sweep." *Williams*, 553 U.S. at 292.  "[T]he mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge." *Members of the City Council v. Taxpayers for Vincent*, 466 U.S. 789, 800 (1984).  Rather, "there must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties

not before the Court." *Id.* at 801.  And laws that are "not specifically addressed to speech" are far less likely to present such a danger.  *Hicks*, 539 U.S. at 124; see *id.* (observing that "an overbreadth challenge" to such a law will "[r]arely, if ever, … succeed").

Vagueness.  The Due Process Clauses of the Fifth and Fourteenth Amendments prohibit the government from depriving any person of "life, liberty, or property, without due process of law."  U.S. Const. amends. V, XIV.  An outgrowth of the Due Process Clause, the "void for vagueness" doctrine prevents the enforcement of a criminal statute that is "so vague that it fails to give ordinary people fair notice of the conduct it punishes" or is "so standardless that it invites arbitrary enforcement."  *Johnson v. United States*, 576 U.S. 591, 595 (2015).  To ensure fair notice, "'[g]enerally, a legislature need do nothing more than enact and publish the law, and afford the citizenry a reasonable opportunity to familiarize itself with its terms and to comply.'"  *United States v. Bronstein*, 849 F.3d 1101, 1107 (D.C. Cir. 2017) (quoting *Texaco, Inc. v. Short*, 454 U.S. 516, 532 (1982)).  To avoid arbitrary enforcement, the law must not "vest[] virtually complete discretion" in the government "to determine whether the suspect has [violated] the statute."  *Kolender v. Lawson*, 461 U.S. 352, 358 (1983).

A statute is not unconstitutionally vague simply because its applicability is unclear at the margins, *Williams*, 553 U.S. 285, 306 (2008), or because a reasonable jurist might disagree on where to draw the line between lawful and unlawful conduct in particular circumstances, *Skilling v. United States*, 561 U.S. 358, 403 (2010).  "'Even trained lawyers may find it necessary to consult legal dictionaries, treatises, and judicial opinions before they may say with any certainty what some statutes may compel or forbid.'"  *Bronstein*, 849 F.3d at 1107 (quoting *Rose v. Locke*, 423 U.S. 48, 50 (1975) (per curiam)).  Rather, a provision is impermissibly vague only if it requires proof of an "incriminating fact" that is so indeterminate as to invite arbitrary and "wholly subjective" application.  *Williams*, 553 U.S. at 306; see *Smith v. Goguen*, 415 U.S. 566, 578 (1974).

The "touchstone" of vagueness analysis "is whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal." *United States v. Lanier*, 520 U.S. 259, 267 (1997).

A statutory provision is therefore "not rendered unconstitutionally vague because it 'do[es] not mean the same thing to all people, all the time, everywhere.'" *Bronstein*, 849 F.3d at 1107 (quoting *Roth v. United States*, 354 U.S. 476, 491 (1957)). A statute is instead vague where it fails to specify any "standard of conduct … at all." *Coates v. Cincinnati*, 402 U.S. 611, 614 (1971). "As a general matter," however, a law is not constitutionally vague where it "call[s] for the application of a qualitative standard … to real-world conduct; 'the law is full of instances where a man's fate depends on his estimating rightly … some matter of degree.'" *Johnson*, 576 U.S. at 603-604 (quoting *Nash v. United States*, 229 U.S. 373, 377 (1913)).

### B.   Section 5104(e)(2)(D) Is Neither Overbroad Nor Unconstitutionally Vague

The defendant contends (ECF No. 47 at 7-11) that Section 5104(e)(2)(D) is overbroad and unconstitutionally vague. He is incorrect on both fronts.

1.   The defendant has failed to carry the heavy burden of showing that Section 5104(e)(2)(D) is facially overbroad. As relevant here, Section 5104(e)(2)(D) provides:

> An individual or group of individuals may not willfully and knowingly … engage in disorderly or disruptive conduct, at any place in … any of the Capitol Buildings with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress, or the orderly conduct in that building of a hearing before, or any deliberations of, a committee of Congress or either House of Congress.

By its plain term, then, the operative prohibition in Section 5104(e)(2)(D) – disorderly or disruptive conduct – targets conduct, not speech. The prohibition, moreover, is paired with the "willfully and knowingly" scienter requirements, plus a requirement that the government prove the defendant's specific "intent to impede, disrupt, or disturb" a congressional session or

committee proceeding.  *See Williams*, 553 U.S. at 294 (focusing on scienter requirement in determining that statute was not overbroad).  In addition, as charged in the Information, the statute targets disorderly and disruptive conduct that occurs within the Capitol Building – a nonpublic forum in which, "[i]n addition to [imposing] time, place, or manner regulations," the government may restrict even speech and expressive conduct "as long as the regulation on speech is reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view." *Perry Education Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 47 (1983); *accord Int'l Soc. for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 679 (1992) (same); *see Bynum v. U.S. Capitol Police Bd.*, 93 F. Supp. 2d 50, 56 (D.D.C. 2000) ("[T]he inside of the United States Capitol is a nonpublic forum for First Amendment forum analysis purposes.").

Given this constellation of limitations, the defendant has failed show, at the very least, that Section 5104(e)(2)(D) is "substantial[ly]" overbroad relative to its "plainly legitimate sweep." *Washington State Grange*, 552 U.S. at 449 n.6 (internal quotation marks omitted).  The defendant's own prosecution – which involves roaming the halls of Congress without lawful authority, alongside other rioters and while carrying cowbells and a large flag – is illustrative of the numerous constitutionally legitimate applications of the statute to conduct and unprotected speech.  And far from showing a "realistic danger" of constitutionally problematic applications in other cases, *Taxpayers for Vincent*, 466 U.S. at 801, the defendant fails to identify a single actual example of a prosecution based on protected speech.  The limitations inherent in the crime of conviction, as noted, render the possibility of any such prosecutions marginal at best, and any such case could be the subject of an as-applied challenge.  Nothing calls for the "strong medicine," *Los Angeles Police Dep't*, 528 U.S. at 39 (internal quotation marks omitted), of overbreadth invalidation.

In response, the defendant asserts (ECF No. 47 at 10) that a conviction under Section 5104(e)(2)(D) could be based on "loud … language," which, he notes, is not per se "exempted

Case 1:21-cr-00687-RC   Document 57   Filed 11/30/22   Page 9 of 20

from First Amendment protection." But the defendant overlooks that, to be actionable under Section 5104(e)(2)(D), the utterance must also take place inside the Capitol Building (at least under the prong charged in this case) and be made both "willfully" – *i.e.*, with a bad purpose or knowledge that the conduct is unlawful – and with the intent to impede, disrupt, or disturb Congress. The First Amendment does not prevent the government from prosecuting willfully loud utterances that take place within the Capitol Building for the specific purpose of obstructing congressional proceedings. Even in the defendant's preferred example of overbreadth, then, the defendant has failed to identify any unconstitutional application of Section 5104(e)(2)(D).[2] At a minimum, he has failed to show the type of *substantial* overbreadth required for facial invalidation.

2.     The defendant has also failed to overcome the strong presumption that Section 5104(e)(2)(D) is not unconstitutionally vague. *See United States v. Nat'l Dairy Products Corp.*, 372 U.S. 29, 32 (1963) ("The strong presumptive validity that attaches to an Act of Congress has led this Court to hold many times that statutes are not automatically invalidated as vague simply because difficulty is found in determining whether certain marginal offenses fall within their language."). Section 5104(e)(2)(D) does not tie criminal culpability to "wholly subjective" terms such as "annoying" or "indecent" that are bereft of "narrowing context" or "settled legal meanings," *Williams*, 553 U.S. at 306, nor does it require application of a legal standard to an "idealized ordinary case of the crime," *Johnson*, 576 U.S. at 604. As charged in this case, the statute requires that a defendant, acting willfully and knowingly, "engage in disorderly or

---

[2]     One of the defendant's other hypotheticals describes an unremarkable act of obstruction that would fall squarely outside the First Amendment. See ECF No. 47 at 10 (hypothesizing an individual making loud utterances "outside a session of congress in order to slow down a vote"). As for the defendant's final hypothetical (which involves "a witness called to testify before a committee of Congress refusing to answer questions and instead holding up a sign with a political message," *id.*), it is not clear that it would constitute disorderly or disruptive conduct in the first place.

disruptive conduct" in the Capitol Building "with the intent to impede, disrupt, or disturb" a congressional session or committee proceeding.  Especially in light of the statute's triple scienter requirement – requiring proof of knowledge, willfulness, and specific intent to impede, disrupt, or disturb – Section 5104(e)(D) provides defendants with ample notice that their conduct may lead to criminal prosecution.  *See Gonzales v. Carhart*, 550 U.S. 124, 149 (2007).  Nothing more is required to dispose of the defendant's facial vagueness claim.

### C.       Section 5104(e)(2)(G) Is Neither Overbroad Nor Unconstitutionally Vague

Contrary to the defendant's contentions (ECF No. 47 at 11-18), Section 5104(e)(2)(G) is neither overbroad nor unconstitutionally vague.

1.       The defendant has failed to carry the heavy burden of showing that Section 5104(e)(2)(G) is facially overbroad.  Because "it is impossible to determine whether a statute reaches too far without first knowing what the statute covers," the "first step in overbreadth analysis is to construe the challenged statute."  *Williams*, 553 U.S. at 293.  The prohibition in Section 5104(e)(2)(G) presents "no ambiguity"; it "tells the citizen that it is unlawful for him" to parade, demonstrate, or picket inside the Capitol Building. *Jeanette Rankin Brigade*, 342 F.Supp. at 583.  The operative verbs – parade, demonstrate, and picket – principally target conduct rather than speech, and those verbs are again paired with the "willfully and knowingly" scienter requirements, *see Williams*, 553 U.S. at 294.  At the very least, the defendant cannot show that Section 5104(e)(2)(G) is "substantial[ly]" overbroad relative to its "plainly legitimate sweep." *Washington State Grange*, 552 U.S. at 449 n.6 (internal quotation marks omitted).  And, again, the defendant's own prosecution is illustrative of the numerous constitutionally legitimate applications of the statute to conduct and unprotected speech.

The defendant's counterarguments lack merit.  First, he relies (ECF No. 47 at 12-14) on *Bynum v. U.S. Capitol Police Bd.*, where Judge Friedman ruled that a Capitol Police regulation

interpreting Section 5104(e)(2)(G)[3] that defined "demonstration activity" to include "holding vigils" and "sit-ins" swept too broadly because it "invited the Capitol Police to restrict behavior that is no way disruptive." 93 F. Supp. 2d at 53, 57.  As an initial matter, *Bynum*'s invalidation of a Capitol Police regulation – which was applied to an individual who was denied permission to pray inside the Capitol building – does not inform the statutory challenge that the defendant presses here.[4]  Moreover, Judge Friedman in *Bynum* concluded that the inside of the Capitol building is a nonpublic forum, where the government may restrict First Amendment activity if "the restrictions are 'viewpoint neutral' and 'reasonable in light of the purpose served by the forum.'" *Id.* at 56 (citing *Cornelius v. NAACP Legal Defense and Educational Fund*, 473 U.S. 788, 806 (1985)).  He reasoned that, although the regulation at issue in that case went too far, Section 5104(e)(2)(G) itself set forth "legitimate purposes," *id.* at 57, that were "aimed at controlling only such conduct that would disrupt the orderly business of Congress – not activities such as quiet praying, accompanied by bowed heads and folded hands," *id.* at 58.[5]  In short, Judge Friedman concluded that, unlike the regulation at issue in *Bynum*, the statute itself was not "substantial[ly]" overbroad relative to its "plainly legitimate sweep." *Washington State Grange*, 552 U.S. at 449 n.6 (internal quotation marks omitted).

---

[3]     At the time, the provision was Section 193(f)(b)(7).

[4]     Similarly inapposite here is the defendant's invocation (ECF No. 47 at 14) of a current Capitol Police regulation.  The defendant does not, and could not, challenge that regulation in this case.

[5]     The defendant suggests (ECF No. 47 at 13-14) that the legislative debate over what became Section 5104(e)(2)(G) undercuts Judge Friedman's interpretation that the statute was designed to prevent conduct that disrupted congressional business.  Even putting aside the limited value of legislative history (*see infra*) on this point, the defendant confuses congressional debate about whether to add an additional intent requirement to the existing "willfully and knowingly" scienter in the statute with the actus-reus question – what type of conduct does "demonstrate" in Section 5104(e)(2)(G) encompass – at issue in *Bynum*.

The defendant's reliance (ECF No. 47 at 14-15) on *Lederman v. United States*, 89 F. Supp. 2d 29 (D.D.C. 2000), is also unavailing.  Like *Bynum*, *Lederman* involved a challenge to a Capitol Police regulation, and is of marginal, if any, relevance for that reason.  Furthermore, the regulation at issue there limited the areas within the Capitol *Grounds* in which individuals could engage in "demonstration activity," which in *Lederman* involved the distribution of leaflets in support of the arts.  *Id.* at 32.  Relying in part on *Jeanette Rankin Brigade*, *supra*, Judge Roberts in *Lederman* concluded that the entire Capitol Grounds constitute a traditional public forum, *id.* at 37, and that although the regulation left open alternative channels for expression, its imposition of a total ban burdened more speech than necessary. *Id.* at 38-39.  The hypothetical "group of congressional staffers" whose conduct would violate the regulation (and who the defendant cites (ECF No.47 at 14)) "stood outside the Capitol," and thus "within a traditional public forum."  *Id.* at 41.  But Section 5104(e)(2)(G)'s prohibition applies only within the nonpublic forum inside the Capitol buildings, rendering the hypothetical inapt.

Finally, the defendant adverts at various points to statements during the House debate on the statute.  But legislative history "is an uneven tool that cannot be used to contravene plain text." *United States v. Bingert*, 21-cr-91, 2022 WL 1659163, at *11 (May 25, 2022) (citing *Milner v. Dep't of Navy*, 562 U.S. 562, 574 (2011)).  The floor statements on which the defendant relies are "particularly 'unreliable.'"  *United States v. Powell*, 21-cr-179, ECF No. 73, at 6 (D.D.C. July 8, 2022) (citing *Duplex Printing Press Co. v. Deering*, 254 U.S. 443, 474 (1921)).  For example, in at least one instance, the defendant's citation to the legislative history is incomplete.  He accurately quotes (ECF No. 47 at 12) Representative O'Neal's statement that Representative O'Neal is "a little bit disturbed" about the language of the predecessor to Section 5104(e)(2)(G), but omits the later discussion in which Representative O'Neal makes clear that the basis for his concern was that the prohibition does not also include the Capitol Grounds.  *See* 113 Con. Rec. H29,390 (daily ed.

Oct. 19, 1967) (statement of Rep. O'Neal) (asking if "anyone would have an objection to adding the word 'grounds' to the new language").[6]

2.      The defendant has also failed to overcome the strong presumption that Section 5104(e)(2)(G) is not unconstitutionally vague.  *See Nat'l Dairy Products Corp.*, 372 U.S. at 32. The defendant's claim fails for the same reasons discussed in connection with Section 5104(e)(2)(D).   Section 5104(e)(2)(G) does not turn on "wholly subjective" terms such as "annoying" or "indecent" that are bereft of "narrowing context" or "settled legal meanings," *Williams*, 553 U.S. at 306, nor does it require application of a legal standard to an "idealized ordinary case of the crime," *Johnson*, 576 U.S. at 604.  The statute requires that a defendant, acting willfully and knowingly, parades, pickets, or demonstrates – in short, engages in disruptive conduct – inside the Capitol building.  *See Bynum*, 93 F. Supp. 2d at 57-58.  Again, while "it may be difficult in some cases to determine whether these clear requirements have been met," "'courts and juries every day pass upon knowledge, belief and intent – the state of men's minds – having before them no more than evidence of their words and conduct, from which, in ordinary human experience, mental condition may be inferred.'"  *Id.* (quoting *American Communications Ass'n, CIO v. Douds*, 339 U.S. 382, 411 (1950)).[7]

## II.     Neither Section 5104(e)(2)(D) Nor Section 5104(e)(2)(G) Is an Impermissible Content-Based Restriction On Protected Speech

The defendant contends (ECF No. 47 at 21-26) that Section 5104(e)(2)(D) and (G) are impermissible content-based regulations of speech.  His contentions lack merit.

---

[6]      Other representatives clarified that the law enacted in 1946 already included a similar prohibition that applied to the Capitol Grounds.  *See* 113 Con. Rec. H29,390 (daily ed. Oct. 19, 1967) (statement of Rep. Colmer) (noting that such an addition "would be surplusage").

[7]      For the reasons given above, the defendant's reliance on scattered comments during the floor debate in the House does not counsel a different outcome.

The First Amendment imposes limits on laws that "restrict expression because of its message, its ideas, its subject matter, or its content." *Ashcroft v. ACLU*, 535 U.S. 564, 573 (2002) (citation omitted). "A regulation of speech is facially content based under the First Amendment if it 'target[s] speech based on its communicative content' – that is, if it 'applies to particular speech because of the topic discussed or the idea or message expressed.'" *City of Austin, Texas v. Reagan Nat'l Advert. of Austin, LLC*, 142 S. Ct. 1464, 1471 (2022) (quoting *Reed v. Town of Gilbert, Arizona*, 576 U.S. 155, 163 (2015)). A content-based restriction on speech generally can stand only if "it passes strict scrutiny – that is, unless it is justified by a compelling government interest and is narrowly drawn to serve that interest." *Brown v. Entertainment Merchs. Ass'n*, 564 U.S. 786, 799 (2011). If a statute does not facially regulate pure speech or highly expressive conduct, it may be classified as a content-based regulation only if it "swap[s] an obvious subject-matter distinction for a 'function or purpose' proxy that achieves the same result." *City of Austin, Texas v. Reagan Nat'l Advert. of Austin*, LLC, 142 S. Ct. 1464, 1474 (2022); *see also United States v. O'Brien*, 391 U.S. 367, 376 (1968) (refusing to "accept the view that an apparently limitless variety of conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea"). To succeed in a "facial attack" (apart from an overbreadth challenge, *see supra*), the defendant "would have to establish 'that no set of circumstances exists under which [Section 1752(a)(2)] would be valid,' or that the statute lacks any 'plainly legitimate sweep.'" *United States v. Stevens*, 559 U.S. 460, 473 (2010) (citations omitted).

None of the defendant's arguments for finding Section 5104(e)(2)(D) or Section 5104(e)(2)(G) content-based are persuasive.

**A.      Section 5104(e)(2)(D) Is Not an Impermissible Content-Based Restriction On Speech**

The defendant contends (ECF No. 47 at 21-22) that Section 5104(e)(2)(D) should be deemed content-based.  That facial challenge fails at the threshold because Section 5104(e)(2)(D) does not target speech at all, much less speech based on its communicative content.  Section 5104(e)(2)(D) criminalizes certain conduct – *i.e.*, "engag[ing] in disorderly or disruptive conduct … with the intent to impede, disrupt, or disturb" a congressional session or committee proceeding – not speech as such.  As the events of January 6 demonstrate, Section 5104(e)(2)(D) can be violated in myriad ways that involve no protected expressive communication at all – for example, by assaulting law enforcement officers, threatening government officials, carrying cowbells and a large flag alongside other rioters, or just physically invading the Capitol Building at a time when it is restricted to the public and the joint session of Congress is certifying the Electoral College vote.  Because at least many of the statute's applications regulate not speech but only conduct, Section 5104(e)(2)(D) has a "plainly legitimate sweep," and the defendant's facial challenge fails. *Stevens*, 559 U.S. at 473 (citation omitted).

The defendant asserts (ECF No. 47 at 21-22) that Section 5104(e)(2)(D) should nonetheless be treated as a content-based regulation because it requires, in all cases, proof of the defendant's "intent to impede, disrupt, or disturb" a congressional session or committee proceedings – a requirement that the defendant characterizes as a discrimination based on the conduct's "political purpose."  ECF No. 47 at 21.  But the Supreme Court has squarely rejected the notion that "any classification that considers function or purpose is *always* content based." *City of Austin*, 142 S. Ct. at 1474.  A restriction on speech or expressive conduct that is based on "'function or purpose'" makes a statute content-based only if the disfavored function or purpose amounts to a "proxy that achieves the same result" as a content-based restriction. *Id.*  Section 5104(e)(2)(D)'s intent

requirement does no such thing.  Intent to impede, disrupt, or disturb Congress' proceedings is not a proxy for "political purpose."  It is a proxy for obstructing Congress' proceedings, which is quintessentially unprotected conduct.  The fact that such disorderly and disruptive conduct might sometimes also have a political *motive* does not render Section 5104(e)(2)(D)'s prohibition content-based.

Far from supporting the defendant's view, his examples (ECF No. 47 at 21) underscore that intent to impede, disrupt, or disturb Congress' work is *not* a proxy for protected speech. Consider, for example, the defendant's reference to "[l]oud speech for the purpose of making a viral tiktok video."  *Id.*  Contrary to the defendant's suggestion, such conduct *can* be criminal under Section 5401(e)(2)(D), so long as the conduct takes place in the Capitol building and is intended to impede a congressional session.  Or consider the defendant's example hypothesizing a "[l]oud speech or disruptive clapping and cheering expressing support for Congress as it passes a bill."  *Id.*  Contrary to the defendant's assertions, that conduct, too, can be criminal, if it is intended to impede Congress' function – say, by disrupting a Senator's "nay" vote.  Or consider, on the opposite side, a "loud speech for the purpose of voicing opposition to a bill up for debate." *Id.*  Such conduct would *not* come within the purview of Section 5104(e)(2)(D) if the speaker merely intends to voice opposition to the bill, but does not intend to impede, disrupt, or disturb the proceeding.  And in all cases, the speaker must act willfully – that is, with bad purpose for the speaker to have violated Section 5104(e)(2)(D).  The upshot is clear: Section 5104(e)(2)(D) is not a content-based restriction on speech just because some disruptors may be politically motivated.

**B.      Section 5104(e)(2)(G) Is Not an Impermissible Content-Based Restriction On Speech**

The defendant next contends (ECF No. 47 at 23-24) that Section 5104(e)(2)(G) is impermissibly content-based because the operative verbs – parading, demonstrating, and picketing

– "all describe speech or expressive conduct." *Id.* at 23.  That claim, however, just repackages his

overbreadth claim (*supra* pp. 10-13) and fails for the same reasons.   As already explained, the

operative verbs – parade, demonstrate, and picket – principally target conduct rather than speech.

Those verbs are also paired with the "willfully and knowingly" scienter requirements, *see*

*Williams*, 553 U.S. at 294, which further alleviate any overbreadth concerns.   And the floor

statements on which the defendant relies (ECF No. 47 at 23-24) are a "particularly 'unreliable'"

indicator of Congress's intent.  *Powell*, 21-cr-179, ECF No. 73, at 6 (citing *Duplex Printing Press*

*Co.*, 254 U.S. at 474).  At a minimum, the defendant has failed to carry the heavy burden of

showing that Section 5104(e)(2)(G) is facially unconstitutional.

C.     **Section 5104's Exemptions For Government Officials Does Not Render the Provision Content- Or Viewpoint-Based**

Finally, the defendant contends (ECF No. 47 at 24) that Section 5401(e) impermissibly

"discriminates based on the identity of the speaker" because it exempts "any act performed in the

lawful discharge of official duties" by Members of Congress and congressional employees.  40

U.S.C. § 5104(e)(3).

The defendant's claim again conflates regulations of conduct with restrictions on speech.

As already explained, Section 5401(e)(2)(D) and (G) target conduct, not speech, while implicating

expressive conduct at most incidentally.   Because neither Section 5401(e)(2)(D) nor Section

5401(e)(2)(G) "has the inevitable effect of singling out those engaged in expressive activity," the

First Amendment is not implicated, and Section 5401(e) need not satisfy a higher level of scrutiny.

*Arcara v. Cloud Books, Inc.*, 478 U.S. 697, 706-707 (1986).  Under rational basis review, the

exemption in 40 U.S.C. § 5104(e)(3) is unquestionably rationally related to the government's

interest in ensuring that Members of Congress and congressional staffers are uninhibited "in the

lawful discharge of [their] official duties." *Id.*  Indeed, that interest is so compelling – and Section

5401(e) so narrowly tailored to it – that the exemption would pass constitutional muster even under the more exacting test for content-neutral time, place, and manner restrictions on expressive conduct.  *See Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) (content-neutral speech restrictions must be "narrowly tailored to serve a significant governmental interest" and "they [must] leave open ample alternative channels for communication of the information").

## III.   Counts Three and Four Adequately Allege the Defendants' Offenses

Finally, the defendant asks this Court (ECF No. 47 at 26-27) to dismiss Counts Three and Four for failure to state an offense.  He complains that the charges in the Information contain "no specifics as to the facts and circumstances of any disorderly or disruptive conduct or any parading, picketing, or demonstrating" and that "bare recitation of the statutory language is not enough."  *Id.* at 27.  The defendant's claim is meritless.

A charging document is sufficient under the Constitution and Rule 7 of the Federal Rules of Criminal Procedure if it "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend," *Hamling v. United States*, 418 U.S. 87, 117 (1974), which may be accomplished, as it is here, by "echo[ing] the operative statutory text while also specifying the time and place of the offense." *United States v. Williamson*, 903 F.3d 124, 130 (D.C. Cir. 2018).  The validity of a charging document "'is not a question of whether it could have been more definite and certain.'"  *United States v. Verrusio*, 762 F.3d 1, 13 (D.C. Cir. 2014) (quoting *United States v. Debrow*, 346 U.S. 374, 378 (1953)).  And a charging document need not inform a defendant "as to every means by which the prosecution hopes to prove that the crime was committed."  *United States v. Haldeman*, 559 F.2d 31, 124 (D.C. Cir. 1976).  By providing the time and place of the offense charged and by stating facts that track the statutory language (ECF No. 8 at 2-3), the Information complied with all applicable requirements under the Constitution and Rule 7.

The defendant's reliance on *Russell v. United States*, 369 U.S. 749 (1962), in inapposite. In *Russell*, the Supreme Court considered the sufficiency of an indictment charging a defendant with refusing to answer questions that "'were pertinent to the question then under inquiry' by" a congressional subcommittee, in violation of 2 U.S.C. § 192.   *Russell*, 369 U.S. at 753.   The indictment returned in *Russell*, however, "failed to identify the subject under congressional subcommittee inquiry at the time the [defendant] was interrogated."   *Id.* at 752.   Because the subject of Congress' inquiry "is central to every prosecution under" 2 U.S.C. § 192, the Court concluded that "*[w]here guilt depends so crucially upon such a specific identification of fact*, … an indictment must do more than simply repeat the language of the criminal statute."   *Id.* at 764 (emphasis added).[8]   Here, in contrast, the Information made clear that the defendant's disorderly conduct occurred while he was inside the Capitol Building on January 6, 2021.   It therefore adequately identified all the relevant facts.

In any event, even if the allegations in Counts Three and Four were somehow defective, dismissal would not be the proper remedy.   Rule 12 permits a party to raise in a pretrial motion "any defense, objection, or request that the court can determine *without a trial on the merits*."   Fed. R. Crim. P. 12(b)(1) (emphasis added).   It follows that Rule 12 "does not explicitly authorize the pretrial dismissal of an indictment on sufficiency-of-the-evidence grounds" unless the government "has made a full proffer of evidence" or the parties have agreed to a "stipulated record," *United States v. Yakou*, 428 F.3d 241, 246-247 (D.C. Cir. 2005), neither of which has occurred here. Indeed, "[i]f contested facts surrounding the commission of the offense would be of *any* assistance

---

[8]   The defendant's quotation to *Russell* omits the critical qualification italicized above.   See ECF No. 47 at 26.   In addition, since *Russell*, the Supreme Court has distinguished *Russell* and reiterated that "[i]t is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as 'those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished.'"   *Hamling*, 418 U.S. at 117.

in determining the validity of the motion, Rule 12 doesn't authorize its disposition before trial." *United States v. Pope*, 613 F.3d 1255, 1259 (10th Cir. 2010) (Gorsuch, J.). For that reason alone, there is no basis for the defendant's request for a dismissal.

Finally, and lest there be any confusion, criminal defendants who need additional information about the charges against them have ample opportunity to obtain that information. Federal Rule of Criminal Procedure 7, for example, allows a defendant to move for a bill of particulars before or within 14 days after arraignment or at a later time if the court permits. Fed. R. Crim. P. 7(f). The defendant in this case has made no such request. That is not surprising. Not only did the Information in this case plainly put the defendant on notice of the charges against him. Since the Information was filed, the defendant has received extensive discovery – including video evidence – capturing his criminal conduct within the Capitol Building. His belated complaints ring hollow.

## CONCLUSION

For these reasons, the defendant's motion to dismiss Counts Three and Four of the Information should be denied.

Dated: November 30, 2022

<div style="margin-left: 40%">

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:   */s/ Francesco Valentini*
    FRANCESCO VALENTINI
    D.C. Bar No. 986769
    Trial Attorney
    United States Department of Justice, Criminal Division
    Detailed to the D.C. United States Attorney's Office
    601 D Street NW
    Washington, D.C. 20530
    (202) 598-2337
    francesco.valentini@usdoj.gov

</div>