UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Case No. 1:21-cr-687 (RC) |
| : | |
| DAVID CHARLES RHINE, : | |
| : | |
| Defendant. : | |

### UNITED STATES' OPPOSITION TO DEFENDANT'S
### MOTIONS *IN LIMINE*

Defendant David Charles Rhine asks this Court to grant four motions *in limine*, seeking to (I) preclude the government from eliciting testimony that, when he was arrested inside the U.S. Capitol on January 6, 2021, the Capitol Police's arresting officer seized two knives and a container of pepper spray; (II) preclude the government from arguing, or presenting evidence in support of, what the defendant characterizes as "vicarious liability"; (III) preclude the government from using a list of as-of-yet unidentified terms, including the words "riot" and "rioter," "insurrection" and "insurrectionist," "mob," and "trespass"; and (IV) preclude the government from introducing in its case-in-chief evidence or testimony that was not produced in discovery or noticed under the Federal Rules of Criminal Procedure or Rules of Evidence as of October 17, 2022.  As explained below, none of the defendant's requests has merit.  This Court should reject them.

### BACKGROUND

1. At 1:00 p.m., on January 6, 2021, a Joint Session of the United States Congress, consisting of the House of Representatives and the Senate, convened in the Capitol Building. The Joint Session assembled to debate and certify the vote of the Electoral College of the 2020

Presidential Election.  Prior to January 6, 2021, the U.S. Capitol Police, with authority over security on the Capitol grounds, had set up security barriers on the Capitol grounds.

With the Joint Session underway and with Vice President Mike Pence presiding, a large crowd gathered outside the U.S. Capitol.  At approximately 2:00 p.m., certain individuals in the crowd forced their way through, up, and over the barricades and officers of the U.S. Capitol Police, and the crowd advanced to the exterior façade of the building.  Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows.  Shortly thereafter, at approximately 2:20 p.m., members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Mike Pence, were instructed to – and did – evacuate the chambers.

The defendant, a resident of Bremerton, Washington, traveled from the State of Washington to Washington, D.C., in early January 2021.  On January 6, 2021, at approximately 2:42 p.m., the defendant entered the U.S. Capitol Building through the Upper House Door.  He was carrying cowbells and a blue flag with white stars.  Although a metal detector was present at the door, the defendant walked around it and did not go through any security screening.  While inside, the defendant walked through multiple locations in the Capitol and made his way to the third floor.

On the third floor, the defendant was encountered by law enforcement officers with weapons drawn.  The officers directed the defendant and others present to drop to the floor.  The defendant complied and was patted down for weapons.  An officer found that the defendant was carrying two knives and a container of pepper spray.  The officer seized these items and secured the defendant's hands behind his back with flex cuffs.  Officers then escorted the defendant and others along a hallway and then down to the second floor, until they reached an interior area near

the Rotunda Doors. Once in the vicinity of the Rotunda Doors, the escorting officer directed the defendant to exit the building and left. After the officer left, another rioter removed the flex cuffs from the defendant's hands. The defendant then exited the building through the Rotunda Doors at approximately 3:05 p.m.

2. Based on his actions on January 6, 2021, the defendant was arrested and later charged by Information with Entering and Remaining in any Restricted Building or Grounds Without Lawful Authority, in violation of 18 U.S.C. § 1752(a)(1); Engaging in Disorderly or Disruptive Conduct in any Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2); Disorderly Conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D); and Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G).

**ARGUMENT**

**I.     Evidence That the Defendant Possessed Two Knives and A Pepper Spray Container Inside the U.S. Capitol Building Is Admissible**

The defendant moves *in limine* to exclude testimony from a Capitol Police officer that, when the defendant was arrested inside the U.S. Capitol Building during the January 6 riot, he was found in possession of two knives and a container of pepper spray. His request lacks merit.

1. As part of the investigation into the defendant's activities, the FBI interviewed the Capitol Officer who arrested the defendant on January 6, 2021. The FBI conducted two interviews with the officer – one on July 19, 2021, and one on August 24, 2021. In the July 19 interview, the officer provided an overview of his encounter with the defendant during the January 6 riot. The officer described how he came in contact with the defendant as the defendant lay in the prone position in a hallway on the third floor of the U.S. Capitol Building; how another officer asked him to search the defendant; how he found and seized contraband from the

3

defendant; and how he handcuffed the defendant, escorted him downstairs, and ordered him to exit the U.S. Capitol Building. The FBI's interview memorandum for the July 19 interview states that the officer described the weapons seized from the defendant as "three knives and pepper spray." ECF No. 38-1 at 1.

During the August 24, 2021, the arresting officer provided additional detail about the weapons seized. ECF No. 38-3 at 1. The officer explained that he confiscated "two" (not three) "knives and a pepper spray container" from the defendant. The officer described the items as follows:

> Pepper Spray - Small Cylinder, Black/Silver, Brand Name - Sabre Red, used for self defense, a little bigger than the key chain type, not bear spray, no indication the pepper spray was used. It did not have any residue on the exterior.
>
> Smaller Knife - Approximately 2 inches long, folding, utility type knife, common knife.
>
> Larger Knife - Approximately 3 inches long, Brand Name - Karambit type, curved, folding blade.

ECF No. 38-3 at 1. The officer further explained that he believed that "all three items were legal in Washington DC and on Federal property," but that they "were not allowed in the US Capitol building." *Id.* The officer stated that he believed he found the pepper spray in the defendant's bag and the two knives in the defendant's coat. *Id.* The officer also explained that he "disposed of the two knives in his office break room trash," and that he "took the pepper spray home, emptied the spray in the woods behind his house, and threw the empty canister into the trash." *Id.* at 1-2. The officer explained that "January 6, 2021 was very chaotic" and he felt that this "was the best way to dispose of the pepper spray and canister." *Id.* at 2.

On August 24, 2021, the officer also sent an email to the FBI investigator with web links to items similar to the knives and pepper spray container that he confiscated from the defendant on January 6. ECF No. 38-2 at 1.

2. The defendant's request to exclude testimony regarding the seizure of the defendant's weapons is meritless. Contrary to the defendant's assertions (ECF No. 38 at 3-5), the evidence is relevant. Its probative value is not substantially outweighed by the any danger of unfair prejudice, of confusing the issues, or of wasting time. And the defendant's due process and Sixth Amendment claims are unfounded.

*First*, contrary to the defendant's contentions, evidence that the defendant carried two knives and a container of pepper spray into the U.S. Capitol Building as he joined the January 6 riot is both relevant and highly probative. Counts Two and Three charge the defendant with engaging in disorderly and disruptive conduct, in violation of 18 U.S.C. § 1752(a)(2), and 40 U.S.C. § 5104(e)(2)(D), respectively. Both offenses require proof of disorderly and disruptive conduct plus a specific intent: the intent, respectively, to impede or disrupt government business (Count Two), and an orderly session of Congress (Count Three). The fact that the defendant entered the U.S. Capitol Building armed with two knives and a container of pepper spray is probative of the defendant's specific intent as he entered and remained in that building: to be ready in case things turned violent. Nor is there merit to the defendant's attempt to characterize his weapons as "items … commonly carried for self-defense or convenience" (ECF No. 38 at 3): while the defendant is entitled to make that argument to the jury, he is not entitled to withdraw the evidence from the jury by having this Court accept his view of the evidence as the governing legal principle.

*Second*, the probative value of the evidence is not substantially outweighed by any danger of unfair prejudice, of confusing the issues, or of wasting time. *See* Fed. R. Evid. 403. The defendant is of course entitled to highlight, at trial, any inconsistency in the officer's statements regarding the number of knives that were seized. ECF No. 38 at 4. He may also urge the jury to draw inferences from the fact that, in the chaos of January 6, the officer did not preserve the

weapons after he seized them. *Id.* But the jury should be allowed to consider and, if it chooses, reject those arguments and find the evidence probative – especially considering that the defendant's encounter with the officer was captured by the Capitol Police's closed-circuit surveillance system. Finally, while the evidence might well prejudice the defendant, the prejudice will not be "unfair." Fed. R. Evid. 403. The evidence will simply – and appropriately – inform the jury's understanding of the defendant's motive and intent as he joined the January 6 riot.

*Third*, the defendant contends (ECF No. 38 at 5) that admitting the testimony about the weapons would "violate Mr. Rhine's right to due process under the Fifth Amendment and to a fair trial under the Sixth Amendment." *Id.* But the very authority on which the defendant principally relies, *California v. Trombetta*, 467 U.S. 479 (1984), *refutes* the defendant's theory in this case. *Trombetta* teaches that "[w]hatever duty the Constitution imposes on the States to preserve evidence, that duty must be limited to evidence that might be expected to play a significant role in the suspect's defense" – meaning that, at a minimum, the "evidence must … possess an *exculpatory* value that was apparent *before* the evidence was destroyed." *Id.* at 489 (footnote omitted; emphasis added). The defendant does not – and cannot – claim that the knives and pepper spray he carried into the U.S. Capitol Building had an apparent exculpatory value when they were seized from him in the midst of the January 6 riot or in the following days.

To be sure, had the defendant's weapons been preserved, their probative value would be greater than the Capitol Police officer's eyewitness testimony at issue in the defendant's motion. Indeed, had those weapons been preserved, the government likely would have charged the defendant with a felony violation of 18 U.S.C. § 1752, instead of a Class A misdemeanor. *See* 18 U.S.C. § 1752(b)(1)(A) (increasing statutory maximum for violations of Section 1752 to 10 years if "the person, during and in relation to the offense, uses or carries a deadly or dangerous

6

weapon or firearm"). But the fact that the weapons were not preserved does not warrant withdrawing the evidence from the jury altogether. The government should be allowed to elicit testimony about the weapons' seizure, subject to cross-examination by defense counsel.

II. **The Government Should Not Be Precluded from Presenting and Relying on the Conduct of Other Rioters, Which Is Relevant to Proving Both the Defendant's Disorderly and Disruptive Conduct and His Mens Rea and Motive**

As the defendant acknowledges (ECF No. 38 at 8), the government has not argued and will not argue at trial for guilt based on a vicarious liability theory.[1] But the defendant's motion *in limine* goes much further and tries to bar, under the banner of "vicarious liability," arguments and evidence that are rooted firmly in individual liability and that are plainly permissible. As reflected in other January 6 cases, the government expects to argue at trial that the conduct of other people who were in or around the Capitol on January 6 – and especially the conduct of people who were in the general vicinity of the defendant during the riot – informs and explains how the defendant's own individual conduct was disorderly and disruptive. The government also expects to argue that such evidence tends to prove the defendant's own motive and mens rea. Accordingly, evidence of the acts committed by others on January 6 – and especially evidence of the acts committed by other rioters in the general vicinity of the defendant – are relevant, probative, and admissible. The defendant's argument to the contrary lacks merit.

---

[1] The defendant could face criminal liability, of course, for any acts that he aided or abetted. 18 U.S.C. § 2. While the defendant notes that "the government has not charged … aiding and abetting" (ECF No. 38 at 7), accomplice liability is always at issue, whether or not pled in the indictment or information. *See United States v. Lam Kwong-Wah*, 924 F.2d 298, 302 (D.C. Cir. 1991) ("an indictment need not specifically include an aiding and abetting charge because, whether specified or not, the federal statute creating liability for aiding and abetting … is considered embodied in full in every federal indictment") (internal quotations omitted).

### A. The Conduct of Other Rioters Is Relevant to Proving the Defendant's Disorderly and Disruptive Conduct

The conduct of other rioters is relevant to proving the elements of the offenses charged in this case. As noted, Counts Two and Three charge the defendant with committing disorderly and disruptive conduct (in violation of 18 U.S.C. § 1752(a)(2), and 40 U.S.C. § 5104(e)(2)(D), respectively), and both offenses require proof of disorderly and disruptive conduct: with the intent to impede or disrupt government business (Count Two), and with the intent to impede, disrupt, or disturb an orderly session of Congress (Count Three). *Id.* Count Two also carries the additional requirement that the conduct "*in fact*, impedes or disrupts the orderly conduct of Government business or official functions." 18 U.S.C. § 1752(a)(2) (emphasis added). As can be seen from the jury instructions used in other January 6 cases, disorderly conduct includes conduct that is "unreasonably loud and disruptive under the circumstances." *E.g.*, *United States v. Matthew Bledsoe*, No. 1:21-cr-204 (BAH), ECF No. 215 at 9 (D.D.C. July 21, 2022). In other words, context matters.

To prove that the defendant's conduct was disorderly and disruptive, and that the defendant's conduct in fact impeded or disrupted Congress, the government expects to present testimony from law enforcement officers who served at the Capitol on January 6, 2021. The officers will explain that the Capitol building was closed to the public on January 6, 2021; that no member of the mob was authorized to be in the Capitol; that no member of the mob submitted to security checks; and that the Capitol Police assessed every member of the mob to be an active threat. Given a variety of factors, including the size of the crowd and the existence of multiple breach points, Congress was forced to recess. Congress could not resume its business until the entire mob was cleared. The defendant was in the building, and Capitol Police officers had to expel him (and others) before Congress could return from recess. In that way, his conduct was *in*

*fact* disruptive. And proof of this requires evidence of the conduct of other rioters. As Judge Kollar-Kotelly explained in another January 6 case:

> The following metaphor is helpful in expressing what the statute [18 U.S.C. §1752(a)(2)] *does* require. Just as heavy rains cause a flood in a field, each individual raindrop itself contributes to that flood. Only when all of the floodwaters subside is order restored to the field. The same idea applies in these circumstances. Many rioters collectively disrupted Congressional proceedings, and each individual rioter contributed to that disruption. Because [the defendant's] presence and conduct in part caused the continued interruption to Congressional proceedings, the Court concludes that [the defendant] in fact impeded or disrupted the orderly conduct of Government business and official functions.

*United States v. Jesus D. Rivera*, Case No. 1:21-cr-60 (CKK), ECF No. 62 at 13. In other words, the nature of these crimes requires proof of collective action. It was the mob's collective action – *i.e.*, the actions of the defendants alongside the actions of his fellow rioters – that disrupted Congress. This characterization misstates nothing and is fair argument for the jury.

> **B.     The Conduct of Other Rioters, Where the Defendant Could Have Observed It (or Where He Discussed It), Is Also Relevant to Proving His Mens Rea and Motive**

The conduct of other rioters is also relevant for another purpose. Where other rioters near the defendant did something that he could have observed, or where the defendant talked or wrote about the conduct of other rioters, their conduct is probative of his mens rea and motive.

The defendant's motion *in limine* suggests that contextual information about the conduct of other rioters around the defendant on January 6 "could only confuse the issues by inviting the jury to misapply the law and convict without unanimously finding beyond a reasonable doubt that Mr. Rhine's own conduct violated the law." ECF No. 38 at 8. But it is neither novel nor controversial to see other people's behavior as probative of a defendant's state of mind. Indeed, in other trials arising out of the January 6, 2021 riot at the Capitol, the government has made similar arguments about the relationship between the conduct of nearby rioters and other

9

defendants' states of mind. *E.g.*, *Rivera*, Tr. 6/15/2022 at 198 (Closing Argument) ("Mr. Rivera was part of a huge collective of people who disrupted Congress and the staff as they worked … He heard people chanting outside the building. 'Whose house? Our house.' He heard those same chants when he entered the building as well. He watched rioters confront law enforcement on the west front plaza and fight to fend off the mobs on the northwest stairs.")

To be sure, the defense may argue – if the evidence supports it – that the defendant failed to see, hear, or understand what was happening around him. But the defense should not be able to convert this argument into a legal principle which treats the events happening around the defendant as irrelevant. Context matters. The behavior of other rioters, together with other evidence, matters. That evidence tends to establish the defendant's intent and motive when he joined the other rioters in breaching the Capitol and remaining inside.

**III.    The Government Should Not Be Precluded From Using Accurate Descriptors Such As "Riot" and "Rioter," "Insurrection" and "Insurrectionist," "Mob," and "Trespass"**

The defendant argues that the Court should bar terms like "Riot" and "Rioter," "Insurrection" and "Insurrectionist," "Mob," and "Trespass," – among other as-of-yet unidentified "inflammatory, value-laden, or legally conclusory words" (ECF No. 38 at 10) – because, he claims, such terms are unduly prejudicial and their use would "frustrate the ends of justice." *Id.* His request lacks merit.

Evidence or language is unfairly prejudicial if it has "an *undue* tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *United States v. Sanford Ltd.*, 878 F. Supp. 2d 137, 143 (D.D.C. 2012) (quoting Fed. R. Evid. 403, advisory committee's note) (emphasis added). By their very nature, criminal charges involve an accusation that someone has wronged another person or has wronged society. Accordingly, such charges arouse emotion, and there is nothing improper about that. Indeed, while cautioning

against prosecutorial misconduct in *United States v. Berger*, the Supreme Court simultaneously recognized that "[t]he United States Attorney … may prosecute with earnestness and vigor – indeed, he should do so." 295 U.S. 78, 88 (1935). "[T]he law permits the prosecution considerable latitude to strike 'hard blows' based on the evidence and all reasonable inferences therefrom." *United States v. Rude*, 88 F.3d 1538, 1548 (9th Cir. 1996) (quoting *United States v. Baker*, 10 F.3d 1374, 1415 (9th Cir. 1993)). When a prosecutor's comments fairly characterize the offense, fairly characterize the defendant's conduct, and represent fair inferences from the evidence, they are not improper. *Cf. Rude*, 88 F.3d at 1548 (the use of words like victim, deceit, outlandish, gibberish, charlatan, and scam was not improper); *Guam v. Torre*, 68 F.3d 1177, 1180 (9th Cir. 1995) ("[T]here is no rule [of evidence or ethics] requiring the prosecutor to use a euphemism for [a crime] or preface it by the word 'alleged.'").

Here, the government should not be required to dilute its language and step gingerly around the defendant's crimes. Contrary to his insinuations, what took place on January 6, 2021, was, in fact, a riot involving rioters and an insurrection involving insurrectionists – it was an attack on the United States Capitol, the government of the United States, and American democracy. After carefully considering the facts of other January 6 cases, members of this Court have recognized the riot as just such an attack. *See, e.g.*, *United States v. Mostofsky*, 1:21-cr-138 (JEB), Sent. Tr. at 40–41, May 6, 2022 (describing the riot as an "attack," describing the Capitol as "overrun," and describing Mostofsky and other rioters as engaged in "an attempt to undermine [our] system of government."); *United States v. Rubenacker*, 1:21-cr-193 (BAH), Sent. Tr. at 147-148, May 26, 2022 (describing the defendant as "part of this vanguard of people storming the Capitol Building" as part of the initial breach, and finding that his conduct "succeeded, at least for a period of time, in disrupting the proceedings of Congress to certify the 2020 presidential election"); *United States v. Languerand*, 1:21-cr-353 (JDB), Sent. Tr. at 33-34,

11

January 26, 2022 ("[T]he effort undertaken by those who stormed the Capitol … involved an unprecedented and, quite frankly, deplorable attack on our democratic institutions, on the sacred ground of the United States Capitol building, and on the law enforcement officers who were bravely defending the Capitol and those democratic values against the mob of which the defendant was a part."). None of this language is hyperbole; rather, these findings used vivid language because they described a visceral and violent event. So, too, will prosecutors need to use appropriate language – and not euphemisms – to describe the nature and gravity of the defendant's conduct.[2]

### IV. The Government Should Not Be Precluded From Introducing in Its Case-in-chief Any and All Evidence or Testimony that Was Not Produced in Discovery or Properly Noticed As of October 17, 2022

The defendant asks the Court to preclude the government from introducing in its case-in-chief evidence or testimony that was not produced in discovery or properly noticed under the Federal Rules of Criminal Procedure or Rules of Evidence as of October 17, 2022, the date of the defendant's motion *in limine*. The Court should reject the defendant's request.

The government is fully aware of its obligation to provide timely discovery to the defense in criminal cases. Indeed, in this case the government (i) produced the bulk of its case-specific discovery in December 2021, within weeks of the Information's filing in November 2021; (ii) produced, in March 2022, additional discovery extracted from the defendant's cell phone; (iii) produced additional videos and documents in May 2022; (iv) produced a few additional FBI records on November 29, 2022; and (v) has produced 22 volumes of global discovery (*i.e.*, discovery applicable to all January 6 cases) on a rolling basis. As of this filing, the government

---

[2]   The government does not expect to use the word "trespass" during the presentation of the evidence. The government does of course expect to use the term in its opening and closing arguments – which the defendant concedes is "indisputably proper." ECF No. 38 at 11.

does not expect to introduce into evidence at trial any evidence or testimony that has not already been disclosed in discovery or properly noticed.

Having said that, the defendant's request is meritless. Trial is scheduled to start in this case on January 30, 2022 – approximately two months from today's date and 15 weeks from the October 17 "deadline" proposed in the defendant's motion. Nothing in the Federal Rules of Criminal Procedure, the Federal Rules of Evidence, or the applicable case law supports the defendant's request that this Court impose, two months before trial, the automatic and draconian penalty of suppression should any new and relevant evidence or testimony surface that warrants additional production or notice. Such a ruling would serve neither the judicial system's interest in preserving the truth-seeking function of criminal trials, nor the public interest in ensuring that guilty defendants are convicted for their offenses. It is also not necessary to protect the defendant from undue prejudice, absent a specific showing that the timing of a particular disclosure would in fact prejudice the defendant's ability to defend against the charges in this case. This Court should reject the defendant's request.

## CONCLUSION

For these reasons, the defendant's motions *in limine* should be denied.

Dated: November 30, 2022

        Respectfully submitted,

        MATTHEW M. GRAVES
        United States Attorney
        D.C. Bar No. 481052

By:  */s/ Francesco Valentini*
      FRANCESCO VALENTINI
      D.C. Bar No. 986769
      Trial Attorney
      United States Department of Justice, Criminal Division
      Detailed to the D.C. United States Attorney's Office
      601 D Street NW
      Washington, D.C. 20530
      (202) 598-2337
      francesco.valentini@usdoj.gov