UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> DAVID CHARLES RHINE, <br><br> Defendant. | Criminal No. 21-CR-687 (RC) <br><br> REPLY TO GOVERNMENT'S RESPONSE IN OPPOSITION TO MR. RHINE'S MOTION FOR CHANGE OF VENUE |

The Court should not accept the government's invitation to set an impossible standard for change of venue motions. Nor should the Court accept the government's contradictory positions that searching *voir dire* is the best way to achieve a fair jury, yet expanded *voir dire* should be denied here. Rather, the Court should grant Mr. Rhine's motion.

**I.   ARGUMENT**

First, the government quotes *Skilling v. United States* out of context to argue that the standard a defendant must meet for venue to be transferred is a showing that "12 impartial individuals could not be empaneled." 561 U.S. 358, 382 (2010) (quoted at Dkt. No. 55 at 7, 21). However, this quote arose in the Court's discussion of the massive size and diversity of the jury pool available in that case:

> In *Rideau*, for example, we noted that the murder was committed in a parish of only 150,000 residents. Houston, in contrast, is the fourth most populous city in the Nation: At the time of Skilling's trial, more than 4.5 million individuals eligible for jury duty resided in the Houston area. App. 627a. Given this large, diverse pool of potential jurors, the suggestion that 12 impartial individuals could not be empaneled is hard to sustain.

REPLY TO GOVERNMENT'S RESPONSE RE:
MOTION FOR CHANGE OF VENUE
(*United States v. Rhine*, 21-CR-687) - 1

**FEDERAL PUBLIC DEFENDER**
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

*Id*. The standard is not, as the government suggests, whether 12 impartial jurors may exist in the district, but rather whether the jury call and *voir dire* process can reasonably be expected to empanel an impartial jury.

On this point, the government misunderstands the record. First, the government harps on the fact that Mr. Rhine included evidence of opinions in the district surrounding Atlanta as a comparison to the District of Columbia, but does not specifically request transfer to Atlanta. *See* Dkt. No. 55 at 18. However, Mr. Rhine did not file his motion in an attempt to forum shop. Rather, he filed it to secure his Constitutional rights. The Atlanta Division of the Northern District of Georgia was selected as a comparison district to the District of Columbia by the Select Litigation study due to its substantially comparable size and demographic characteristics. *See* Dkt. 42-1, Ex. A at 5–6. The study selected a district with similar demographic characteristics to ensure that opinions would not merely be a proxy for a demographic characteristic (for example, race), which would be an impermissible reason to disqualify potential jurors. And, the study demonstrates that potential jurors in the District of Columbia voice substantially more bias against people prosecuted for charges related to January 6, 2021, than potential jurors in the comparison district. *See generally* Ex. A.

Additionally, the government misunderstands the number of potential jurors with likely conflicts of interest on Mr. Rhine's case. The government misconstrues Mr. Rhine's argument as suggesting that any federal employee would be biased in his case. *See* Dkt. 55 at 13–14. However, Mr. Rhine did not make such an argument. Indeed, undersigned counsel are federal employees. Rather, Mr. Rhine demonstrated that over 20,000 people are employed by agencies located *at* the Capitol Building. *See* Dkt. No. 42 at 10. Adding to this pool of potential jurors conflicted off from the already small

REPLY TO GOVERNMENT'S RESPONSE RE:
MOTION FOR CHANGE OF VENUE
(*United States v. Rhine*, 21-CR-687) - 2

**FEDERAL PUBLIC DEFENDER**
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

District of Columbia are the many empaneled and stricken jurors from the dozen or so trials on January 6-related cases that have already been held. *See* Dkt. No. 55 at 25–29.

Second, the government takes inconsistent and inexplicable positions on *voir dire*. On the one hand, the government repeatedly argues that *voir dire* is the best way to ensure a fair and impartial jury, and is the tool that should be employed to assess and guard against bias. *See* Dkt. No. 55 at 3–4, 8–9, 12–18, 28. However, the government then goes on to argue that the Court should *deny* Mr. Rhine's alternative request for expanded *voir dire*. *See* Dkt. No. 55 at 28–29.

The government's position defies common sense. Indeed, the only way the government levies such an argument is by misconstruing Mr. Rhine's alternative request. The government argues that Mr. Rhine's request for expanded *voir dire* via a pre-trial questionnaire should be denied because in-person *voir dire* is better. *See id*. However, Mr. Rhine never suggested that a pre-trial questionnaire should *replace* in-person *voir dire*. Rather, Mr. Rhine requested a questionnaire to *supplement* in-person *voir dire*.

Indeed, while in-person *voir dire* offers the benefits of immediate follow up, and the ability to observe a potential juror's demeanor, it also is generally a public setting where potential juror's are asked to share their most personal and potentially divisive views with an authority figure. Indeed, research indicates that the formal and unfamiliar courtroom setting, and public nature of in-person *voir dire* actually *inhibit* candor by prospective jurors. *See* Paula L. Hannaford-Agor & Nicole L. Waters, Jud. Council of California, Admin. Off. of the Cts., Examining Voir Dire in California, at 4–5 (Aug. 2004), *available at* https://www.courts.ca.gov/documents/voir_dire_report.pdf (citations omitted). Indeed, *voir dire* conducted primarily by a Judge is unlikely to elicit candid responses from potential jurors about their biases as Judges hold very high-status positions. Judges also educate potential jurors about the law as they question

REPLY TO GOVERNMENT'S RESPONSE RE:
MOTION FOR CHANGE OF VENUE
(*United States v. Rhine*, 21-CR-687) - 3

FEDERAL PUBLIC DEFENDER
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

them, and potential jurors are thus inclined to give answers they believe will please the Judge. *See* Judge Mark W. Bennett, *Unraveling the Gordian Knot of Implicit Bias in Jury Selection: The Problems of Judge-Dominated Voir Dire, the Failed Promise of Batson, and Proposed Solutions*, 4 Harv. L. & Pol'y Rev. 149, 160 (2010). As Honorable District Judge Mark W. Bennett observed:

> As a district court judge for over fifteen years, I cannot help but notice that jurors are all too likely to give me the answer that they think I want, and they almost uniformly answer that they can "be fair." . . . There is also a temptation, not always resisted on my part, to pose questions with the intent of educating jurors about proper responses, in light of the presumption of innocence or other considerations in the trial.

*Id*. Where, as here, the issues raised at trial are likely to raise strong feelings, emotions, and biases, it is critical that *voir dire* is conducted in a manner that will best enable potential jurors to be candid.

The supplemental questionnaire will help ensure that potential jurors may share pertinent information and views that they may be too embarrassed or afraid to share in a public setting. It will allow potential jurors to answer questions in a comfortable environment without fearing they will disappoint an authority figure. The government's attempts to shortchange this process should be rejected.

## II.     CONCLUSION

The Court should reject the government's arguments and should transfer venue for trial to a district where there is not such a high portion of the limited pool of potential jurors who hold disqualifying biases or conflicts of interest. In the alternative, the Court should order expanded *voir dire*, including a pre-trial questionnaire to supplement in-person *voir dire*.

/ / /

/ / /

/ / /

REPLY TO GOVERNMENT'S RESPONSE RE:
MOTION FOR CHANGE OF VENUE
(*United States v. Rhine*, 21-CR-687) - 4

**FEDERAL PUBLIC DEFENDER**
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

DATED this 7th day of December, 2022.

        Respectfully submitted,

*s/ Rebecca Fish*
*s/ Joanna Martin*
Assistant Federal Public Defenders
Attorneys for David Charles Rhine

REPLY TO GOVERNMENT'S RESPONSE RE:
MOTION FOR CHANGE OF VENUE
(*United States v. Rhine*, 21-CR-687) - 5

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**