UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) Criminal No. 21-CR-687 (RC) |
| Plaintiff, | ) |
| v. | ) [AMENDED] REPLY TO GOVERNMENT'S RESPONSE IN OPPOSITION TO MR. RHINE'S MOTION TO DISMISS COUNTS 3 AND 4 OF THE INFORMATION |
| DAVID CHARLES RHINE, | ) |
| Defendant. | ) |

The government attempts to defeat Mr. Rhine's Motion to Dismiss Counts 3 and 4 of the Information with conclusory claims that the statute at issue regulates conduct only and is saved by a general scienter requirement. The government fails to effectively refute the statute's content-based regulation on First Amendment protected activities and raises only conclusory arguments that the restriction is justified. The government asks the Court to find the statute sufficiently clear and narrow to withstand constitutional muster. However, the government's own arguments and hypotheticals affirm the impermissible vagueness and breadth of the statute. *See* Dkt. No. 57. As such, the government's arguments are unavailing and the Court should grant Mr. Rhine's motion.

I.   ARGUMENT

The government raises no winning arguments to counter Mr. Rhine's Motion to Dismiss Counts 3 and 4 of the Information. First, the government incorrectly asks the Court to apply a heightened standard to Mr. Rhine's facial attacks. The argument misstates the case law and should be rejected. Second, the government argues that the Capitol Building is a non-public forum under the First Amendment, but relies on an incomplete understanding of the space's use to do so. Third, the government does not

REPLY TO GOVERNMENT'S RESPONSE RE:
MOTION TO DISMISS COUNTS 3 AND 4
(*United States v. Rhine*, 21-CR-687) - 1

FEDERAL PUBLIC DEFENDER
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

demonstrate that the restrictions on speech contained in § 5104 are either content- or viewpoint-neutral. Further, the government's assertions that the restrictions are justified are conclusory and lack support in law or fact. Finally, the government fails to demonstrate that the statute is sufficiently definite under the Fifth and First Amendments. Rather, its own hypotheticals and quibbles with Mr. Rhine's hypotheticals demonstrate the statute's unconstitutional vagueness.

A. **The Court should reject the government's advocated standard for a facial challenge, and, in any event, Mr. Rhine's case also presents an appropriate as applied challenge.**

The government implores the court to impose an incorrect standard to Mr. Rhine's facial challenge to the statute under the First Amendment. The government argues, "To succeed in a 'facial attack' (apart from an overbreadth challenge, []), the defendant 'would have to establish "that no set of circumstances exists under which [Section 1752(a)(2)] would be valid," or that the statute lacks any "plainly legitimate sweep."'" Dkt. No. 57 at 14 (quoting *United States v. Stevens*, 559 U.S. 460, 473 (2010) (citations omitted)). However, the government quotes *Stevens* out of context for a proposition the case does not actually support.

Rather, *Stevens* recites *competing* standards that were potentially applicable at the time to a facial challenge that did *not* implicate the First Amendment. *See Stevens*, 559 U.S. at 472–73. Indeed, *Stevens* continues to explain that the standard for a facial challenge to a statute because it encroaches on First Amendment-protected activity is far lower. *Id.* at 473. Indeed, the Court should scrutinize any statute that risks chilling First Amendment-protected activity. Where First Amendment concerns are implicated, scrutiny of vagueness and overbreadth is heightened given the possibility that a criminal statute may intrude upon constitutionally protected activity. *Holder v. Humanitarian Law Project*, 561 U.S. 1, 19 (2010). "To trigger heightened vagueness

REPLY TO GOVERNMENT'S RESPONSE RE:
MOTION TO DISMISS COUNTS 3 AND 4
(*United States v. Rhine*, 21-CR-687) - 2

FEDERAL PUBLIC DEFENDER
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

scrutiny, it is sufficient that the challenged statute regulates and potentially chills speech which, in the absence of any regulation, receives some First Amendment protection." *Cal. Teachers Ass'n v. State Bd. of Educ.*, 271 F.3d 1141, 1150 (9th Cir. 2001). Criminal statutes "that make unlawful a substantial amount of constitutionally protected conduct may be held facially invalid even if they also have legitimate application." *City of Houston v. Hill*, 482 U.S. 451, 459 (1987).

Further, it is well established that facial challenges to statutes that chill First Amendment activity are not only permitted, but necessary for protection of the right. When a law chills First Amendment protected activities, "[t]he objectionable quality of vagueness and overbreadth does not depend upon absence of fair notice to a criminally accused or upon unchanneled delegation of legislative powers, but upon the danger of tolerating, in the area of First Amendment freedoms, the existence of a penal statute susceptible of sweeping and improper application." *N.A.A.C.P. v. Button,* 371 U.S. 415, 432–33 (1963).

Indeed, the government's advocated standard is no longer even correct for facial challenges based on the Fifth Amendment alone. In *Johnson v. United States*, the Supreme Court required no heightened showing that the vague residual clause was impermissible in all its applications. *See* 576 U.S. 591, 603 (2015) ("It seems to us that the dissent's supposed requirement of vagueness in all applications is not a requirement at all, but a tautology: If we hold a statute to be vague, it is vague in all its applications (and never mind the reality)."); *see also United States Telecom Ass'n v. Fed. Commc'ns Comm'n*, 825 F.3d 674, 735–36 (D.C. Cir. 2016) (recognizing *Johnson*'s rejection of the supposed heightened bar for a facial vagueness challenge). The Court should reject the government's attempt to raise the bar that Mr. Rhine must meet to succeed on his facial attacks on the statute.

REPLY TO GOVERNMENT'S RESPONSE RE:
MOTION TO DISMISS COUNTS 3 AND 4
(*United States v. Rhine*, 21-CR-687) - 3

FEDERAL PUBLIC DEFENDER
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

In any event, the § 3104 charges are unconstitutionally vague, overbroad, and violative of the First Amendment as applied to Mr. Rhine. In an as applied vagueness challenge, "the vagueness doctrine's fundamental concern [is] that parties have fair notice that they are subject to an enactment[.]" *United States v. Thomas*, 864 F.2d 188, 196 (D.C. Cir. 1988). Here, Mr. Rhine's alleged conduct is not clearly proscribed by the statute in question.

The government has alleged that Mr. Rhine walked into the Capitol Building while then-Vice President Mike Pence was present, that he walked carrying a flag,[1] that he complied with law enforcement commands, and that he left. *See* Dkt. No. 1. The government's application of the statute to a man walking with a flag and obeying law enforcement commands cannot stand. Not only does such application infringe on First Amendment activity (namely, the ability of citizens to carry or wear expressive garments), but also it falls firmly outside of conduct that a reasonable person would understand to be disorderly or disruptive. It does not either clearly fall within an ordinary person's understanding of the terms parading, demonstrating, or picketing. *See* 40 U.S.C. § 5104 The Court should find that the statute, and its application to Mr. Rhine, violate the Fifth and First Amendments.

**B.    The Court should find that the Capitol is a public forum.**

The government cites to non-binding precedent, *Bynum v. U.S. Capitol Police Bd.*, 93 F. Supp. 2d 50, 56 (D.D.C. 2000), for the proposition that the interior of the Capitol Building is a non-public forum. *See* Dkt. No. 57 at 8. However, even the Court

---

[1] The government incorrectly asserts in its various responses that Mr. Rhine was carrying cowbells. There is no evidence nor allegation that Mr. Rhine was carrying cowbells, nor any other noise-making items. The Court should strike and not consider the government's errant assertions. If, rather than misunderstanding its own evidence, the government is now claiming that Mr. Rhine had some sort of noisemaker on his person, Mr. Rhine requests an evidentiary hearing to resolve this dispute of fact.

| | |
|---|---|
| REPLY TO GOVERNMENT'S RESPONSE RE: MOTION TO DISMISS COUNTS 3 AND 4 (*United States v. Rhine*, 21-CR-687) - 4 | **FEDERAL PUBLIC DEFENDER** 1331 Broadway, Suite 400 Tacoma, WA 98402 (253) 593-6710 |

1   in *Bynum* acknowledge its conclusion that the Capitol is non-public was "surprising[.]"
2   *Bynum*, 93 F. Supp. 2d at 56.
3         Speech and expressive activity is most fiercely protected in public fora. "In
4   places which by long tradition or by government fiat have been devoted to assembly
5   and debate, the rights of the state to limit expressive activity are sharply
6   circumscribed." *Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*, 460 U.S. 37, 45
7   (1983). Indeed, "[a]s the seat of the legislative branch of the federal government, the
8   inside of the Capitol might well be considered to be the heart of the nation's expressive
9   activity and exchange of ideas. After all, every United States citizen has the right to
10  petition his or her government, and the Houses of Congress are among the great
11  democratic, deliberative bodies in the world." *Bynum*, 93 F. Supp. 2d at 55. However,
12  the Court in *Bynum* relied on the existence of regulations controlling *both* members of
13  Congress *and* constituents to conclude that the interior of the Capitol is not a public
14  forum. *Id*. ("There are rules that members of Congress must follow, as well as rules for
15  their constituents.").  And the Court relied on the proposition that "the inside of the
16  Capitol is not open to meetings by the public at large[.]" *Id*. at 56.
17        However, the interior of the Capitol is advertised and regularly used for public
18  and, particularly, press meetings. Various parts of the Capitol are utilized for press
19  conferences that necessarily include participation of journalists who will cover
20  communications from gatherings in the space. *See, e.g.*, House Radio Television
21  Correspondents' Gallery, *Press Conference Locations*, https://radiotv.house.gov/for-
22  press-secretaries/press-conference-locations (last accessed Dec. 6, 2022); House Radio
23  Television Correspondents' Gallery, *Exclusive Interview Locations*,
24  https://radiotv.house.gov/for-gallery-members/exclusive-interview-locations (last
25  accessed Dec. 6, 2022); U.S. Senate Radio-TV Correspondents' Gallery, *Coverage*
26

REPLY TO GOVERNMENT'S RESPONSE RE:
MOTION TO DISMISS COUNTS 3 AND 4
(*United States v. Rhine*, 21-CR-687) - 5

**FEDERAL PUBLIC DEFENDER**
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

*Locations*, https://www.radiotv.senate.gov/gallery-members/coverage-locations/ (last accessed Dec. 6, 2022); Nancy Pelosi, Speaker of the House, *Speaker Pelosi Holds Weekly Press Conference*, https://www.speaker.gov/newsroom/12122-2 (last accessed Dec. 6, 2022) ("Join me live at the U.S. Capitol for my weekly press conference."). The Capitol also hosts public classes and other events. *See* U.S. Capitol Visitor Center, *In-Person Education*, https://www.visitthecapitol.gov/person-education (last accessed Dec. 7, 2022). Such public gatherings and broadcasts affirm the Capitol is a public forum.

    **C.**    **The government has not refuted that § 5104 restricts expressive activity based on its content *and* viewpoint, and raises only conclusory claims that such restrictions are justified.**

The government makes conclusory claims that § 5104 regulates only, or primarily, conduct rather than speech. Dkt. No. 57 at 8, 10, 15. However, in nearly the same breath, the government recognizes many types of speech and expressive conduct that could be criminalized under the statute. *See* Dkt. No. 57 at 16. Further, the government effectively concedes that the statute chills First Amendment expression by arguing that the *exemption* of Members of Congress and their staff from criminal liability for the conduct described in § 5104 "is unquestionably rationally related to the government's interest in ensuring that Members of Congress and congressional staffers are uninhibited 'in the lawful discharge of [their] official duties.'" Dkt. No. 57 at 17 (quoting 40 U.S.C. § 5104(e)(3)). If the statute only restricts improper, disruptive, non-speech conduct, there would be no reason for this exemption.

Rather, as previously argued, the statute is a content-based and viewpoint-based restriction on speech. The activities deemed criminal are both exceedingly broad and inherently expressive. *See* Dkt. No. 47 at 9, 15, 27. Furthermore, the potential definitions of parade, demonstrate, and picket all indicate speech with political content. *See id*. And both these definitions, as well as the requirement that disorderly conduct

REPLY TO GOVERNMENT'S RESPONSE RE:
MOTION TO DISMISS COUNTS 3 AND 4
(*United States v. Rhine*, 21-CR-687) - 6

**FEDERAL PUBLIC DEFENDER**
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

have the "purpose" of impeding or disturbing government proceedings restrict expressive activity based on its *content*. *See id.* at 20–24. Even more concerning, the specific exemption of members of Congress and their staff from the criminal penalties discriminates based on *viewpoint*. *Id.* at 24–26. The government does not meaningfully contest these conclusions, but instead argues with scant explanation that such content- and viewpoint-based distinctions should survive rational basis review and even strict scrutiny. Dkt. No. 57 at 17–18.

There is no merit to this argument. By the government's logic, a person who, like Mr. Rhine, walks through the Capitol carrying or wearing a flag or expressive garment is guilty of a crime. Yet members of Congress who rudely interrupt an ongoing government proceeding are not. *See* Dkt. No. 47 at 25–26. Indeed, the Court has repeatedly rejected government restriction of expressive apparel, even in non-public forums. *See Board of Airport Comm'rs of Los Angeles v. Jews for Jesus, Inc.*, 482 U.S. 569, 576, (1987) (rejecting regulation that restricted, among other things, "the wearing of a T-shirt or button that contains a political message" in an airport); *Tinker v. Des Moines Independent Community School Dist.*, 393 U.S. 503, 508 (1969) (students wearing black armbands to protest the Vietnam War engaged in "silent, passive expression of opinion, unaccompanied by any disorder or disturbance"). This statute too is an impermissible infringement on First Amendment rights.

> **D.      The Court should reject the government's attempt to divide and conquer the vagueness problems in the statute.**

The government argues that § 3104 is sufficiently clear to impose criminal liability by isolating the various vague elements from one another, and arguing that the *mens rea* element of the statute can further save it from vagueness. These arguments are unavailing.

First, the combination of multiple vague elements of a criminal statute may render it unconstitutionally vague. Indeed, when invalidating the crime of violence residual

REPLY TO GOVERNMENT'S RESPONSE RE:
MOTION TO DISMISS COUNTS 3 AND 4
(*United States v. Rhine*, 21-CR-687) - 7

**FEDERAL PUBLIC DEFENDER**
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

1  clause in *Johnson v. United States*, the Supreme Court explained: "Each of the
2  uncertainties in the residual clause may be tolerable in isolation, but 'their sum makes a
3  task for us which at best could be only guesswork.'" 576 U.S. 591, 601–02 (2015)
4  (quoting *United States v. Evans*, 333 U.S. 483, 495 (1948)). Here, the combination of the
5  vagueness in the meaning of parading, picketing and demonstrating, and of disorderly
6  and disruptive conduct, among other issues, render the statute impermissibly vague.

7       The government also claims that the statute's *mens rea* element can save it from
8  these various vagueness and overbreadth issues. *See* Dkt. No. 57 at 7–8 (citing *United*
9  *States v. Williams*, 553 U.S. 285, 294 (2008) as "focusing" on a scienter requirement).
10 However, *Williams* recites the knowledge requirement in the statute at issue there as one
11 of "A number of features of the statute [that] are important to our analysis[.]"
12 *Id.* at 293. But a knowledge requirement does nothing to address overbreadth or
13 infringement on First Amendment rights. Indeed, knowledge does little to mitigate the
14 statute's vagueness when it simply requires a person to know that they are engaged in an
15 ill-defined activity.

16      Additionally, while a "scienter requirement **may** mitigate a law's vagueness," it
17 does not necessarily save a vague law. *Village of Hoffman Ests. v. Flipside, Hoffman*
18 *Ests., Inc.*, 455 U.S. 489, 499 (1982). Notably, the scienter requirement primarily
19 addresses only one vagueness problem—"the adequacy of notice to the complainant that
20 his conduct is proscribed." *Id*. The scienter requirement does nothing to mitigate the
21 second vagueness problem—that a vague statute "authorizes or even encourages arbitrary
22 and discriminatory enforcement." *Hill v. Colorado*, 530 U.S. 703, 732 (2000). The utter
23 lack of clear parameters for what conduct may be criminalized under the statute is not
24 fixed by a scienter requirement.

REPLY TO GOVERNMENT'S RESPONSE RE:
MOTION TO DISMISS COUNTS 3 AND 4
(*United States v. Rhine*, 21-CR-687) - 8

**FEDERAL PUBLIC DEFENDER**
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

Indeed, even the vagaries of a single word may render a statute unconstitutional, even if the government has a recognized compelling reason for the restriction. In *Minnesota Voters All. v. Mansky*, the Court invalidated a policy that banned political apparel at polling places on election days. *See* 138 S. Ct. 1876 (2018). There, the term "political" was deemed both so expansive and so unclear that it violated the First Amendment. *Id*. at 1889–90. The Court recited numerous potential pieces of apparel that might fall within the scope of the statute, and might not, to hold that the statute was impermissibly vague. *Id*. at 1890–92. So too here, attorneys who specialize in criminal law and have researched the statute in depth cannot agree about what expressive conduct may or may not be criminalized under the statute. *See* Dkt. No. 47 at 21–22, 25–26; Dkt. No. 57 at 9–10, 15–16. This is because the statutory terms—disorderly and disruptive conduct, parading, picketing, and demonstrating—are both expansive and unclear. The statute therefore cannot stand.

## II. CONCLUSION

The government's prosecution of Mr. Rhine under 40 U.S.C. § 5104 not only infringes Mr. Rhine's First and Fifth Amendment rights, but also impermissibly chills others from exercising their constitutional rights. Rather than demonstrate the validity of the statute, the government's arguments illustrate the statute's fatal flaws. As such, the Court should dismiss Counts 3 and 4.

DATED this 7th day of December 2022.

    Respectfully submitted,

    s/ *Rebecca Fish*
    s/ *Joanna Martin*
    Assistant Federal Public Defenders
    Attorneys for David Charles Rhine

REPLY TO GOVERNMENT'S RESPONSE RE:
MOTION TO DISMISS COUNTS 3 AND 4
(*United States v. Rhine*, 21-CR-687) - 9

**FEDERAL PUBLIC DEFENDER**
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710