1
2
3
4
5

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

6

UNITED STATES OF AMERICA,

       Plaintiff,

       v.

DAVID CHARLES RHINE,

       Defendant.

)
)
)
)
)
)
)
)
)
)
)

NO. 21-CR-687 (RC)

MR. RHINE'S
SUPPLEMENTAL/ALTERNATIVE
MOTION TO SUPPRESS UNDER
*FRANKS V. DELAWARE*

       David Charles Rhine, through counsel, moves this Court to suppress all evidence obtained by the government from its warrants to search Mr. Rhine's residence and person, including his phone. This motion supplements Mr. Rhine's previous motion to suppress the same evidence as the fruit of the government's unlawful geofence search. And this motion also seeks suppression of this evidence on the alternative basis that these warrants contained a material false statement, and/or omissions of material fact, made with knowing, intentional, or reckless disregard for the truth, in violation of the Fourth Amendment. *See Franks v. Delaware*, 438 U.S. 154, 156 (1978).[1] Defense counsel has alerted the government that this motion is forthcoming, and the government indicated it will oppose the motion.

---

[1] Defense counsel is filing this supplemental motion as quickly as possible after relevant discovery was produced by the government and asks the Court to accept the motion as filed. The new discovery revealed a false statement in the relevant warrant affidavits and necessitated follow-up defense investigation. Defense counsel files this motion two business days after receiving the discovery in question.

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

## I.    FACTUAL BACKGROUND

On January 9, 2021, a tipster submitted a tip to the government stating that Mr. Rhine's wife had made comments to various members of the community that Mr. Rhine had entered the U.S. Capitol Building on January 6, 2021, during the riots that day. The tipster also provided a screenshot of a text message, purportedly from Mr. Rhine's wife. *See* Ex. A.

On March 16, 2021, FBI Agent Douglas Capra interviewed the tipster by phone. Agent Capra prepared a report of that interview in which he stated that the tipster reported he heard from a friend that Mr. Rhine's wife had posted a message on Facebook stating that Mr. Rhine had entered the Capitol on January 6. Agent Capra's report states that the tipster reported he did not see the actual Facebook post, but instead "he'd seen a screen shot sent to him by his friend." Ex. B at 1. Agent Capra's report further noted that the tipster was willing to provide the FBI with the screen shot of the Facebook post, but wanted to first verify with his friend that he could forward it to the FBI. *See id*. at 2.

Agent Capra's handwritten notes from the interview are not so detailed. Rather, Agent Capra's notes indicate: "Did not see the post/other acqu[aintance] saw the post[.]" Ex. C at 1. Agent Capra also noted, variously, "Facebook – Does not[,]" "Pictures of the post from [Mr. Rhine's wife,]" and "Will ask the other individuals[.]" *Id*. at 3.

On March 22, 2021, Agent Capra wrote another report indicating that the tipster had provided screenshots of the tipster's texts with Mr. Rhine and his wife to Agent Capra. *See* Ex. D. Agent Capra made no notes regarding a screenshot of the purported Facebook post by Mr. Rhine's wife, nor any discussion of this with the tipster. And, it appears, none was provided. *See id*.

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

1   On September 22, 2021, Agents Marty Trevino and Michael James Kiley, Jr.,

2   interviewed the tipster in person. The agents' report of this interview includes *no*

3   mention of the screenshot of the Facebook post, or its absence. *See* Ex. E.

4   On November 5, 2021, Agent Trevino swore out two affidavits in support of

5   requests for warrants to search Mr. Rhine's residence, as well as his person, including

6   his phone. *See* Exs. F, I. In these affidavits, Agent Trevino swore that:

> Information provided by TIPSTER 1 included that on January 6, 2021,
> Rhine's wife made a post to Facebook that Rhine had entered the Capitol
> building during the protest. After seeing the post, TIPSTER 1 confronted
> Rhine about being in the Capitol building and told him he needed to make
> a report about his part in the entering of the Capitol.

Ex. F at 12; Ex. I at 12. Agent Trevino further swore that, during an interview on or

about March 16, 2021, the tipster indicated that "TIPSTER 1 did not see the actual post,

but saw a screen shot sent to him by his friend referring to RHINE entering the U.S.

Capitol building on January 6, 2021." Ex. F at 13; Ex. I at 13.

On October 17, 2022, Mr. Rhine filed a motion to suppress evidence flowing

from the government's geofence search. *See* Dkt. No. 43. In this Motion, Mr. Rhine

argued that the phone seized from Mr. Rhine was a fruit of the geofence warrant

because, absent the geofence evidence, the affidavit in support of the warrant to search

his person (which yielded the seizure of the phone) lacked probable cause. *See id*. at

32–35. Mr. Rhine argued that the tipster was especially unreliable because he had

second- or third-hand information, at best, and initially overstated the quality of his

information in making the tip. *See id*. The government responded by arguing that the

tipster was *not* inconsistent, noting that during the March interview, "[t]he tipster

explained that, though he had not personally seen the Facebook post in which the

defendant's wife referred to the defendant entering the Capitol on January 6, he had

seen a screenshot of the post, which a friend had sent to him." Dkt. No. 59 at 41.

On January 13, 2023, the government filed a correction to this claim. The

government explained:

> In preparation for trial, on January 9 and 10, 2023, the government
> reinterviewed the tipster. During the interview, the tipster indicated that,
> while he had learned of the Facebook post and its content from an
> acquaintance (or acquaintances), he did not recall personally seeing the
> post, or a screenshot of the post. As of January 2023, neither the tipster
> nor his wife is in possession of a screenshot of the Facebook post from
> January 2021, and neither the tipster nor his wife recalls personally seeing
> the Facebook post.

Dkt. No. 71 at 2. That day, the government provided an additional report (though no

contemporaneous notes) of these additional interviews with the tipster. *See* Ex. L.

On January 17, 2023, defense investigator Michael Stortini spoke with the tipster

by phone. The tipster told Mr. Stortini that he had never seen the purported Facebook

post by Mr. Rhine's wife, nor any screen shot of the post. More significantly, the tipster

told Mr. Stortini that he does not recall ever claiming to federal agents that he had seen

the purported post or a screenshot of it, nor that he possessed a screenshot of the post.

Indeed, the tipster would not have made such a claim as he did not ever see the post or a

screenshot of it. *See* Ex. M.

This motion follows.

## II.     ARGUMENT

### A.     Mr. Rhine is entitled to a *Franks* hearing upon a substantial showing of intentional or reckless material falsehoods or omissions.

In *Franks v. Delaware*, 438 U.S. 154, 156 (1978), the Supreme Court held that

"where the defendant makes a substantial preliminary showing that a false statement

knowingly and intentionally, or with reckless disregard for the truth, was included by

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment, as incorporated in Fourteenth Amendment, requires that a hearing be held at the defendant's request." This doctrine also applies to "material omissions" from a search warrant affidavit—an omission being "material" if the "'inclusion [of the omitted information] in the affidavit would defeat probable cause.'" *United States v. Dorman*, 860 F.3d 675, 684 (D.C. Cir. 2017) (quoting *United States v. Spencer*, 530 F.3d 1003, 1007 (D.C. Cir. 2008)) (additional internal citations omitted) (brackets in *Dorman*).

Furthermore, "[a] deliberate or reckless omission [or false statement] by a government official who is not the affiant can be the basis for a *Franks* suppression." *United States v. DeLeon*, 979 F.2d 761, 764 (9th Cir. 1992). Indeed, in *Franks*, the Court repeated its reasoning from an earlier case that "police could not insulate one officer's deliberate misstatement merely by relaying it through an officer-affiant personally ignorant of its falsity." 438 U.S. at 164 n.6 (citing *Rugendorf v. United States*, 376 U.S. 528, 533 n.4 (1964)). In addition to the Ninth Circuit, the Second, Third, Seventh, and Tenth Circuits have recognized this rule from *Franks*. *See United States v. Kennedy*, 131 F.3d 1371, 1376 (10th Cir. 1997); *United States v. Wapnick*, 60 F.3d 948, 956 (2d Cir. 1995); *United States v. Calisto*, 838 F.2d 711, 714 (3d Cir. 1988); *United States v. Pritchard*, 745 F.2d 1112, 1118 (7th Cir. 1984). The Fifth Circuit additionally recognizes the rule from *Franks*, though draws further distinctions for purposes of civil liability of the various officers involved in the context of civil rights lawsuits. *See Melton v. Phillips*, 875 F.3d 256, 262 (5th Cir. 2017).

Without guidance from the Supreme Court in *Franks* as to the meaning of "reckless disregard for the truth," except to state that "'negligence or innocent mistake (is) insufficient[,]'" the D.C. Circuit looked to the standard used in defamation cases. *See United States v. Davis*, 617 F.2d 677, 694 (D.C. Cir. 1979), *overruled on other*

MOTION TO SUPPRESS UNDER *FRANKS*
(*United States v. Rhine*, 21-CR-687) - 5

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

1    *grounds (application of the Aguilar-Spinelli test) by Illinois v. Gates*, 462 U.S. 213

2    (1983) (quoting *Franks*, 438 U.S. at 171). The D.C. Circuit proposed importing the

3    defamation standard for reckless disregard for the truth that the declarant "'in fact

4    entertained serious doubts as to the truth of his publication.'" *Davis*, 617 F.2d at 694

5    (quoting *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968)) Such test could be met "not

6    only by showing actual deliberation but also by demonstrating that there existed

7    'obvious reasons to doubt the veracity of the informant or the accuracy of his reports.'"

8    *Id*. (quoting *St. Amant*, 390 U.S. at 732). Analyzing the reckless disregard standard for

9    omissions, the Third Circuit framed the question as whether "(1) omissions are made

10    with reckless disregard for the truth when an officer recklessly omits facts that any

11    reasonable person would know that a judge would want to know; and (2) assertions are

12    made with reckless disregard for the truth when an officer has obvious reasons to doubt

13    the truth of what he or she is asserting." *Wilson v. Russo*, 212 F.3d 781, 783 (3d Cir.

14    2000). While the Eighth Circuit phrased the standard as whether "the police omitted the

15    information with the intent to make, or in reckless disregard of whether they made, the

16    affidavit misleading." *United States v. Jacobs*, 986 F.2d 1231, 1234 (8th Cir. 1993).

17         **B.    Mr. Rhine has made the requisite showing and the Court should order an evidentiary hearing.**

18

19         In order to warrant an evidentiary hearing under *Franks*, "the movant's attack on

20    the affidavit supporting the warrant 'must be more than conclusory.'" *United States v.*

21    *Becton*, 601 F.3d 588, 594 (D.C. Cir. 2010) (quoting *Franks*, 438 U.S. at 171). Mr.

22    Rhine has met this standard and demonstrated that "'(1) the affidavit contained false

23    statements [or material omissions]; (2) the statements [or omissions] were material to

24    the issue of probable cause; and (3) the false statements were made knowingly and

25    intentionally, or with reckless disregard for the truth.'" *Dorman*, 860 F.3d at 684

26    (quoting *United States v. Richardson*, 861 F.2d 291, 293 (D.C. Cir. 1988)).

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

A defendant is not required to *prove* all elements of a *Franks* motion at the pleading stage, but is "simply require[d] . . . to make a substantial showing that supports a finding of intent or recklessness." *United States v. Gonzalez*, Inc., 412 F.3d 1102, 1111 (9th Cir. 2005), *amended on denial of rehearing*, 437 F.3d 854 (citation omitted). That is because "it is at the evidentiary hearing itself that the defendant, aided by live testimony and cross-examination, must prove actual recklessness or deliberate falsity." *United States v. Kyllo*, 37 F.3d 526 (9th Cir. 1994) (citation omitted). Here, Mr. Rhine has made a sufficient showing.

First, it is undisputed that the warrant affidavits contain false statements. Both affidavits assert that the tipster *actually saw* a screenshot of a purported incriminating Facebook post by Mr. Rhine's wife, and had received that screenshot from a friend. In fact, he did not. *See* Exs. F, I, L, M. Furthermore, this fact makes clear that the warrant affidavits additionally contain material omissions—namely, they omit the tipster's purported promise to follow up to provide that screenshot to the FBI, and his failure to do so despite providing *other* items to the FBI days later and sitting down with the FBI—and indeed the affiant—in September 2021. *See* Exs. B, D, E, F, I.

Second, the mis-statement (and related omissions) were material. As previously argued, the warrant affidavits lacked direct evidence of criminal activity, such that each aspect of the affidavits carried significant weight in piecing together probable cause. *See generally* Dkt. No. 43 at 32–35. This tipster was heavily relied upon by the government and, importantly, was relied upon to *identify Mr. Rhine in surveillance footage*. *See* Ex. F at 14–15; Ex. I at 14–15. The images used for identification lacked clarity, and the tipster only identified a person depicted in surveillance stills as Mr. Rhine in one of the several screenshots provided by agents. *See id*. Yet, agents relied on this identification to then pull further images of the person identified by the tipster and

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

allege that person was Mr. Rhine in the warrant affidavits. *See id*. Thus, the affidavits strongly relied on the tipster's information.

The false statement and related omissions in the affidavits both falsely indicate the existence of incriminating evidence and falsely bolster the tipster's reliability. For one, the false statement that the tipster actually viewed a screenshot of an incriminating Facebook post, and had been sent that screenshot by a friend, incorrectly suggests that the screenshot of the post exists. Further, it incorrectly conveys that the tipster possessed this incriminating evidence. In fact, the FBI never received nor seized the post nor a screenshot of it, despite ample opportunity to do so prior to seeking the warrants. And, in fact, the tipster never actually saw nor possessed the purported screenshot. The existence of material incriminating evidence is undoubtedly material to probable cause.

For two, in the original tip, the tipster claimed to have "first hand information" that Mr. Rhine was in the Capitol on January 6. Ex. A at 3. Yet, the truth reveals that he had at best third- or fourth-hand information. *See* Exs. L, M. This significantly undermines the tipster's reliability. Additionally, the omitted facts of the tipster's promise to provide the purported evidence and failure to do so despite later contact with government agents paint a false picture of the tipster as a reliable informant.

The credibility of a tipster, particularly one providing hearsay information, is critical to a determination of probable cause. A magistrate judge reviewing a warrant containing such information must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, ***including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information***, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983) (emphasis added). Here, the falsified and

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

omitted information hid serious concerns about the veracity and basis for knowledge of the tipster.

These concerns are particularly great because the false statement and related material omissions relate to a purported Facebook post. The warrant affidavits sought warrants to search Mr. Rhine's phone claiming that the agent expected to find incriminating evidence in possible Facebook posts there: "In my training and experience, individuals frequently post messages to social media sites such as Facebook and Facebook Messenger using a cellular telephone." Ex. F at 25; Ex. I at 25. The statements and omissions were therefore material.

Third, Mr. Rhine has made a sufficient showing that the government agents acted *at least* with reckless disregard for the truth. The tipster has affirmed that he did ***not*** tell the FBI that he had personally viewed a screenshot of the post ***or*** that he had possession of a screenshot of the post. The government's claims that the tipster made such statements are false. And this is not a matter of a mere typo or mistake. The record demonstrates that the false statements were either knowing and willful, or the result of reckless disregard.

Indeed, the government had *multiple* opportunities to follow up with the tipster and good reason to do so. In the March interview, Agent Capra claimed the tipster indicated he would provide the screenshot of the post so long as his friend did not object. *See* Ex. B. Yet, days later, the tipster provided screenshots of text messages but *no screenshot of any Facebook post*. *See* Ex. D. Agent Capra recorded no follow-up nor discussion of why the screenshot of the post was not provided. *See id*. Agent Trevino, the affiant for the search warrant applications, later met with the tipster *in person*. Still, Agent Trevino in no way followed up about the missing screenshot of the post. *See* Ex. E.

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

1    The fact that this piece of supposedly incriminating evidence had still not been

2 provided by a cooperative tipster is certainly something that "any reasonable person

3 would know that a judge would want to know[.]" *Wilson*, 212 F.3d at 783.

4 Unsurprisingly, the attorneys for the government, recognizing the materiality of this

5 evidence, inquired about the missing screenshot in the January 9 and 10, 2023,

6 interview of the tipster. *See* Ex. L.

7    The sequence of events further demonstrates "'obvious reasons to doubt the

8 veracity of the [declarant] or the accuracy of his reports.'" *Davis*, 617 F.2d at 694

9 (quoting *St. Amant*, 390 U.S. at 732). The government has provided no statements by

10 the involved agents about their process for writing their earlier reports nor preparing the

11 affidavits. Agent Capra's report contains a false statement about the tipster's claims.

12 *See* Exs. B, L, M. The statement pertained to purported incriminating evidence in the

13 tipster's possession. *See* Ex. B. Yet, neither Agent Capra nor Agent Trevino nor any

14 other government agent, followed up with the tipster about this, corrected the mis-

15 statement, or sought to confirm the existence of the purported evidence despite multiple

16 opportunities to do so over the course of nearly a year. *See* Exs. D, E. Instead, Agent

17 Trevino simply repeated the false statement in the warrant affidavits. *See* Exs. F, I.

18    This is not a small error made in under a time crunch. Rather this was a false

19 statement, and material omissions, that would have raised doubt about the existence of

20 purported incriminating evidence, and the key tipster's knowledge and reliability. These

21 were not affidavits merely "drafted by nonlawyers in the midst and haste of a criminal

22 investigation." *United States v. Dale*, 991 F.2d 819, 845 (D.C. Cir. 1993). Rather,

23 Agent Trevino drafted the affidavits nearly eight months after Agent Capra interviewed

24 the tipster, and approximately a month and a half after personally meeting with the

25 tipster. *See* Exs. B, E, F, I. This timeline indicates deliberation, not haste.

26

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

1    Mr. Rhine has made the required showing to warrant a *Franks* hearing. He asks
2    the Court to order an evidentiary hearing on the matter during which the tipster, Agent
3    Capra, Agent Trevino, Agent Kiley, and all other government agents or employees who
4    communicated with the tipster will be called to testify. Mr. Rhine has requested further
5    discovery on this matter from the government and plans to meet and confer with the
6    government in this regard. However, should a dispute arise or remain, Mr. Rhine may
7    move this court to compel relevant discovery.

8    ## III.    CONCLUSION

9    Mr. Rhine asks this Court to order an evidentiary hearing and take testimony
10   regarding the government's false statements and omissions of material fact in its
11   warrant affidavits. After that hearing, Mr. Rhine moves this Court to suppress all
12   evidence obtained via the tainted warrants—namely the phone and all evidence
13   extracted from it.

14   DATED this 18th day of January 2023.

15                          Respectfully submitted,

16                          *s/ Rebecca Fish*
17                          *s/ Joanna Martin*
18                          Assistant Federal Public Defenders
                            Attorneys for David Charles Rhine

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**