UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   Plaintiff,<br><br>   v.<br><br>DAVID CHARLES RHINE,<br><br>   Defendant. | NO. 21-CR-687 (RC)<br><br>MR. RHINE'S REPLY TO THE GOVERNMENT'S RESPONSE IN OPPOSITION TO HIS MOTION TO SUPPRESS UNDER *FRANKS V. DELAWARE* |

The government's response fails to demonstrate the validity of its warrant. Instead, the government's response emphasizes the need for an evidentiary hearing. First, the government does not and cannot demonstrate that the warrant application established probable cause absent the false information regarding the tipster. Second, none of the messages pointed to by the government say what the warrant claimed the non-existent Facebook post said. The warrant affidavit is false and misleading. And third, the government has introduced nothing to explain how its agents included the false and misleading information without at least reckless disregard for the truth. In the face of the tipster's assertion that he never made the false statement, the government cannot do so. The Court should order an evidentiary hearing under *Franks v. Delaware*, 438 U.S. 154 (1978).

First, the government makes a conclusory argument that the warrant affidavit established probable cause even without the false and misleading information. *See* Dkt. No. 80 at 11–14. But this argument fails both because the government *still relies* on the tipster's information in this recitation (without addressing the remaining false impression of the tipster's credibility) and because the remaining facts merely indicate that Mr. Rhine was in the area of the Capitol, not that he had committed any crime.

REPLY TO GOVERNMENT'S OPPOSITION TO
MOTION TO SUPPRESS UNDER *FRANKS*
(*United States v. Rhine*, 21-CR-687) - 1

FEDERAL PUBLIC DEFENDER
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

The government's recitation of facts remaining in the warrant application without the specific false and misleading statement about the non-existent facebook post still relies on the tipster's information. The government *cannot help* but rely on the tipster's claims to argue that the affidavit establishes probable cause. *See id*. at 13. The weight of these claims is significantly diminished by revelation of the tipster's lack of veracity and basis for their claimed knowledge. *See United States v. Laws*, 808 F.2d 92, 100 (D.C. Cir. 1986) (looking to external circumstances to evaluate the reliability of an informant). Indeed, the false statement and related material omissions here deprived the Magistrate Judge of relevant information to assess the tipster's credibility, and the weight to give the tipster's claims.

> An affidavit predicated upon an informant's tip has been regarded as vulnerable because the tip is hearsay, which, like all hearsay, is susceptible to special concerns of perception and veracity. If the tip is to serve as a basis for a finding of probable cause, the "neutral and detached magistrate" issuing the warrant must have substantial reason to believe that nonetheless the hearsay is reliable. Without that determination, the magistrate would cede his duty to gauge probable cause to the informant and the possibly overzealous law-enforcement officer.

*Laws*, 808 F.2d and 94–95 (internal citations omitted). The government's conclusory argument fails to account for the impact of the false statement and material omissions in falsely bolstering the tipster's credibility. Indeed, none of the remaining information offered by the tipster indicates that Mr. Rhine engaged in criminal conduct. Rather, the tipster provided text that simply indicate Mr. Rhine was in the vicinity of the Capitol, not that he entered the building or committed any crime. *See* Ex. F (discussed further below).

Notably, the government explicitly relied on the tipster to identify a person in surveillance footage as Mr. Rhine. *See* Ex. F at 14–15. And the tipster only provided an identification on a single screenshot, noting the generally poor image quality. Even the screenshot used barely shows the facial features of the person identified. *See* Ex. F at

REPLY TO GOVERNMENT'S OPPOSITION TO
MOTION TO SUPPRESS UNDER *FRANKS*
(*United States v. Rhine*, 21-CR-687) - 2

**FEDERAL PUBLIC DEFENDER**
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

15. The government agent who wrote the affidavit does not claim any personal knowledge of Mr. Rhine nor any meaningful ability to identify him in grainy surveillance footage. *See generally* Ex. F. The tipster's credibility, beyond the false statement, thus carried great weight in the assessment of probable cause. And the government's inclusion of a false claim bolstering the tipster's veracity and basis for information misled the Magistrate Judge about the tipster's credibility. Thus, the tipster's claims, including his identification of Mr. Rhine, can no longer weigh in favor of probable cause.

Furthermore, the other information in the affidavit indicates only that Mr. Rhine was in the vicinity of the Capitol, not that he committed any crime there. Multiple demonstration permits were approved for the area around the Capitol Building on January 6, 2021, particularly for the lawn area on the east side of the building. *See* Ex. N (copies of permits, which were published by Buzzfeed News and are available at https://s3.documentcloud.org/documents/21059849/leopold-capitol-police-protest-permits-january-6-common-law-release.pdf).[1] The government has repeatedly chosen to ignore this reality and insists that any person in the vicinity of the Capitol on January 6, 2021, must have committed a crime. But this is simply not so.

The evidence recited in the warrant applications, which does not rely on the tipster, does no more than suggest that Mr. Rhine was in the vicinity of the Capitol. Even if accepted, this fact merely places him in an area that includes lawful protest. Notably, the cell tower dump and geofence data only place Mr. Rhine in an area that includes the Capitol Building, but also includes space around the Capitol. *See* Ex. F at

---

[1] For example, Ex. N at 48 notes approved protests in areas 8, 9, and 10, all located in the lawns on the east side of the Capitol Building. *See* Architect of the Capitol, U.S. Capitol Grounds Demonstration Areas (Dec. 5, 2012), *available at* https://www.uscp.gov/sites/uscapitolpolice.house.gov/files/wysiwyg_uploaded/U.S.%20Capitol%20Grounds%20Demonstration%20Area%20Map.pdf.

REPLY TO GOVERNMENT'S OPPOSITION TO
MOTION TO SUPPRESS UNDER *FRANKS*
(*United States v. Rhine*, 21-CR-687) - 3

**FEDERAL PUBLIC DEFENDER**
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

12 (a cell tower dump indicated a phone associated with Mr. Rhine "was identified as having used a cell site consistent with providing service to a geographic area that included the interior of the U.S. Capitol building."), 13 ("Google location data shows that a device associated with phone number [] was within or around the U.S. Capitol on January 6, 2021 between the time of 2:24 PM and 4:47 PM.").

      Furthermore, as discussed further below, the various *other* statements and exchanges shared by the tipster include no statement or admission of Mr. Rhine entering the Capitol building, rather they at most recite observations of the actions of other people. Indeed the sole text message contained in the warrant affidavit states: "Thanks. I witnessed ZERO violence. I saw no 'proud boys'. Capitol police removed barriers and let people in." Ex. F at 14. Nothing in this text discusses any action taken nor crime committed by Mr. Rhine. Absent the false statement, and related omissions, the affidavit simply does not establish probable cause.

      Second, the government's argument that the statement was not false or misleading is unpersuasive, and contrary to its own prior position. The government omits important parts of the warrant affidavit to *try* to bend the affidavit's claims into claims that are *close to* truthful. The government argues that the only claim in the affidavit at issue is the sentence: "'[The tipster] did not see [Ms. Rhine's] actual [Facebook] post, but saw a screen shot sent to him by his friend referring to RHINE entering the U.S. Capitol building on January 6, 2021.'" Dkt. No. 80 at 14 (quoting Ex. F at 13). But the government ignores the earlier claims in the affidavit that plainly inform this sentence. The affidavit first describes the tipster as having *seen* a facebook post where Mr. Rhine's wife *stated that Mr. Rhine had entered the Capitol building*:

> On or about January 10, 2021, a tipster [] called the FBI National Threat Operations Center to report that David Rhine . . . had entered the U.S. Capitol building in Washington, DC on January 6, 2021. Information provided by [the tipster] included that on January 6, 2021, Rhine's wife made a post to Facebook that Rhine had entered the Capitol building

REPLY TO GOVERNMENT'S OPPOSITION TO
MOTION TO SUPPRESS UNDER *FRANKS*
(*United States v. Rhine*, 21-CR-687) - 4

FEDERAL PUBLIC DEFENDER
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

> during the protest. After seeing the post, TIPSTER 1 confronted Rhine about being in the Capitol building and told him he needed to make a report about his part in the entering of the Capitol.

Ex. F at 12. Furthermore, the warrant affidavit reinforces this false claim that the tipster saw a Facebook post where Mr. Rhine's wife claimed her husband had entered the Capitol Building in its recitation of the March interview:

> [The tipster] had no indication that RHINE traveled to Washington D.C. in January 2021 until a friend informed him of a Facebook post by RHINE's wife stating that she was proud of her husband because he had been at the January 6th rally and had entered the Capitol. [The tipster] did not see the actual post, but saw a screen shot sent to him by his friend referring to RHINE entering the U.S. Capitol building on January 6, 2021.

Ex. F at 13. The Court should reject the government's efforts to remove the final sentence from its context. The specific words used by the affiant, and their context, matter because they drive the inferences drawn by the judge issuing the warrant. *See United States v. Jacobs*, 986 F.2d 1231, 1235 (8th Cir.1993) (affiant reckless in telling magistrate that drug-sniffing dog showed "interest" in defendant's bag, but omitted information that dog had not gone into "alert").

    Here, the government initially drew the only logical conclusion from these claims in the affidavit—that "[t]he tipster explained that, though he had not personally seen the Facebook post *in which the defendant's wife referred to the defendant entering the Capitol on January 6, he had seen a screenshot of the post, which a friend had sent to him.*" Dkt. No. 59 at 41 (emphasis added). Only after the government spoke to the tipster again, did it acknowledge the falsity of this claim. Dkt. No. 71 at 2.

    The government points to various *other* messages or texts that the tipster may have been referring to in an attempt to avoid the plain falsity of the claims in the affidavit. But none of these other messages invoked by the government include *any* claim by Mr. Rhine's wife that Mr. Rhine had entered the Capitol Building or

REPLY TO GOVERNMENT'S OPPOSITION TO
MOTION TO SUPPRESS UNDER *FRANKS*
(*United States v. Rhine*, 21-CR-687) - 5

FEDERAL PUBLIC DEFENDER
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

committed any crime. Again, these messages refer only to claims about things Mr. Rhine may have witnessed in the vicinity of the Capitol, not inside the building itself. *See* Dkt. No. 80, Govt Exs. A, B. None of these could be mistaken for a claim that Mr. Rhine *entered the Capitol Building and committed a crime* without at least reckless disregard for the truth.

Finally, the government also makes a conclusory argument that government agents did not act with reckless or intentional disregard for the truth. *See* Dkt. No. 80 at 16. The government's theory on this point is not entirely clear. On the one hand, the government suggests that the tipster is now mistaken about what he saw. *See id*. ("the tipster's confusion—nearly two years after his FBI interview—about the type of messages at issue cannot refute what the documentary record makes clear: the tipster saw—and forwarded to the FBI—a screenshot of a message in which Ms. Rhine attempted to explain away her husband's entry into the Capitol building on January 6, 2021."). In the alternative, the government claims that its agents misunderstood the actual messages forwarded by the tipster. *See id*. ("Rhine's assertion (ECF No. 73 at 9-10) that the FBI agents acted with reckless disregard for the truth (or worse), which is based on the same misapprehension of the documentary evidence, is even more far-fetched."). Neither argument is persuasive.

The government does not so much as acknowledge that the tipster has said that **he never told agents** that he had seen or received a screenshot of a Facebook post where Mr. Rhine's wife claimed that Mr. Rhine entered the Capitol Building. *See* Ex. M. This demonstrates that agents investigating and preparing the affidavit acted with at least reckless disregard for the truth. As detailed above, the warrant affidavit very clearly indicates that the tipster **actually saw and received** a screenshot of a Facebook post where Mr. Rhine's wife claimed that Mr. Rhine **entered the Capitol Building**. *See* Ex. F at 12–13 (quoted above). This is simply not so. **Nothing** that the tipster sent to

REPLY TO GOVERNMENT'S OPPOSITION TO
MOTION TO SUPPRESS UNDER *FRANKS*
(*United States v. Rhine*, 21-CR-687) - 6

**FEDERAL PUBLIC DEFENDER**
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

government agents includes a claim by Mr. Rhine's wife that Mr. Rhine entered the Capitol Building or committed any other crime. *See* Dkt. No. 80, Govt Exs. A, B. The tipster has affirmed that he did not falsely claim otherwise to agents. *See* Ex. M. That leaves the false statement, and related omissions, as the result of the agents' actions. The agents were more than capable of including actual messages or screen shots in the affidavit for the Magistrate Judge to review—indeed, they did so. *See* Ex. F. The choice to mischaracterize information they had or that was reported by the tipster, rather than simply provide the actual images received, demonstrates at least reckless disregard for the truth.

  Mr. Rhine has made more than a sufficient showing to warrant a *Franks* evidentiary hearing. The Court should reject the government's contorted arguments to claim otherwise. The Court should order an evidentiary hearing on this Motion and should subpoena the previously identified witnesses (the relevant government agents and the tipster) to testify at that hearing.

  DATED this 30th day of January 2023.

            Respectfully submitted,

            *s/ Rebecca Fish*
            *s/ Joanna Martin*
            Assistant Federal Public Defenders
            Attorneys for David Charles Rhine

REPLY TO GOVERNMENT'S OPPOSITION TO
MOTION TO SUPPRESS UNDER *FRANKS*
(*United States v. Rhine*, 21-CR-687) - 7

FEDERAL PUBLIC DEFENDER
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710