UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal Action No.: 21-0687 (RC) |
| | : | |
| DAVID CHARLES RHINE, | : | Re Document No.:   73 |
| | : | |
| Defendant. | : | |
| | : | |

**MEMORANDUM OPINION**

DENYING DEFENDANT'S MOTION FOR HEARING AND TO SUPPRESS UNDER
*FRANKS V. DELAWARE*

**I.  INTRODUCTION**

Defendant David Charles Rhine, charged with four misdemeanor counts arising out of his alleged participation in the events at the Capitol on January 6, 2021, moves to challenge a warrant to search his home and another to search his person and cell phone on grounds that the warrant affidavits contained material false statements and omissions.  Specifically, he moves for a hearing and to suppress evidence obtained via the warrants pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978).  *See* Def.'s Mot. *Franks* Hr'g ("Def.'s Mot.") at 11, ECF No. 73.  For the reasons set forth the below, Defendant's motion is denied.

**II.  FACTUAL BACKGROUND**

The Court presumes familiarity with the relevant background facts and alleged offense conduct from its opinions deciding the parties' other pretrial motions.  *See United States v. Rhine ("Rhine I")*, No. 21-cv-687, 2023 WL 372044, at *1 (D.D.C. Jan. 24, 2023); *United States v. Rhine ("Rhine II")*, No. 21-cv-687, 2023 WL 2072450, at *1 (D.D.C. Feb. 17, 2023).  However,

the Court provides additional detail relevant to the present motion concerning the Federal Bureau of Investigation's ("FBI") investigation of Defendant.

On November 5, 2021, a magistrate judge approved a warrant to search Defendant's home and a warrant to search Defendant's person and cell phone. Exs. G, J to Def.'s Mot., ECF Nos. 75-7, 75-10. The warrants issued based on affidavits of probable cause submitted by FBI Task Force Officer Marty Trevino. *See* Exs. F, I to Def.'s Mot., ECF Nos. 75-6, 75–9 [hereinafter referred to jointly as "Warrant Affs."].[1] The affidavits compiled the Government's evidence of probable cause as to Defendant, starting with two tips it received on January 10, 2021 ("Tip One" from "Tipster One") and on January 12, 2021 ("Tip Two" from "Tipster Two"). *See* Warrant Affs. at 12. The focal point of Defendant's present motion is the affidavits' description of information provided by Tipster One related to a Facebook post allegedly made by Defendant's wife. The affidavits state that, "[o]n or about January 10, 2023, [Tipster One] called the FBI National Threat Operations Center to report that David Rhine, cellular telephone number [redacted], of Bremerton, Washington, had entered the U.S. Capitol Building in Washington, DC on January 6, 2021." Warrant Affs. ¶ 35. They continue:

> Information provided by [Tipster One] included that on January 6, 2021, Rhine's wife made a post to Facebook that Rhine had entered the Capitol building during the protest. After seeing the post, [Tipster One] confronted Rhine about being in the Capitol building and told him he needed to make a report about his part in the entering of the Capitol. According to [Tipster One] in this tip, Rhine did not deny entering the Capitol building and said the Capitol police moved the barriers to let him into the building.

*Id.* The affidavits further state, based on a March 16, 2021 interview with Tipster One, that

> [Tipster One] had no indication that RHINE traveled to Washington D.C. in January 2021 until a friend informed him of a Facebook post by RHINE's wife stating that she was proud of her husband because he had been at the January 6th rally and had entered the Capitol. [Tipster One] did not see the actual post, but saw a screen shot sent to him by his friend referring to RHINE entering the U.S. Capitol building on January 6, 2021.

---

[1] The affidavits are substantially identical, so the Court refers to pin citations jointly.

2

[Tipster One] believed that RHINE's wife deleted the Facebook post shortly after posting it.

Warrant Affs. ¶ 42.

On January 13, 2023, the Government filed a notice indicating that it reinterviewed Tipster One on January 9 and January 10, 2023 in preparation for trial.[2] *See* Notice re Def.'s Mot. Suppress at 2, ECF No. 71. The notice states that, "[d]uring the interview, [Tipster One] indicated that, while he had learned of the Facebook post and its content from an acquaintance (or acquaintances), he did not recall personally seeing the post, or a screenshot of the post." *Id.* It states that, "[a]s of January 2023, neither the tipster nor his wife is in possession of a screenshot of the Facebook post from January 2021, and neither the tipster nor his wife recalls personally seeing the Facebook post." *Id.* The notice concludes by explaining that the Government offers this "clarification out of an abundance of caution," but that "the rem[a]inder of the evidence cited in the warrant affidavit amply supported probable cause." *Id.*

### III.  LEGAL STANDARD

An "affidavit offered in support of a search warrant enjoys a 'presumption of validity.'" *United States v. Maynard*, 615 F.3d 544, 550 (D.C. Cir. 2010) (quoting *Franks v. Delaware*, 438 U.S. 154, 171 (1978)). However, the Fourth Amendment requires that a hearing be held at the defendant's request where the defendant makes a "a substantial preliminary showing," *Franks*, 438 U.S. at 155-56, that "(1) the affidavit contained false statements or omitted certain facts; (2) the false statements or omitted facts were material to the finding of probable cause; and (3) the false statements or omissions were made knowingly and intentionally, or with reckless disregard

---

[2] Trial was originally scheduled to commence on January 30, 2023. *See* Pretrial Order, ECF No. 36. It has been rescheduled to commence on April 17, 2023. *See* Min. Order (Jan. 23, 2023).

3

for the truth," *United States v. Ali*, 870 F. Supp. 2d 10, 27 (D.D.C. 2012) (first citing *United States v. Becton*, 601 F.3d 588, 594 (D.C. Cir. 2010); and then citing *United States v. Spencer*, 530 F.3d 1003, 1007 (D.C. Cir. 2008)). A false statement is material if "set to one side, the affidavit's remaining content is insufficient to establish probable cause." *Franks*, 438 U.S. at 156. An omission is material if its "inclusion in the affidavit would defeat probable cause." *Spencer*, 530 F.3d at 1007 (quotation omitted). Where a hearing is necessary, suppression is only appropriate if, "at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and . . . the affidavit's remaining content is insufficient to establish probable cause." *Franks*, 438 U.S. at 156.

### IV. ANALYSIS

Defendant moves for a *Franks* hearing and, should a hearing be granted, suppression on grounds that the warrant affidavits contain both material false statements and material omissions. Def.'s Mot. at 7, 11. With respect to false statements, Defendant argues that the affidavits "assert that [Tipster One] *actually saw* a screenshot of a purported incriminating Facebook post by Mr. Rhine's wife, and had received that screenshot from a friend" when "[i]n fact, he did not." *Id.* at 7 (emphasis in original). With respect to omissions, Defendant argues that the affidavits "omit [Tipster One's] purported promise to follow up to provide that screenshot to the FBI, and his failure to do so despite providing *other* items to the FBI days later and sitting down with the FBI—and indeed the affiant—in September 2021." *Id.* (emphasis in original). As explained briefly below, it is far from clear that Defendant has shown that the affidavits included any false statements or omissions in the first place, let alone that the Government acted with at least reckless disregard for the truth. But the Court need not delve deeply into those issues

4

because it is abundantly clear that the alleged false statements and omissions were immaterial to the finding of probable cause.

### A.  Materiality

Setting aside the information provided by Tipster One concerning the Facebook post, the remainder of evidence included in the affidavits is more than sufficient to establish probable cause and the inclusion of the alleged omissions would do nothing to defeat it.  That remainder includes the following:

- Investigators received returns from a warrant served on Verizon for cell-site location information ("CSLI") associated with Defendant's phone, which showed that, "in and around the time of the incident" the phone "used a cell site consistent with providing service to a geographic area that included the U.S. Capitol building."  Warrant Affs. ¶ 38.

- Investigators received returns from a warrant for Google "location data," which showed "that a device associated with [Defendant's phone number] was within or around the U.S. Capitol on January 6, 2021 between the time of 2:24 PM and 4:47 PM."  Warrant Affs. ¶ 39.

- On January 12, 2021, Tipster Two submitted an online tip stating, based on "second-hand knowledge, that Defendant "had been inside the Capitol during the riots of January 6, 2021."  Warrant Affs. ¶ 36.

- Based on open-source information, the FBI identified a David Charles Rhine living in Bremerton, Washington with the same identifying information as that provided by Tipster One.  *See* Warrant Affs. ¶ 37.

- After the FBI's March 2021 interview with Tipster One, Tipster One provided a text message exchange he had with Defendant and Defendant's wife in which Defendant's wife stated, in part, that "David had no idea and was nowhere near any of the violence" and that "[t]he majority are and were peaceful protesters."  Warrant Affs. ¶ 42.  In the exchange, Defendant himself stated: "I witnessed ZERO violence. I saw no 'proud boys.' Capitol police removed barriers and let people in."  *Id.*  An image of the text exchange was included in the affidavits.

- In September 2021, Tipster One identified Defendant in a "photograph taken from closed-circuit video (CCV) from inside the U.S. Capitol building on January 6, 2021."  Warrant Affs. ¶ 43.  The picture was included in the affidavits.  Tipster One also "reviewed several other screenshots believed to be of RHINE but could no confirm RHINE's identity due to the quality of the images."  *Id.*

- The FBI conducted a "review of video footage from U.S. Capitol CCV . . . of the events of January 6, 2021" which "revealed a person believed to be RHINE present in various locations in the U.S. Capitol building." Warrant Affs. ¶ 44 (footnote omitted). The affiant stated his belief that the identified individual was Defendant "based on a comparison of CCV footage with the photograph of RHINE identified by [Tipster One]." *Id.* The affiant also identified the individual "on multiple CCV cameras throughout the U.S. Capitol building based on his clothing and accessories, and based on a comparison of the CCV footage with RHINE's most recent driver's license photograph." *Id.* The affidavits include eleven timestamped color photographs from CCV footage in various places inside the Capitol building showing the individual wearing a red hat, a dark hooded jacket or sweatshirt, dark pants, and, at times, carrying a blue flag with white stars on it. *See id.* at 15–23.

Defendant makes two arguments that the alleged false statements and omissions concerning the Facebook post were material. First, he makes a conclusory argument that "the warrant affidavit lacked direct evidence of criminal activity." Def.'s Mot. at 7. This is difficult to square with the evidence describe above, most notably the CCV surveillance photograph from inside the Capitol in which Tipster One identified Defendant and the ten others in which the FBI identified Defendant by cross-reference to his most recent driver's license photograph. *See* Hr'g Tr. at 9–10, *United States v. Cruz, Jr.*, No. 22-cr-0064 (D.D.C. Jan. 13, 2023) (explaining that "the Capitol was closed on [January 6]" so "anybody who was there who was not authorized to be there was in fact committing a crime, at least based upon a probable cause assessment"). The "constellation of evidence" provided in the affidavits, Gov't's Opp'n to Def.'s Mot. *Franks* Hearing ("Gov't's Opp'n") at 14, ECF No. 80, laid out above, was more than enough to establish a "fair probability" that the warrants would return evidence of a crime without consideration of

6

the information relayed by Tipster One regarding the Facebook post, *Illinois v. Gates*, 462 U.S. 213, 238 (1983). [3]

Second, Defendant argues that the alleged false statements and omissions in the affidavits "falsely bolster [Tipster One's] reliability." Def.'s Mot. at 8. Defendant explains that "[Tipster One] was heavily relied upon by the government, and, importantly, was relied upon to *identify Mr. Rhine in surveillance footage*." *Id.* at 7 (emphasis in original). However, there are various other indicia of reliability as to that identification. First, the affidavits state that Tipster One "had known RHINE since 2017," indicating that he was familiar with Defendant's appearance. Warrant Affs. ¶ 42. Second, the affidavits state that Tipster One only identified Defendant in one CCV image out of the "several" the FBI showed him, which suggests that Tipster One was discerning in making his identification. *Id.* ¶ 43. Third, Tipster One provided the FBI with a screenshot, included in the affidavits, of his text messages exchange with Defendant and Defendant's wife in the aftermath of January 6, the substance of which partially corroborates the central allegation in his tip: that Defendant entered the Capitol that day. *See id.* ¶ 42 (showing text from Defendant saying, "I witnessed ZERO violence. . . . Capitol police removed barriers and let people in."). Similarly, the affidavits state that the FBI first identified Defendant using "the same identifiers as those provided by [Tipster One]." *Id.* ¶ 37. Regardless of whether the affidavits stated that Tipster One did not actually see a screenshot of Defendant's wife's Facebook post, or described additional steps the FBI did and did not take to further investigate that post, Tipster One's identification of Defendant in the CCV photograph was sufficiently reliable to support a finding of probable cause. *See Franks*, 438 U.S. at 165 (explaining that a

---

[3] By the same token, inclusion of the allegedly omitted information about steps the FBI took to further investigate the post likewise would have been irrelevant to the probable cause determination.

warrant affidavit relying on an informant need only include "some of the underlying circumstances from which the officer concluded that the informant . . . was credible or his information reliable" (cleaned up)).

More importantly, the FBI independently identified Defendant through open-source records and used his most recent driver's license photograph to identify him on the Capitol CCV images before Tipster One made his identification.[4] *See* Warrant Affs. ¶¶ 37, 44. Considering the FBI's identification of Defendant in CCV photographs throughout the Capitol building on January 6 together with the information provided by Tipster Two, the CSLI data associated with Defendant's phone, the Google location data associated with Defendant's phone, and the text message exchange between Tipster One, Defendant, and his wife, the Court finds that Defendant falls far short of making a substantial preliminary showing that the affidavits lacked sufficient evidence of probable cause without the information provided by Tipster One. *See Becton*, 601 F.3d at 598 ("[E]ven if the omitted information concerning [two confidential sources] completely undermined their credibility such that the information relating to them was deemed unreliable and struck entirely from the affidavit, [defendant] does not show that probable cause would have been defeated.").

---

[4] Defendant claims that "agents relied on this identification to then pull further images of the person identified by the tipster and allege that person was Mr. Rhine in the warrant affidavits." Def.'s Mot. at 7–8. However, as the Government explains, this "chronology is wrong." Gov't's Opp'n at 13 n.2. Tipster One made his identification in September 2021. *See* Warrant Affs. ¶ 43. But as of late July 2021, the FBI had tracked the individual it identified as Defendant in CCV footage throughout the Capitol "based on his clothing and accessories, and based on a comparison of the CCV footage with RHINE's most recent driver's license photograph." *Id.* ¶ 44; *see* Ex. D to Gov't's Opp'n, ECF No. 81-4.

### B. Falsity and Intent

While the Court's finding as to materiality is itself sufficient to deny Defendant's motion, the Court provides brief supplemental analysis on the questions of whether the affidavits in fact contained the alleged false statements and omissions and whether the Government acted with the requisite intent.

On March 17, 2021, the day after his interview with the FBI, Tipster One emailed the FBI two screenshots. *See* Ex. C to Gov't's Opp'n at 3, ECF No. 81-3. Importantly, while these screenshots show a series of messages that have the appearance of text messages, Tipster One described them as "Facebook screenshots." *Id*. The messages were sent by Defendant's wife to an unidentified individual who Tipster One says provided him with the screenshots but did "not want to share their name." *Id.*; Ex. B to Gov't's Opp'n at 9–10, ECF No. 81-2. The combined messages read, in relevant part,

> Hi [redacted], In response to your fb post. The police welcomed the peaceful protestors in the Capitol bldg. David was no [*sic*] near the police brutality of grandma's, kid's [*sic*] with use of pepper spray (that can't be used on Antifa btw)[.] I'm saddened that half our country can't go to "their house" and be heard fairly. The media doesn't report the conservative side. Politicians are "bought and paid" for. There is no other way to express the 1st and 2nd amendment right. My husband protected our country by serving the military and he with 500k others went to SAVE our country. . . . Please don't say anything further about David. He is a patriot. Antifa insurgents were there to create chaos and destruction. The majority were peaceful but you will NEVER hear the truth from the mainstream media. I know you know this and you're an intelligent person. Please don't repeat this exchange. Not helpful to anyone right now. Thanks [redacted]."

*Id.*

The Government states that Defendant's wife sent these messages in response to a comment on a Facebook post she made and later deleted. *See* Gov't's Opp'n at 15. On January 19, 2023, Tipster One provided the FBI with a photograph, which Tipster One indicated was taken on January 8, 2021, of a laptop screen showing what the Government says is that Facebook

9

post.[5]  Ex. A to Gov't's Opp'n at 1, ECF No. 81-1.  The Facebook post in the photograph reads, "Leaving FB, friends.  I do not support censorship in a supposed free country.  Contact me via text.  Stay well all."  *Id*.  It also shows a commentor's response saying, "your husband walked into the capitol building with an angry mob during a global pandemic without getting shot, that's a hell of a lot more freedom than most."  *Id.*  Tipster One explained, in the email providing the photograph to the FBI, that "[t]his comment spurred the subsequent Facebook Messenger (or DM) conversation from [Defendant's wife]."  *Id.*

Accordingly, the Government argues that Tipster One's statement during his January 2023 interviews with the FBI and a defense investigator that he never saw the "Facebook post" or a screenshot of it merely reflects a "misunderstanding about the characterization of a communication as a Facebook 'post' as opposed to a 'message,'" as Tipster One himself referred to the screenshots of Defendant's wife's messages as "Facebook screenshots" in his email to the FBI.  Gov't's Opp'n at 14–15; *see* Ex. C to Gov't's Opp'n at 3.  In his reply, Defendant, seeming to tacitly acknowledge this possible misunderstanding, instead pivots to an argument that the real reckless false statement in the affidavits is their characterization of the messages as "a post to Facebook that Rhine had entered the Capitol building during the protest" because "none of [Defendant's wife's] messages invoked by the government include *any* claim by Mr. Rhine's wife that Mr. Rhine had entered the Capitol Building."  Def.'s Reply at 5–6, ECF No. 82 (emphasis in original).

---

[5] Defendant appears to accept that the messages from Defendant's wife were sent in response to a comment on this post.  *See* Def.'s Reply at 7, ECF No. 82 (arguing that the Government should have included the screenshots of Defendant's wife's messages in response to the Facebook commenter in the affidavits, but not contesting that Defendant's wife sent the messages in response to the commenter).

While the messages sent by Defendant's wife may not explicitly state that Defendant entered the Capitol building, they come awfully close. In response to a direct accusation that her husband entered the Capitol on January 6, she did not deny it and made several statements heavily implying its truth. *See* Ex. B to Gov't's Opp'n at 9–10 ("The police welcomed the peaceful protestors in the Capitol bldg. . . . My husband . . . with 500k others went to SAVE our country. . . . Please don't repeat this exchange."). But even if the Court adopted a strictly literal reading of the affidavits' characterization sufficient to find that Defendant had made a "substantial preliminary showing" of falsity, *Franks*, 438 U.S. at 155-56, he has not shown reckless disregard for the truth. The warrant affidavits accurately reflect what Tipster One told the FBI, as recorded in contemporaneous handwritten notes by the FBI agent, *see* Ex. C to Def.'s Mot., ECF No. 75-3,[6] and a typed interview summary, *see* Ex. B to Def.'s Mot., ECF No. 75-2.[7] And as explained above, the FBI was able to corroborate information provided by Tipster One, such that it was reasonable for the affiant to rely on Tipster One's characterization. *See Franks*, 438 U.S. at 155, 165 (explaining that the "information put forth" in a warrant affidavit must be "believed or appropriately accepted by the affiant as true," but need not be "'truthful' in the sense that every fact recited in [it] is necessarily correct, for probable cause may be founded upon hearsay and upon information received from informants"). In turn, the affiant's

---

[6] The relevant portions of the notes include somewhat unclear sentence fragments reading: "Davids wife posted on . . . proud of husband . . . Been in Capitol . . . Did not see the post . . . Have a direct text conversation . . . Facebook private message exchange . . . Pictures of the post from [Defendant's wife]." Ex. C to Def.'s Mot. at 1, 3.

[7] The relevant portion of the summary reads, "[Tipster One] had no indication RHINE travelled to Washington D.C. in January 2021 until a friend informed him of [Defendant's wife's] Facebook post. [Defendant's wife] posted a message stating she was proud of her husband because he had been at the January 6th rally and had entered the Capitol. [Tipster One] did not see [Defendant's wife's] actual post, but he'd seen a screen shot sent to him by his friend." Ex. B to Def.'s Mot. at 1.

interpretation of Defendant's wife's messages consistent with Tipster One's characterization—reflected in the affidavits' language that "[i]nformation provided by [Tipster One] included that on January 6, 2021, Rhine's wife made a post to Facebook that Rhine had entered the Capitol building"—was at very worst negligent imprecision.[8] Warrant Affs. ¶ 35; *see United States v. Burroughs*, 882 F. Supp. 2d 113, 120 (D.D.C. 2012) ("Mere negligence in misstating a fact in a search warrant affidavit, which the Defendant has not even shown, is insufficient to trigger a *Franks* hearing.").

Defendant has failed to make a substantial preliminary showing that the warrant affidavits included material false statements or omissions made with reckless disregard for the truth, so he is not entitled to a *Franks* hearing.

## V.  CONCLUSION

For the foregoing reasons, Defendant's Motion for Hearing and to Suppress under *Franks v. Delaware* (ECF No. 73) is **DENIED**.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  March 29, 2023                                                                  RUDOLPH CONTRERAS
                                                                                                         United States District Judge

---

[8] Defendant's reply also raises a separate materiality argument that the Government should have included the screenshots of the messages themselves in the affidavits.  *See* Def.'s Reply at 7.  But a defendant's right to challenge the veracity of a warrant is derived from the Fourth Amendment's guarantee that "no Warrants shall issue, but upon probable cause." *Franks*, 438 U.S. at 164.  Omissions from warrant affidavits are therefore "only material if their 'inclusion in the affidavit would defeat probable cause.'" *Ali*, 870 F. Supp. 2d at 27 (quoting *Spencer*, 530 F.3d at 1007).  That is, only "exculpatory facts" must be included.  *Burke v. Town of Walpole*, 405 F.3d 66, 81 (1st Cir. 2005).  The messages from Defendant's wife plainly are not exculpatory—indeed they tend to prove that Defendant was present at the Capitol during the events of January 6, 2021—so their exclusion from the affidavit does not implicate the rights guaranteed by the Warrant Clause of the Fourth Amendment.