UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal Action No.:  21-0687 (RC) |
| | : | |
| DAVID CHARLES RHINE, | : | |
| | : | |
| Defendant. | : | |
| | : | |

**MEMORIALIZATION OF BASES FOR THE COURT'S RESPONSES TO JURY QUESTIONS ONE AND THREE**

During its deliberations, the jury asked several questions by note to the Court.  The Court herein memorializes the bases for its responses to questions one and three, which the parties contested.

**I.  QUESTION ONE**

The jury's first question was:  "Does the term 'restricted building or grounds' describe the area <u>because</u> the Secret Service was present (because of the presence of VP Pence) OR does the term 'restricted building or grounds' describe an area with posted signs describing it is restricted, or cordoned off, or otherwise restricted? This refers to counts 1 and 2."  Jury Notes at 1, ECF No. 100.

Upon review, the Court found that the text of 18 U.S.C. § 1752, under which Counts 1 and 2 were charged, does not support interpreting the definition of "restricted buildings or grounds" to require proof that such restrictions were put in place *because* of a visit by a Secret Service protectee.  First, the offense conduct is described in § 1752(a)(1) and (a)(2) without reference to any Secret Service protectee.  More importantly, it is clear that Congress knew how

to include causal language if it wanted to.  The definition of "restricted buildings or grounds" relevant to the present counts provides that the term "means any posted, cordoned off, or otherwise restricted area . . . of a building or grounds where the President or other person protected by the Secret Service is or will be temporarily visiting."  § 1752(c)(1)(B).  But the next subparagraph provides an alternative definition: "any posted, cordoned off, or otherwise restricted area . . . of a building or grounds so restricted in conjunction with an event designated as a special event of national significance."  § 1752(c)(1)(C).  Congress could have used similar language in subparagraph (c)(1)(B), for example by drafting the definition to read: "any posted, cordoned off, or otherwise restricted area . . . of a building or grounds *so restricted in conjunction with* a visit of the President or other person protected by the Secret Service."  That Congress declined to do so strongly suggests that it did not intend to require proof of causation.

This question is related that one posed in Defendant's motion to dismiss Counts 1 and 2 of the Information.  In relevant part, Defendant argued that Counts 1 and 2 failed to state an offense because the Information failed to "allege that the [Secret Service] designated the area in question as being restricted" even though "it is the Secret Service who must designate that area 'restricted.'" Def.'s Mot. Dismiss Counts 1 and 2 at 5–6, ECF No. 46.  The Court rejected that argument, noting that it had rejected a "nearly identical" argument in another January 6 case, *United States v. Andries*, No. 21-cr-0093, 2022 WL 768684, at *12–17 (D.D.C. March 14, 2022), and that Defendant made "no attempt to distinguish the present case."  Mem. Op. at 14, ECF No. 79.  While the question of which agency may restrict an area is distinct from the question of whether the area must be restricted because of a visit by a Secret Service protectee, they are related in that they both implicate the policy objectives served by the statute.  As the Court explained in *Andries*, that § 1752 does not say "who must restrict the area . . . makes policy

2

sense," as it "extends the law's protection of Secret Service protectees to areas where sufficient physical restrictions may already exist, such as military facilities, or where partner federal or local authorities are willing to assist with setting restrictions (such as the Capitol Police on January 6), without requiring the Secret Service to set up unnecessary additional physical restrictions." *Andries*, 2022 WL 768684, at *15. Similarly, here, reading § 1752 to require that an area must have been restricted *because* of a specific visit by a Secret Service protectee would sharply limit the "law's protection of Secret Service protectees" in ways inconsistent with the security interests served by the statute.[1]  *Id.*

For these reasons, the Court provided the following response to the jury in open court: "The definition of, quote, restricted building or grounds, end quote, does not require that any restrictions had been created because of a specific visit by a Secret Service protectee."

---

[1] During argument, Defense counsel pointed to language included in a footnote in the Court's decision denying Defendant's Motion to Dismiss Counts 1 and 2. That footnote addressed "Defendant's three-sentence argument that the statute 'includes no causal nexus between restriction of the area and the visit, or anticipated visit of a Secret Service protectee." Mem. Op. at 22 n.7, ECF No. 79 (citing Def.'s Mot. Dismiss Counts 1 and 2 at 24, ECF No. 46). The Court stated: "this is precisely the function of § 1752(c), which defines 'restricted buildings or grounds' to include a restricted area of a 'a building or grounds where [a Secret Service] protectee] is or will be temporarily visiting." *Id*. (citation omitted). But the Court offered this explanation in the very different context of Defendant's vagueness challenge. In that context, the Court's analysis focused on § 1752(c)'s "function" to define and limit when a Defendant may be prosecuted under the statute. The Court did not adopt Defendant's "causal nexus" language; rather it used the statutory language itself to explain its functionally similar tendency to connect the prohibited conduct—entering or remaining under § 1752(a)(1), and disorderly or disruptive conduct under § 1752(a)(2)—to an area where a Secret Service protectee is or will be temporarily visiting, such that the statute provides fair notice of the conduct it prohibits and does not invite arbitrary enforcement. At the same time, the Court stressed the "good reason for flexibility in where and how long an area can be restricted under § 1752, as Secret Service protectees tend to have busy and unpredictable schedules." Mem. Op. at 24, ECF No. 79. Here, presented with the jury's different question of whether § 1752 requires the Government to prove that a restricted area was created because of a visit by a Secret Service protectee, use of the ordinary tools of statutory interpretation compelled the answer that it does not.

## II. QUESTION THREE

The jury's third question was: "In count one, element two, must the defendant 'know' that VP Pence was in or will be in the restricted area in order for us to find this particular[] element met?" Jury Notes at 1.

Upon review, the Court found that § 1752(a)(1) does not require knowledge that a Secret Service protectee was in or planning to be in the restricted area. The text of the subsection makes it a crime to "knowingly enter[] or remain[] in any restricted building or grounds without lawful authority to do so," while the definition in § 1752(c)(1)(B) merely defines "restricted buildings or grounds" with reference to an area visited by a Secret Service protecee. Nowhere does the statute even suggest that the defendant must know the details of the visit. Indeed, a contrary reading would defeat the protective purpose of the statute, as some degree of secrecy is often integral to Secret Service protection. *See* Gov't's Mot. Limit Cross-Exam. at 2, ECF No. 39 ("[T]he very nature of the Secret Service's role in protecting the Vice President and his family implicates sensitive information related to that agency's ability to protect high-ranking members of the Executive Branch . . . .").

For these reasons, the Court provided the following response to the jury in open court: "Count [1][2] does not require that the defendant have knowledge that a Secret Service protectee is or will be visiting or the timing of that visit."

Dated: April 24, 2023                                          RUDOLPH CONTRERAS
                                                               United States District Judge

---

[2] The Court misspoke and said "Count 2" when providing this response to the jury initially, but recalled the jury and clarified that its response also applied to Count 1 upon realizing the error.