UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal No. 21-CR-0687 (RC) |
| Plaintiff, | |
| v. | MR. RHINE'S REPLY TO THE GOVERNMENT'S OPPOSITION TO HIS MOTION FOR BOND PENDING APPEAL |
| DAVID CHARLES RHINE, | |
| Defendant. | |

Mr. Rhine replies briefly to address arguments raised by the government in its opposition to his motion for bond pending appeal. Other arguments in the opposition have already been briefed in Mr. Rhine's motion. First, the government employs speculation to incorrectly argue that Mr. Rhine has not demonstrated he does not pose a danger to the community, rather than engaging the substantial evidence to the contrary in the record. Second, the government overstates the holding of *McCullen v. Coakley* to argue that § 5104, charged in counts 3 and 4, is not an unconstitutional viewpoint- and content-based restriction on speech, without acknowledging *McCullen*'s warning about the precise situation presented by the record here. Third, the government errantly argues that the instructional error(s) as to Counts 1 and 2 under § 1752 would be deemed harmless error without acknowledging the jury's questions indicating doubt about the element at issue, and incorrectly claims that Mr. Rhine has not argued that reversal of these convictions would lower his sentence. As such, the Court should reject the government's arguments and should grand Mr. Rhine bond pending appeal.

///

///

REPLY TO OPPOSITION TO MOTION FOR
BOND PENDING APPEAL
(*United States v. Rhine*, 21-CR-687 (RC)) - 1

**FEDERAL PUBLIC DEFENDER**
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

## I.  ARGUMENT

Much of the government's opposition was previously addressed by Mr. Rhine in his motion for bond pending appeal. However, he addresses three issues here that would benefit from further argument.

### A. Record evidence establishes that Mr. Rhine does not pose a danger to the community, without acknowledging the substantial evidence of Mr. Rhine's good character.

The government relies on its own speculation from evidence at trial and "the volatile context of the upcoming election year" to argue that Mr. Rhine poses a danger to the safety of the community. Dkt. No. 135 at 5, 5–7. The government's arguments depend on extreme and unreasonable inferences from an incomplete recitation of the trial evidence. For example, the government claims that Mr. Rhine "proceeded immediately to a door that led to the House chamber. Having found that door locked, Rhine looked for a different route." Dkt. No. 135 at 6. In fact, trial evidence demonstrates that Mr. Rhine arrived near that door as it was directly across the antechamber where he entered. Once there, he made *no* attempt to enter or open the door but instead intervened to try to stop other people from trying to open or damage the door. *See* Dkt. No. 129 (trial transcript Apr. 19, 2023) at 447–50; PSR at 6. The government also repeatedly emphasizes the pocket knives and pepper spray purportedly confiscated from Mr. Rhine, Dkt. No. 135 at 6, 6–7, but fails to acknowledge that its own witness described these as ordinary items, "typical safety items," legal items, smaller than the palm of his hand (as to the pocket knives), and for "personal use" (as to the pepper spray), with no indication that any had been used. Dkt. No. 130 (trial transcript Apr. 20, 2023) at 342, 359, 364–65, 367.

Contrary to the government's fears, there is ample evidence in the record showing Mr. Rhine poses no danger to the community. The trial evidence affirms that he personally engaged in no violence or vandalism and was not near areas where

REPLY TO OPPOSITION TO MOTION FOR
BOND PENDING APPEAL
(*United States v. Rhine*, 21-CR-687 (RC)) - 2

FEDERAL PUBLIC DEFENDER
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

serious violence and vandalism occurred. The only act of vandalism he did witness, he tried to stop. The trial evidence also confirms that Mr. Rhine was entirely compliant and respectful with law enforcement, and followed directions to leave the building even though it was difficult to do so.

The government argues the Court should ignore Mr. Rhine's sincere expression of remorse simply as "self-serving" without any evidence of this (for example no evidence of contrary claims). To the contrary, numerous family members, friends, and community contacts of Mr. Rhine's wrote to the Court to describe the man they know, including his sincere contrition for his involvement in any way of the events of January 6, 2021. *See* Dkt. Nos. 114-2–114-12. For example, Mr. Rhine's wife explained:

> David disavows violence and has never condoned violence as solution in conflict. We were both horrified and distressed by the violence and loss of life on January 6th. David physiologically had a "broken heart" for one year as this was not the intentions that day for many of the peaceful protestors, including my husband.

Dkt. No. 114-2. Mr. Rhine's adult nephew agreed: "He has made a terrible mistake and very much so regrets it." Dkt. No. 114-5. His Brother reiterated: "After facing up to the reality of the serious charges and truths uncovered by Congress and DOJ investigations since the 2020 election, he is a man with real contrition." Dkt. No. 114-7. *See also* Dkt. No. 114-6, 114-8 (others attesting to Mr. Rhine's sincere contrition).

Furthermore, through the Pre-Sentence Investigation, the many letters and records submitted at sentencing, and Mr. Rhine's own letter, there is ample evidence that Mr. Rhine poses no danger to the community. Indeed, the government does not identify what they believe Mr. Rhine might do that would be dangerous in "the volatile context of the upcoming election year[.]" Dkt. No. 135 at 5. And Mr. Rhine's long record of generous support for his community, friends, and family; honorable service to this country; absence of any criminal or other disciplinary record—let alone any allegation of any violence; compliance on pretrial release; and strong ties in the

REPLY TO OPPOSITION TO MOTION FOR
BOND PENDING APPEAL
(*United States v. Rhine*, 21-CR-687 (RC)) - 3

**FEDERAL PUBLIC DEFENDER**
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

community are more than sufficient to demonstrate by clear and convincing evidence that he poses no danger to the community.

### B. The government's reliance on *McCullen* to argue that § 5104 does not impose content- or viewpoint-based restrictions on speech ignores that case's facts and limited holding.

The government argues, citing this Court's prior order, that the restrictions in § 5104 are "clearly viewpoint neutral," Dkt. No. 135 at 9 (quoting Dkt. No. 79 at 33–35), supporting this argument with the contention that "5104(e)(3)'s exemption for government officials [has been] 'squarely rejected by the supreme court' in *McCullen v. Coakely*, 573 U.S. 454, 483 (2014)[.]" Dkt. No. 135 at 9 (quoting Dkt. No. 79 at 35–36). However, this summary of *McCullen* ignores the facts and explicit limitations of the holding in that case.

Generally, "an exemption from an otherwise permissible regulation of speech may represent a governmental 'attempt to give one side of a debatable public question an advantage in expressing its views to the people.'" *City of Ladue v. Gilleo*, 512 U.S. 43, 51 (1994) (quoting *First Nat. Bank of Boston v. Bellotti*, 435 U.S. 765, 785–786 (1978)). In *McCullen*, a "buffer zone" in front of an abortion clinic was challenged, and the Supreme Court held: "At least on the record before us, however, the statutory exemption for clinic employees and agents acting within the scope of their employment does not appear to be such an attempt." 573 U.S. at 483. However, that holding was narrowly limited to the facts of that case, and the Court noted reason to be concerned in a case where employees' official duties include relevant speech.

The *McCullen* Court made clear that its holding that the exemption for employees from "buffer zone" prohibitions on speech was not a viewpoint-based restriction was based on the fact that the employees there did not speak about the rightfulness or wrongfulness of abortion in the buffer zone as part of their job duties:

REPLY TO OPPOSITION TO MOTION FOR
BOND PENDING APPEAL
(*United States v. Rhine*, 21-CR-687 (RC)) - 4

FEDERAL PUBLIC DEFENDER
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

> The limitation instead makes clear—with respect to both clinic employees and municipal agents [e.g. firefighters, paramedics]—that exempted individuals are allowed inside the zones *only to perform those acts authorized by their employers*. ***There is no suggestion in the record that any of the clinics authorize their employees to speak about abortion in the buffer zones.***

*Id.* at 483–84 (emphasis added). The Court cautioned that a different conclusion would be necessary if the exempted employees' official duties included relevant speech:

> It would be a very different question if it turned out that a clinic authorized escorts to speak about abortion inside the buffer zones. []. In that case, the escorts would not seem to be violating the Act because the speech would be within the scope of their employment.[] ***The Act's exemption for clinic employees would then facilitate speech on only one side of the abortion debate—a clear form of viewpoint discrimination***[.]

*Id.* at 484–85 (emphasis added). Such is the situation present here.

Unlike doctors, nurses, and other employees of abortion clinics whose official duties are medical, members of Congress and their staff and officers have official duties that involve political speech. Political speech by members of Congress and their similarly empowered staff is a daily occurrence at the Capitol. As such, the exemption renders § 5104 an impermissible viewpoint-based restriction.

    **C.**    **If the Court of Appeals finds there was instructional error as to counts 1 and 2, those counts would require reversal as the record demonstrates the harmfulness of the error, and a lower or non-custodial sentence is likely.**

The government argues that any instructional error on counts 1 and 2 should be deemed harmless citing no evidence that Mr. Rhine was aware of the Vice President's presence nor that he was anywhere near the Vice President, and failing to acknowledge the numerous jury questions indicating doubt about this issue. Dkt. No. 135 at 16–18. The government's claim is without merit.

Indeed, the trial record contains no evidence nor statement of Mr. Rhine that he was aware that the Vice President was anywhere at the Capitol on January 6, no

REPLY TO OPPOSITION TO MOTION FOR
BOND PENDING APPEAL
(*United States v. Rhine*, 21-CR-687 (RC)) - 5

FEDERAL PUBLIC DEFENDER
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

evidence that he was anywhere close to the Vice President or his detail, and no evidence that the Secret Service publicized or alerted Mr. Rhine to the Vice President's location or visit. *See generally* Dkt. Nos. 128–30 (full trial transcripts). Furthermore, the jury asked multiple questions ***about*** the element of the visit of the Secret Service protectee, including the application of the knowledge element to this visit. *See* Dkt. No. 100. These questions make clear that the jury had doubt about whether evidence proved Mr. Rhine knew of visit of the Vice President and other issues related to the Vice President's visit. The government has not and cannot on this record meet its acknowledged burden to prove harmless error. *See* Dkt. No. 135 at 16. Indeed, two courts in this district have acquitted of these charges when properly holding the government to its burden to prove knowledge of the full definition of "protected building or grounds," on similar or even much more aggravated records than that in this case. *See United States v. Samsel*, No. 21-CR-537 (JMC) (D.D.C. Feb. 2, 2024 minute order);[1] *United States v. Groseclose*, No. 21-CR-311, Dkt. Nos. 99, 104 (CRC), 2024 WL 68248, at *9 (D.D.C. Jan. 5, 2024); *United States v. Elizalde*, No. 1:23-CR-00170, Dkt. Nos. 39, 40, Dec. 6, 2023 Minute Order (CJN), 2023 WL 8354932, at *2 (D.D.C. Dec. 1, 2023).

Furthermore, the government claims that Mr. Rhine "does not contend—and has therefore waived any claim—that, if his convictions on Counts 1 and 2 were vacated, it would somehow be appropriate (let alone 'likely') for this Court to reconsider Rhine's concurrent four-month terms of incarceration on Counts 3 and 4." Dkt. No. 135 at 13. This is not so. In fact, Mr. Rhine argued as to all of the substantial questions identified

---

[1] The order and transcript for this ruling have yet to post in PACER, however reporting on the February 2, 2024, verdict indicates "Judge Cobb decided that prosecutors had failed to prove, as the statute requires, that the men had knowingly gotten too close to a person protected by the Secret Service[.]" Alan Feuer, *Man Convicted of Assaulting Police in Tipping Point on Jan. 6*, N.Y. Times, Feb. 2, 2024, https://www.nytimes.com/2024/02/02/us/politics/jan-6-ryan-samsel-verdict.html.

REPLY TO OPPOSITION TO MOTION FOR
BOND PENDING APPEAL
(*United States v. Rhine*, 21-CR-687 (RC)) - 6

FEDERAL PUBLIC DEFENDER
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

that resolution in his favor "would reverse the custodial sentence imposed in his case, if not his convictions themselves." Dkt. No. 124 at 1; *see also id.* at 43 ("If the appellate court answers these questions in Mr. Rhine's favor, each would result in either reversal of the conviction or of the custodial sentence. As a result, denying Mr. Rhine bond pending appeal raises a serious risk of subjecting him to custodial punishment that was imposed in violation of his constitutional rights.").

And, as the government itself pointed out, this Court relied on Mr. Rhine's conviction of the § 1752 charges, not merely the § 5104 charges, in justifying its custodial sentence. The Court responded to Mr. Rhine's argument that the Court had not sentenced a single similarly situated defendant convicted of misdemeanors arising from January 6 to a custodial sentence by emphasizing that most of those identified defendants pled guilty only to a § 5104 parading charge. Dkt. No. 132 (Sentencing Transcript) at 25–26; *see also* Dkt. No. 135 at 7 (quoting same).

Vacation of the most serious convictions certainly raises a probability that the Court would reduce or eliminate the custodial sentence upon re-sentencing, should the two less serious § 5104 convictions survive appeal. Furthermore, supervised release is not authorized for such petty offense convictions, and the D.C. Circuit made clear that a Court cannot impose a "split" sentence for jail ***and*** probation for a petty offense conviction. *See United States v. Little*, 78 F.4th 453, 461 (D.C. Cir. 2023). This raises the even greater likelihood that the Court would opt to re-sentence Mr. Rhine to probation rather than jail time if ***only*** his convictions on Counts 1 and 2 were reversed. As such, bond pending appeal is warranted.

## II. CONCLUSION

The Court should grant Mr. Rhine's motion for bond pending appeal. There is no dispute that he presents no flight risk. Furthermore, the record is clear that he presents no risk of danger and that his appeal will raise substantial questions that, if decided in

REPLY TO OPPOSITION TO MOTION FOR
BOND PENDING APPEAL
(*United States v. Rhine*, 21-CR-687 (RC)) - 7

FEDERAL PUBLIC DEFENDER
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

his favor, will result in reversal of his convictions or a reduced or non-custodial sentence.

DATED this 5th day of February 2024.

Respectfully submitted,

s/ *Rebecca Fish*
WA State Bar Number: 57488
Assistant Federal Public Defender
1331 Broadway, Suite 400
Tacoma, WA 98402
Phone: (253) 593-6710
Email: Becky_Fish@fd.org

Attorney for David Rhine

REPLY TO OPPOSITION TO MOTION FOR
BOND PENDING APPEAL
(*United States v. Rhine*, 21-CR-687 (RC)) - 8

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**