### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal Action No.: 21-687 (RC) |
| | : | |
| DAVID CHARLES RHINE, | : | Re Document No.:    124 |
| | : | |
| Defendant. | : | |

## MEMORANDUM OPINION

DENYING DEFENDANT'S MOTION FOR BOND PENDING APPEAL

## I.  INTRODUCTION

On April 24, 2023, a federal jury convicted David Charles Rhine on each of four counts arising from his participation in the assault on the U.S. Capitol on January 6, 2021.  In the wake of the jury's verdict, the Court sentenced Rhine to a four-month term of imprisonment on each of the counts of conviction, with each term to run concurrently.  Shortly thereafter, Rhine noticed an appeal of his conviction to the D.C. Circuit.  Rhine now moves for bond pending the conclusion of that appeal.  For the reasons described below, Rhine's motion is denied.

## II.  BACKGROUND

On November 19, 2021, the Government filed an information charging Rhine with four separate offenses arising from his participation in the January 6, 2021, riot at the U.S. Capitol. Information, ECF No. 8.  Rhine opted not to plead guilty, and instead proceeded to try his case to a jury in April of 2023.  After a five-day trial, the jury found Rhine guilty on each of the four charged counts.  *See* Verdict Form, ECF No. 102.  Specifically, the jury found Rhine guilty of four misdemeanor offenses: entering and remaining in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(1) (Count One); disorderly and disruptive conduct in a

restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(2) (Count Two); disorderly

conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D) (Count Three); and

parading, demonstrating, or picketing in a Capitol Building, in violation of 40 U.S.C.

§ 5104(e)(2)(G) (Count Four).  Judgment at 1–2, ECF No. 120.  This Court then sentenced Rhine

to four-month terms of imprisonment on each count of conviction, with the terms to run

concurrently.  *Id.* at 3.  The Court also granted Rhine's request to delay his self-surrender date to

March 1, 2024.  *See id.* at 3, 6.

On September 25, 2023, Rhine noticed an appeal of the judgment.  *See* Notice of Appeal,

ECF No. 122.  He subsequently filed the instant motion for bond pending appeal and for a stay of

execution of his sentence.  Def.'s Mot. Bond Pending Appeal ("Def.'s Mot.") at 1, ECF No. 124.

The Government opposed the motion, *see* Gov't's Opp'n Mot. Bond Pending Appeal ("Gov't's

Opp'n"), ECF No. 135, and the motion is now ripe for review, *see* Def.'s Reply Gov't's Opp'n

Mot. Bond Pending Appeal ("Def.'s Reply"), ECF No. 136.

### III.  ANALYSIS

#### A.  Legal Standards

The Bail Reform Act provides, in relevant part, that a court "shall order . . . a person who

has been found guilty of an offense and sentenced to a term of imprisonment" to "be detained"

pending the resolution of an appeal unless the court finds that two conditions are met.  18 U.S.C.

§ 3143(b).  First, the court must find "by clear and convincing evidence that the person is not

likely to flee or pose a danger to the safety of any other person or the community if released

under section 3142(b) or (c) of this title."  *Id.* § 3143(b)(1)(A).  And second, the court must find

both "that the appeal is not for the purpose of delay" and that the appeal "raises a substantial

question of law or fact likely to result in . . . (i) reversal, (ii) an order for a new trial, (iii) a

sentence that does not include a term of imprisonment, or (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process." *Id.* § 3143(b)(1)(B).

## B.  Flight Risk or Danger to the Community

As an initial matter, the parties dispute whether Rhine has borne his burden of proving by clear and convincing evidence that he is not a flight risk or danger to the community.  For his part, Rhine argues that he had no criminal history prior to this case.  *See* Def.'s Mot. at 2; *see also* Presentence Investigation Report ("PSR") at 9, ECF No. 112.  Rhine also notes his "strong record of public service"—which includes his years of service in the Navy—"and [his] long history as a contributing community member in Bremerton, Washington."  *See* Def.'s Mot. at 2–3.  Rhine further notes that he is employed as an accountant—a job he has held since 2006—and that he has not violated any of the terms of his supervised release.  *See id.* at 3.

The Government concedes that Rhine "appears to have been compliant with the terms of his release."  *See* Gov't's Opp'n at 6.  But the Government argues that Rhine nonetheless poses a threat to the community.  *Id.* at 5–7.  In support, the Government emphasizes Rhine's actions on January 6, arguing that—although Rhine "did not himself engage in hands-on violence"—he "ignored the obvious indications that his presence on the Capitol grounds was unauthorized" and knowingly entered the Capitol with "two pocket knives and a container of pepper spray."  *See id.* at 6.  The Government also argues that Rhine "has not accepted responsibility for his conduct on January 6."  *See id.* at 7.  According to the Government, that fact, coupled with the "volatile context of the upcoming election year," serve as additional reasons to fear the danger Rhine poses if he remains in the community.  *See id.* at 5, 7.

Having considered the arguments of the parties and the available evidence—including the facts detailed in the Presentence Investigation Report—the Court finds that Rhine has shown, by clear and convincing evidence, that he poses neither a flight risk nor a risk to the broader community.  The Court agrees with Rhine that his compliance with the conditions of his supervised release, his close ties to the community, and his longstanding employment suggest that he is unlikely to flee or commit further offenses while his appeal is pending.  *See United States v. Sheppard*, No. 21-cr-203, 2023 WL 7279263, at *2 (D.D.C. Nov. 3, 2023) (finding defendant posed no flight risk and did not represent threat to community based on similar factors).  Accordingly, the Court finds that the requirements of section 3143(b)(1)(A) are satisfied.

### C.  Substantial Questions of Law

Having concluded that Rhine has satisfied section 3143(b)(1)(A)'s requirements, the Court must next consider whether Rhine's appeal "raises a substantial question of law or fact likely to result in . . . (i) reversal, (ii) an order for a new trial, (iii) a sentence that does not include a term of imprisonment, or (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process."  18 U.S.C. § 3143(b)(1)(B).  This requires the Court to answer two questions.  First, "[d]oes the appeal raise a substantial question?"  *United States v. Perholtz*, 836 F.2d 554, 555 (D.C. Cir. 1987) (per curiam).  In this context, the D.C. Circuit has explained that "a substantial question is a 'close' question or one that very well could be decided the other way."  *Id.* (internal quotation marks omitted); *see id.* (explaining that this standard is "more demanding" than one that requires the inquiry to be "fairly debatable," "fairly doubtful," or simply "not frivolous").  "In conducting this inquiry, the Court presumes the defendant was validly convicted," *United States v.*

4

*Sheppard*, No. 21-cr-203, 2024 WL 127016, at *2 (D.D.C. Jan. 11, 2024), and "the defendant

bears the burden of rebutting this presumption," *United States v. Libby*, 498 F. Supp. 2d 1, 3

(D.D.C. 2007).  If the court answers the first question in the affirmative, it then must determine

whether "resolution of th[e] [substantial] question in the defendant's favor [is] likely to lead to

reversal" or one of the other outcomes enumerated in section 3143(b)(1)(B)(ii)–(iv).  *Perholtz*,

836 F.2d at 555.

     Rhine contends that his appeal raises not one, but rather three substantial questions of

law.  Def.'s Mot. at 3.  First, he argues that the Court's instructions to the jury misstated the law

on Counts One and Two.  *Id.*  More specifically, he argues that the Court erred by instructing the

jury that they did *not* need to find that Rhine *knew* Vice President Mike Pence (or another Secret

Service protectee) was inside the Capitol in order to find Rhine guilty of violating 18 U.S.C.

§ 1752(a)(1) and (a)(2).  *See id.* at 3–16.  Second, Rhine argues that the statutes underlying his

convictions on Counts Three and Four—40 U.S.C. § 5104(e)(2)(D) and (e)(2)(G), respectively—

violate the First Amendment both on their face and as-applied.  *See id.* at 16–39.  Finally, Rhine

contends that the Court's sentence was impermissibly punitive because it was imposed as a

sanction for Rhine's "exercise of his Sixth Amendment rights."  *See id.* at 3, 39–43.

### 1.  Rhine's Challenge to 40 U.S.C. § 5104(e)(2)(D) and (e)(2)(G)

     For reasons that will become apparent, the Court begins with Rhine's contention that his

challenge to the constitutionality of 40 U.S.C. § 5104(e)(2)(D) and (e)(2)(G) presents a

substantial question of law.  As relevant here, section 5104(e)(2)(D) makes it a crime for "[a]n

individual or group of individuals [to] willfully and knowingly . . . utter loud, threatening, or

abusive language, or engage in disorderly or disruptive conduct, at any place in the Grounds or in

any of the Capitol Buildings with the intent to impede, disrupt, or disturb the orderly conduct of

a session of Congress or either House of Congress."  40 U.S.C. § 5104(e)(2)(D).  And section

5104(e)(2)(G) prohibits "parad[ing], demonstrat[ing], or picket[ing] in any of the Capitol

Buildings."  *Id.* § 5104(e)(2)(G).

Rhine argues that sections 5104(e)(2)(D) and (e)(2)(G) are both facially unconstitutional

and unconstitutional as applied to his conduct.  *See* Def.'s Mot. at 16, 37.  In arguing that the

statutes are facially unconstitutional, he contends that the statutes are overbroad, vague, and

impermissibly regulate speech based on viewpoint and content.  *See id.* at 16–37.  This is not the

first time that Rhine has made these arguments.  To the contrary—and as he acknowledges—

Rhine raised the same arguments in a pre-trial motion to dismiss.  *See id.* at 16 ("Prior to trial,

Mr. Rhine moved to dismiss Counts 3 and 4 on these grounds."); *see also* Def.'s Mot. Dismiss,

ECF No. 47.  The instant motion largely tracks the arguments raised earlier in this litigation.

For example, Rhine argues that sections 5104(e)(2)(D) and (e)(2)(G) are facially

unconstitutional because they are impermissibly vague.  *See* Def.'s Mot. at 34–37.  To that end,

Rhine argues that section 5104(e)(2)(D)'s prohibition on "disorderly or disruptive conduct" is

vague because the statute does not define what constitutes such conduct.  *See id.* at 35–36.  Rhine

made the same argument in his motion to dismiss, *see* Def.'s Mot. Dismiss at 7–10, and the

Court rejected it, *United States v. Rhine*, 652 F. Supp. 3d 38, 61–62 (D.D.C. 2023).  As for

section 5104(e)(2)(G), Rhine argues—like he did before—that that section is vague because it

does not "define or clarify" the terms "parading, demonstrating, and picketing."  *See* Def.'s Mot.

at 36; *see also* Def.'s Mot. Dismiss at 15–16.  Again, the Court has already explained why that is

incorrect.  *See Rhine*, 652 F. Supp. 3d at 62.  Rhine's present motion does not cite any binding or

persuasive authority issued since the Court's prior opinion that causes the Court to doubt its

earlier analysis.  *See United States v. Abou-Khatwa*, No. 18-cr-67, 2022 WL 278770, at *3

(D.D.C. Jan. 31, 2022) ("The court has already considered and rejected Defendant's . . . objections . . . , and Defendant does not present new arguments or intervening case law that persuade this court that a 'close question' exists on appeal.").  Nor does he attempt to explain why, despite the Court's prior ruling, the vagueness question is particularly "close" such that it "very well could be decided the other way."  *See Perholtz*, 836 F.2d at 555 (internal quotation marks omitted).

Rhine separately argues that sections 5104(e)(2)(D) and (e)(2)(G) are facially unconstitutional because they are overbroad.  *See* Def.'s Mot. at 25–31.  In resolving Rhine's motion to dismiss, the Court acknowledged that the question of whether sections 5104(e)(2)(D) and (e)(2)(G) are overbroad "presents a closer question" than does the question of whether those statutes are impermissibly vague.  *Rhine*, 652 F. Supp. 3d at 62.  Ultimately, however, the Court explained that when, as here, a statute is "directed at speech," the constitutionality of the statute hinges on "whether the statute restricts a 'substantial amount' of protected speech in relation to its 'plainly legitimate sweep.'"  *Id.* (quoting *Virginia v. Hicks*, 539 U.S. 113, 118–19 (2003)).  That analysis, in turn, "depends on an inquiry into the type of public property—the 'forum'— where the speech regulation applies."  *Id.*  After surveying the standards applicable to traditional public forums, designated public forums, and nonpublic forums, the Court (like many other courts in this district) concluded that the Capitol is a nonpublic forum.  *Id.* at 63.  That being so, the Court explained that sections 5104(e)(2)(D) and (e)(2)(G) would stand so long as they were both "view-point neutral" and "reasonable in light of the purpose served by the forum."  *Id.* at

63–65 (quoting *Cornelius v. NAACP Legal Def. and Educ. Fund, Inc.*, 473 U.S. 788, 806

(1985)).  The Court then explained in detail why both of the statutes passed that test.[1]  *See id.*

Rhine's motion disputes the Court's ultimate conclusion (that the statutes are not

overbroad) and some of the conclusions reached along the way.  For instance, Rhine argues that

"[l]arge portions of the Capitol Building" and the entirety of the "Capitol Grounds" are a

public—as opposed to nonpublic—forum.  *See* Def.'s Mot. at 21.  And he alternatively argues

that, even if the Capitol and its grounds are a nonpublic forum, the statutes at issue discriminate

based on viewpoint, *see id.* at 31–33, and are unreasonable "in light of the purpose of the

Capitol," *see id.* at 33–34.  In other words, Rhine's motion is largely an attempt to relitigate

issues that the Court has already decided against him.  Aside from arguing that the Court was

wrong, Rhine makes no effort to show why these issues are sufficiently "close" such that they

could be decided the other way.  *See Abou-Khatwa*, 2022 WL 278770, at *3 (denying

defendant's motion for bond pending appeal where court had "already considered and rejected"

defendant's arguments).

Finally, Rhine argues that sections 5104(e)(2)(D) and (e)(2)(G) are unconstitutional as

applied to his conduct on January 6.  "[T]o prevail on an as-applied First Amendment challenge,

[a defendant] must demonstrate that the statute is unconstitutional as applied to his particular

---

[1] In resolving Rhine's motion to dismiss, the Court also explained why sections 5104(e)(2)(D) and (e)(2)(G) are not content-based regulations on speech.  *See Rhine*, 652 F. Supp. 3d at 65–66.  To the extent Rhine disputes that holding, *see* Def.'s Mot. at 29–31, his arguments are unpersuasive.  As the Court previously explained, "speech regulation is content-based only if it 'targets speech based on its communicative content—that is, if it applies to particular speech because of the topic discussed or the idea or message expressed,' but not if it is 'agnostic as to content.'"  *Rhine*, 652 F. Supp. 3d at 65 (quoting *City of Austin v. Reagan Nat'l Advert. of Austin, LLC*, 596 U.S. 61, 69 (2022)).  And "[b]ecause [sections] 5104(e)(2)(D) and (e)(2)(G), by their plain text, are agnostic as to content, they are not content-based restrictions."  *Id.*

expressive activity." *United States v. Caputo*, 201 F. Supp. 3d 65, 71 (D.D.C. 2016); *United States v. Nordean*, 579 F. Supp. 3d 28, 52 (D.D.C. 2021).  Courts use a three-step analysis to resolve such a challenge.  *See Green v. U.S. Dep't of Just.*, 54 F.4th 738, 745 (D.C. Cir. 2022). First, courts "decide whether the [conduct or] activity at issue is speech protected by the First Amendment."  *Id.* (internal brackets omitted) (quoting *Cornelius*, 473 U.S. at 797); *see also Mahoney v. Doe*, 642 F.3d 1112, 1116 (D.C. Cir. 2011).  If it is not, the court's analysis ends. *See Caputo*, 201 F. Supp. 3d at 71.  Conversely, if the defendant's expressive activity is protected by the First Amendment, the court must "determine whether the regulation at issue is content based or content neutral."  *Green*, 54 F.4th at 745.  This, in turn, "sets the level of scrutiny [courts] apply at the third step: strict scrutiny for content-based statutes and intermediate scrutiny for content-neutral statutes."[2]  *Id.*

Here, Rhine argues that his conduct on January 6 was both "plainly expressi[ve]" and "protected by the First Amendment."  Def.'s Mot. at 38.  In support, he argues that:

> Evidence at trial indicated that, on January 6, 2021, Mr. Rhine attended a
> permitted political protest on the Capitol Grounds.  He later walked into the
> Capitol Building, and around some of its hallways in or abutting areas that are
> generally publicly accessible, while carrying a large flag and cowbells.  He
> uttered no threats, did no vandalism, and committed no acts of violence.  He
> walked through the building with his flag for a matter of minutes before he was
> stopped by law enforcement, whom he obeyed completely.

---

[2] This general framework has been described differently by various courts.  For example, in *Mahoney*, the D.C. Circuit explained that, after a court determines "whether the First Amendment protects the speech at issue," it must then "identify[] the nature of the forum" in which expression is being regulated.  642 F.3d at 1116.  The nature of the forum determines "the requisite standard" the court must apply to assess "whether the [government's] justifications for restricting [the defendant's] speech" pass constitutional muster.  *Id.* (internal quotation marks omitted); *see also Frederick Douglass Found., Inc. v. District of Columbia*, 531 F. Supp. 3d 316, 329 (D.D.C. 2021) (applying this version of the test).  The Court need not conclusively determine whether the test articulated in *Mahoney* or the test set forth in *Green* applies because Rhine's as-applied challenge does not present a substantial question under either.

*Id.*  He also acknowledges a filmed "statement he made on the terrace of the Capitol" in which he expressed that "he and others were there to 'stop the steal.'"  *Id.*  For its part, the Government does not meaningfully dispute the expressive nature of Rhine's conduct, nor does the Government meaningfully contend that such conduct falls outside the scope of the First Amendment.  *See* Gov't's Opp'n at 8–10.  Thus, the Court will assume, favorably to Rhine, that his actions on January 6 were expressive conduct protected by the First Amendment.

But Rhine falters at steps two and three of the analysis.  That is because he argues that section 5104 "employs content- and viewpoint-based restrictions on speech."  Def.'s Mot. at 39.  As discussed above and in the Court's earlier opinion, it does not.  *See supra* note 1; *see also Rhine*, 652 F. Supp. 3d at 64–66.  And because both sections 5104(e)(2)(D) and (e)(2)(G) are content-neutral, *Rhine*, 652 F. Supp. 3d at 65, Rhine is also incorrect to the extent that he argues that the Court must apply strict scrutiny to assess the constitutionality of those statutes, *see* Def.'s Mot. at 39.

Instead, the Court need only ensure that sections 5104(e)(2)(D) and (e)(2)(G) satisfy intermediate scrutiny.  *See Green*, 54 F.4th at 745; *Caputo*, 201 F. Supp. 3d at 71.  Under intermediate scrutiny, a "statute is constitutional so long as it 'furthers an important or substantial government interest' that is 'unrelated to the suppression of free expression,' any incidental restriction on protected expressive activity is 'no greater than is essential to the furtherance of that interest,' and it 'leaves open ample alternative channels for communication.'" *Rhine*, 652 F. Supp. 3d at 64 (quoting *Edwards v. District of Columbia*, 755 F.3d 996, 1002 (D.C. Cir. 2014)); *see also United States v. O'Brien*, 391 U.S. 367, 377 (1968).  This Court and others have previously explained that section 5104(e)(2)(D) satisfies each element of this test, *Rhine*, 652 F. Supp. 3d at 64–65; *United States v. Baez*, No. 21-cr-0507, 2023 WL 3846169, at

*8 (D.D.C. June 2, 2023) (holding the same), and Rhine makes no attempt to contest that

conclusion here.  Nor does he even feint at arguing that section 5104(e)(2)(G) fails to satisfy

intermediate scrutiny.  For these reasons, the Court concludes that Rhine has not borne his

burden of showing that his as-applied challenge to the constitutionality of sections 5104(e)(2)(D)

and (e)(2)(G) presents a substantial or close question of law.

### 2.  Rhine's Challenge to the Constitutionality of His Sentence

Rhine separately contends that his appeal raises the substantial question of whether his

sentence is impermissibly punitive.  He argues that the Court violated his due process rights by

increasing his sentence as punishment for his decision to "exercise[] his constitutional right to

trial by jury."  *See* Def.'s Mot. at 39–41.  The Court disagrees, and the issue is not close.

As discussed above, the Court sentenced Rhine to four-months' imprisonment on each of

the four counts of conviction.  In reaching this result, the Court explained that the sentence it was

imposing was "sufficient but not greater than necessary to comply with the purposes set forth in"

18 U.S.C. § 3553.  Tr. of Sentencing ("Sentencing Tr.") at 19:7–8, ECF No. 132.  The Court

further explained that, as required, it had considered "the nature and circumstances of the

offense," "the history and characteristics of the defendant," and that it was "impos[ing] a

sentence that reflect[ed] the seriousness of the offense, promote[d] respect for the law, and

provide[d] just punishment for the offense."  *Id.* at 19:9–13; *see also* 18 U.S.C. § 3553(a) (listing

these among the factors courts are to consider in imposing a sentence).  The Court then

described—in detail—the factors illustrating the seriousness of Rhine's offense, *see* Sentencing

Tr. at 19:14–21:15, such as a "videotaped interview in which [Rhine] made it clear that he was

[at the Capitol] to 'Stop the Steal'" or "block[] . . . the certification [of the Electoral College] that

day," *id.* at 21:6–9.  The Court also discussed other factors specific to Rhine, including his age,

his employment history, his history of service in the U.S. Navy, his community service, his lack

of a prior criminal history, his upbringing and family background, and the fact that he owned and

operated his own business.  *See id.* at 22:3–23:4.

One of the additional factors the Court considered—and the factor most relevant here—

was that Rhine had "never accepted responsibility for his actions."  *Id.* at 21:16–17.  This put

Rhine in a materially different position than the "other [January 6] misdemeanants" the Court

had sentenced.  *Id.* at 24:8–13; *see also id.* at 21:16–24 (distinguishing Rhine's case from the

case of "all" previous January 6 misdemeanants who had "pleaded guilty").  The Court

elaborated that, unlike all of the other defendants charged only with misdemeanors for their

conduct on January 6, Rhine "forc[ed] a rare misdemeanor jury trial . . . which [was] his right."

*Id.* at 21:17–18.  That "required the government and the Court to expend significant resources

and required members of the public to take time out from their busy lives."  *Id.* at 21:18–20.

When Rhine's counsel objected that the Court was "essentially . . . applying a trial penalty," *id.*

at 28:10–11, the Court explained that that was not the case, *see id.* at 30:14 ("I did not impose a

[trial] penalty").  Rather, the Court explained that a "central tenet of the [Sentencing]

[G]uidelines" is "that there's a reward for acceptance of responsibility," and that such acceptance

of responsibility "didn't occur here."  *Id.* at 30:14–16.  The Court also explained that it made its

decision "based on the comparators"—in other words, "other January 6th misdemeanants who

were convicted of the same crimes [as Rhine] after a jury trial."  *See id.* at 26:5–7; 30:16–19.

In the instant motion, Rhine again contends that the Court levied a "trial penalty" by

imposing a sentence of incarceration as punishment for his decision to take the case to trial.  *See*

Def.'s Mot. at 39, 41.  Not so.  The D.C. Circuit has made clear that one of the factors district

judges may properly consider at sentencing is whether the defendant has "accepted

responsibility" for his crimes.  *See United States v. Mejia*, 597 F.3d 1329, 1344 (D.C. Cir. 2010)

("Nor . . . is there anything out of the ordinary with the defendant's acceptance of responsibility

factoring into the sentencing calculus.").  The Sentencing Guidelines, too, reflect the notion that

defendants who accept responsibility for their actions are generally to be sentenced more

leniently than those who do not.  *See* U.S.S.G. § 3E1.1(a) (providing a two-level sentencing

reduction if the defendant "clearly demonstrates acceptance of responsibility for his offense");

*see also United States v. Jones*, 997 F.2d 1475, 1478 (D.C. Cir. 1993) (en banc) (explaining that

"[t]he Guidelines explicitly tell judges that they normally should deny the two-point reduction to

a defendant who does not plead guilty" and collecting cases for the proposition that "[n]umerous

courts considering the matter have upheld the Guideline direction to draw this distinction").

Here, the Court made clear that it was primarily Rhine's failure to accept responsibility

for his actions—not his decision to go to trial—that factored into its decision to impose a four-

month term of incarceration on each of the counts of conviction.  *See, e.g.*, Sentencing Tr. at

21:16–17 ("[D]efendant never accepted responsibility for his actions . . . ."); *id.* at 18:21–24

(finding Rhine's refusal to submit financial information to Probation as "a further example of his

lack of acceptance of responsibility").  This was important for two reasons.  First, it meant that,

consistent with D.C. Circuit precedent and the principles reflected in the Guidelines, Rhine did

not receive the "reward" or benefit that often accrues to defendants who *do* accept responsibility

for their actions.  *See United States v. Alford*, 89 F.4th 943, 954 (D.C. Cir. 2024) (affirming

January 6 misdemeanant's sentence and explaining that the defendant's "decision to exercise his

right to trial meant that he did not receive a sentencing reduction for acceptance of responsibility,

as he likely would have had he pleaded guilty").

Second—and as the Court highlighted at sentencing—Rhine's failure to accept responsibility distinguished his case from the many January 6 misdemeanants who had pleaded guilty and received sentences that did not include terms of incarceration.  *See, e.g.*, Sentencing Tr. at 24:8–13 ("Although the Court is mindful that [P]robation has not recommended a custodial sentence, the Court disagrees with that position *due to the lack of acceptance of responsibility, putting him in a different position than the other misdemeanants I've sentenced*." (emphasis added)); *id.* at 21:20–24 ("Therefore, despite the fact that I have not imposed incarceration sentences to other misdemeanants, all of them pleaded guilty.  So defendant is not in that category of getting a reward of a reduced sentence."); *id.* at 26:1–3 ("What defendant fails to appreciate is that all of those defendants pleaded guilty, usually to just the parading charge and, thus, were rewarded for their acceptance of responsibility.  That is not the case here.").  Of course, Rhine's decision to deny responsibility also meant that, unlike January 6 misdemeanants who had pleaded guilty, Rhine's case proceeded to trial.  But that fact only served to further distinguish Rhine from all of the previous January 6 misdemeanants sentenced by the Court, and the Court properly factored that discrepancy into its sentencing analysis.  *See United States v. Lopesierra-Gutierrez*, 708 F.3d 193, 208 (D.C. Cir. 2013) ("That some defendants pled guilty while others did not provides a perfectly valid basis for a sentencing disparity . . . ."); *Mejia*, 597 F.3d at 1344 (affirming a sentence as reasonable where the disparity in sentences between two co-defendants was "entirely explained" by one defendant receiving an "acceptance-of-responsibility reduction for his having pleaded guilty").

What is more, the Court's sentencing decision is entirely consistent with the D.C. Circuit's latest precedent on the subject.  In *United States v. Alford*, a jury convicted the defendant of "four misdemeanors stemming from his role in the U.S. Capitol protest on January

6th, 2021." 89 F.4th at 946. The district court sentenced the defendant to a twelve-month term of incarceration. *See id.* On appeal, the defendant challenged the substantive reasonableness of his sentence. *See id.* at 953. As relevant here, the defendant contended that "the district court abused its discretion in sentencing him to twelve months' imprisonment" in large part because "his sentence [wa]s disproportionate to the sentences of other January 6th misdemeanants, who typically accepted plea deals and received sentences that ranged from probation to a few weeks' imprisonment." *Id.* The defendant argued that this "disparity" in sentencing was attributable "to the fact that he exercised his right to trial." *Id.* The Circuit disagreed. In doing so, it emphasized that there were "material differences between [the defendant's] situation and the January 6th misdemeanants who received lesser sentences." *Id.* at 954. Namely, the defendant's "decision to exercise his right to trial meant that he did not receive a sentencing reduction for acceptance of responsibility, as he likely would have had he pleaded guilty." *Id.* The Circuit explained that, although the defendant "was entitled to put the government to its burden of proof," that decision "meant foregoing benefits that other defendants obtained by striking plea bargains."[3] *Id.*

For all these reasons, the Court finds that Rhine has not raised a substantial or particularly "close" question as to the propriety of his sentence. In other words, the Court did not penalize Rhine for electing to go to trial, and the Court does not believe it is likely that the D.C. Circuit will conclude otherwise.

---

[3] The Circuit also found that the district court's "express[] state[ment] that it was 'not going to penalize' [the defendant] for going to trial" indicated that the trial court had not "punished [the defendant] for exercising his right to a jury trial." *Alford*, 89 F.4th at 954 n.6 (citation omitted). The Court made a similarly explicit statement here. *See* Sentencing Tr. at 30:14 ("I did not impose a penalty.").

### 3.  Rhine's Challenges Regarding 18 U.S.C. § 1752(a)(1) and (a)(2)

Finally, Rhine contends that his appeal presents the substantial question of whether the Court mis-instructed the jury with regard to what the Government needed to prove in order for the jury to convict Rhine of violating 18 U.S.C. § 1752(a)(1) and (a)(2).  More specifically, Rhine argues that the Court erred by instructing the jury that it could convict Rhine even if the Government had not proven that Rhine *knew* Vice President Pence or another Secret Service protectee was or would be visiting the Capitol on January 6.  *See* Def.'s Mot. at 3.  Rhine also contends that the Court erred by instructing the jury that the Government did not need to "prove any causal nexus between the visit of a Secret Service protectee and the restriction of the area in question."  *See id.* at 3–4.

As a refresher, 18 U.S.C. § 1752(a)(1) makes it a crime to "*knowingly* enter[] or remain[] in any *restricted building or grounds* without lawful authority to do so."  (Emphases added). And 18 U.S.C. § 1752(a)(2) prohibits "*knowingly*, and with intent to impede or disrupt the orderly conduct of Government business or official functions, engag[ing] in disorderly or disruptive conduct in, or within such proximity to, any *restricted building or grounds* when, or so that, such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions."  (Emphases added).  In pertinent part, section 1752 defines the term "restricted building[] or grounds" as "any posted, cordoned off, or otherwise restricted area . . . of a building or grounds where the President or other person protected by the Secret Service is or will be temporarily visiting."  18 U.S.C. § 1752(c)(1)(B).

In support of his argument that his challenges to the Court's instructions raise a substantial question of law, Rhine correctly notes that judges in this district have recently split on the question of how far the mens rea requirement in sections 1752(a)(1) and (a)(2) extends.

Some judges have held that the statutes' "knowingly" requirement only extends to the first part of section 1752(c)(1)(B)'s definition of "restricted building or grounds."  Under that approach, the Government need only show that the defendant knew that an area was "'posted, cordoned off, or otherwise restricted' but need not" show that the defendant knew "anything else."  *United States v. Groseclose*, No. 21-cr-311, 2024 WL 68248, at *2 (D.D.C. Jan. 5, 2024) (collecting cases adopting this view).  Other courts, however, have held that the scienter requirement in sections 1752(a)(1) and (a)(2) extends to the entire statutory definition of "restricted building or grounds."  *Id.* at *2–9; *see also United States v. Elizalde*, No. 23-cr-00170, 2023 WL 8354932, at *7 (D.D.C. Dec. 1, 2023).  Under this view, it is not enough for the Government to prove that the defendant knew that an area was posted, cordoned off, or otherwise restricted; rather, the Government must show, for example, that the defendant "knew that (1) the Capitol building and its grounds were posted, cordoned off, or otherwise restricted on January 6 and (2) a person protected by the Secret Service was or would be temporarily visiting the Capitol that day." *Groseclose*, 2024 WL 68248, at *9 (cleaned up).  The question is currently before the D.C. Circuit.  *See United States v. Griffin*, No. 22-3042 (D.C. Cir. argued Dec. 4, 2023).

The Court will assume—favorably to Rhine—that he is correct that the intra-district split regarding the mens rea requirement of sections 1752(a)(1) and (a)(2) presents a close question of law that "very well could be decided" different ways.  *See Perholtz*, 836 F.2d at 555. Nonetheless, Rhine cannot demonstrate that he is entitled to relief under 18 U.S.C. § 3143(b).

As discussed above, a defendant seeking relief under section 3143(b) must demonstrate *both* that his "appeal raise[s] a substantial question" and that "resolution of that question in [his] favor [is] likely to lead to reversal," an order for a new trial, a sentence that does not include a term of imprisonment, or a reduced sentence to a term of imprisonment less than the total of the

time already served plus the expected duration of the appeal process.  *Id.*; *see also* 18 U.S.C. § 3143(b).  Where, as here, a defendant stands convicted on multiple charges, it is not enough for the defendant to demonstrate that favorable resolution of the substantial question is "likely to lead to reversal" of just a subset of counts.  Instead, he must demonstrate that resolution of that question is "likely to result in reversal of *all counts* on which imprisonment is imposed."  *See Perholtz*, 836 F.2d at 557 (emphasis added); *see also United States v. Brock*, No. 23-3045, 2023 WL 3671002, at *1 (D.C. Cir. May 25, 2023) (per curiam).  As discussed above, in addition to being convicted and sentenced to a term of imprisonment for violating 18 U.S.C. § 1752(a)(1) and (a)(2), Rhine was convicted and sentenced to a term of imprisonment for violating 40 U.S.C. § 5104(e)(2)(D) and (e)(2)(G).  Resolution of the substantial question relating to the scienter requirement in the former two statutes would have no bearing on Rhine's convictions under the latter two statutes.  That being the case, Rhine is unable to show that resolution of the substantial question in his favor is "likely to result in reversal of *all counts* on which imprisonment is imposed," *see Perholtz*, 836 F.2d at 557 (emphasis added), or, by similar logic, "an order for a new trial" on all counts, *see* 18 U.S.C. § 3143(b)(1)(B)(ii).

Recognizing this difficulty, Rhine instead argues that reversal or vacation of his convictions under sections 1752(a)(1) and (a)(2) "raises a probability that the Court would reduce or eliminate the custodial sentence upon re-sentencing, should the two less serious § 5104 convictions survive appeal."  Def.'s Reply at 7.  Assessing this contention requires the Court to "embark on the unusual task of predicting the sentence it would 'likely' impose if [Rhine's section 1752] conviction[s] were reversed."  *See Sheppard*, 2024 WL 127016, at *4.

As discussed above, at Rhine's sentencing, the Court weighed a number of factors in determining that a sentence of four-months' incarceration was warranted on *each* of the counts of

conviction.  Among other things, the Court discussed the "serious[ness]" of Rhine's offense and evidence tending to show that Rhine was at the Capitol with the "inten[t] [of] block[ing] the certification of the votes for President Joe Biden."  Sentencing Tr. at 19:14–20:7; *see also id.* at 21:6–9 (explaining that, on January 6, "[Rhine] gave a videotaped interview in which he made it clear that he was there to 'Stop the Steal,' illustrating his intent to take part in the blocking of the certification that day").  And because Rhine's presence at the Capitol contributed to the rioters' ability to "overwhelm[] the outnumbered law enforcement officers present," the Court also stressed the need to "h[o]ld [Rhine] accountable for his actions and the result to which his actions contributed."  *Id.* at 21:10–15.  The Court also found it significant that Rhine—unlike many other January 6 defendants—had "never accepted responsibility for his actions."  *Id.* at 21:16–22.  Moreover, the Court was concerned that Rhine's "righteous belief in his cause"—as evidenced by his "videotaped interview"—made it less likely that Rhine would "be deterred from" engaging in similar actions in the future.  *Id.* at 23:19–24.  Separately, the Court noted the need to "impose a sentence that avoids unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct."  *Id.* at 25:14–16.  In that vein, the Court identified three comparator cases in which judges in this district sentenced similarly situated defendants to twelve-, eleven-, and four-month terms of imprisonment.  *Id.* at 26:1–14.

All of these considerations would apply with equal force were the Court to re-sentence Rhine only on Counts Three and Four.  Of further significance, the maximum term of imprisonment for a violation of 40 U.S.C. § 5104(e)(2)(D) and (e)(2)(G) is six months.  40 U.S.C. § 5109(b) ("A person violating section [5104(e)(2)] . . . shall be . . . imprisoned for not more than six months . . . .").  Thus, even though the Sentencing Guidelines would no longer

apply were Rhine's convictions on Counts One and Two vacated, *see* U.S.S.G. § 1B1.9; *United States v. Bledsoe*, No. 21-cr-204, 2024 WL 341159, at *1 (D.D.C. Jan. 30, 2024), the range of a possible term of incarceration to which Rhine would be exposed (zero to six months) is the same as the Guidelines range the Court calculated at sentencing, *see* Sentencing Tr. at 6:1–3 (calculating that "the applicable guidelines range is 0 to 6 months").  And finally, the Court emphasizes that it initially sentenced Rhine to four-months' imprisonment on *each* of the four counts of conviction, and at no point did the Court suggest or imply that the sentences it imposed on Counts Three and Four were in any way dependent on or related to the sentences it imposed on Counts One and Two.

In light of all of these factors, the Court concludes that, even if the Circuit vacated Rhine's sentences on Counts One and Two, the Court would still sentence Rhine to four-months' imprisonment on Counts Three and Four.  Accordingly, Rhine has failed to show that his appeal raises a substantial question of law "likely to result in . . . a sentence that does not include a term of imprisonment" or "a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process."  *See* 18 U.S.C. § 3143(b)(1)(B)(iii)-(iv).

## IV.  CONCLUSION

For the foregoing reasons, Defendant's Motion for Bond Pending Appeal (ECF No. 124) is **DENIED**.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  February 21, 2024                                    RUDOLPH CONTRERAS
                                                             United States District Judge